HOGAN LOVELLS US LLP
KRISTA S. SCHWARTZ - # 303604
krista.schwartz@hoganlovells.com
PATRICK T. MICHAEL - # 169745
patrick.michael@hoganlovells.com
HELEN Y. TRAC - # 285824
helen.trac@hoganlovells.com
3 Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone:    (415) 374-2300
Facsimile:    (415) 374-2499

Attorneys for Plaintiff
SYNOPSYS, INC.

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
REID P. MULLEN - # 270671
rmullen@keker.com
RYAN K. WONG - # 267189
rwong@keker.com
KRISTIN HUCEK - # 321853
khucek@keker.com
VICTOR CHIU - # 305404
vchiu@keker.com
BILAL MALIK - # 318767
bmalik@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188

Attorneys for Defendant
REAL INTENT, INC.

APPROVED

Judge Susan van Keulen

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>                Plaintiff,<br><br>        v.<br><br>REAL INTENT, INC.,<br><br>                Defendant. | Case No. 5:20-cv-02819-EJD (SvK)<br><br>**SUPPLEMENTAL STIPULATION REGARDING ELECTRONIC DISCOVERY**<br><br>Judge:        Hon. Edward J. Davila<br><br>Date Filed:  April 23, 2020<br><br>Trial Date:  None set |

Unless otherwise agreed in a writing signed by Plaintiff Synopsys, Inc's. and Defendant Real Intent, Inc.'s (collectively, the "Parties") counsel of record in this action, this Supplemental Stipulation Regarding Electronic Discovery ("Supplemental Stipulation") shall govern the Parties' discovery related to custodial electronically stored information ("ESI")—as that term is used in Rule 34(a) of the Federal Rules of Civil Procedure.  The Parties agree that the discovery activities covered by this Supplemental Stipulation are to be conducted as follows:

## I.     GENERAL PROVISIONS

1.     This Supplemental Stipulation supplements all other discovery rules, orders, stipulations, and agreements in this action.  It streamlines custodial ESI production to promote a "just, speedy, and inexpensive determination" of this action, as required by Rule 1 of the Federal Rules of Civil Procedure.

2.     For the purposes of this Supplemental Stipulation, "custodial ESI" refers to ESI (and not hard copy documents) associated with a particular individual, such as an individual's corporate email account or ESI saved in the individual's workplace computer.  "Custodial ESI" does not include information stored in a repository not associated with a particular individual, such as a shared drive, document storage system, Wiki, or TWiki, and does not include hard copy documents.  Standard requests for productions under Rules 34 and 45 of the Federal Rules of Civil Procedure shall not include "custodial ESI."

3.     This Supplemental Stipulation does not modify or in any way affect any discovery rules or orders that relate to the production of hard copy documents or other non-custodial ESI.

4.     This Supplemental Stipulation may be modified for good cause.  The Parties may agree to modifications, and shall jointly submit any modifications to the Court.  If, after meeting and conferring, the Parties cannot reach an agreement regarding proposed modifications, the Parties shall submit to the Court a joint discovery statement per Magistrate Judge van Keulen's Civil Scheduling & Discovery Standing Order, summarizing their dispute and their competing proposals.

5.      Pursuant to Rule 26 of the Federal Rules of Civil Procedure, costs will be shifted

for disproportionate custodial ESI production requests.  In addition:

    A.      A party's nonresponsive or dilatory discovery tactics will be considered in

cost-shifting determinations; and

    B.      A party's good faith and/or meaningful compliance with this Supplemental

Stipulation and efforts to promote efficiency and reduce costs will be

considered in cost-shifting determinations.

6.      The Parties agree that the preferred method of producing all custodial electronic

materials in this action, unless governed by a separate agreement between the

Parties (*e.g.*, a stipulation relating to source code), will be electronic exchange via

secure FTP.  If electronic exchange via secure FTP is not reasonably possible for

certain custodial electronic materials, the Parties agree that such custodial

electronic materials shall be exchanged electronically on CD, DVD, flash drive, or

hard drive.  To the extent that the materials are ordinarily maintained by the

producing party in a form that is electronically searchable, they must be produced

in a form that is electronically searchable.  The production data shall be exchanged

between counsel in encrypted form using 256-bit AES or another industry-

standard encryption algorithm that provides at least a similar level of security.

7.      Nothing in this Supplemental Stipulation or any other document relating to

discovery in this matter shall be construed or interpreted as precluding a producing

party from performing a responsiveness review to determine if documents

captured by the search terms are in fact responsive to the requesting party's

request.  Further, nothing in this Supplemental Stipulation or any other document

relating to discovery in this matter shall be construed or interpreted as requiring

the production of all documents captured by any search term if a document is—in

good faith—deemed not responsive the requesting party's request for production

by the producing party.

/////

SUPPLEMENTAL STIPULATION REGARDING ELECTRONIC DISCOVERY
Case No. 5:20-cv-02819-EJD (SvK)

1749179

## II.     PRODUCTION OF CUSTODIAL ESI

1.     **REQUEST SPECIFICITY.**  Custodial ESI production requests shall identify the custodians and search terms relevant to the requests.  The Parties shall cooperate to identify the proper custodians and proper search terms for their custodial ESI production requests.  Custodial ESI production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

2.     **TIMING.**  The Parties have met and conferred and identified their proposed search terms and the custodians who are most likely to have responsive or relevant custodial ESI, subject to potential amendment in accordance with sections II(3) and II(4) below.

3.     **CUSTODIANS.**  Each requesting party is limited to eleven (11) individual custodians for its custodial ESI production requests.  The Parties reserve all rights to object to the selection of any particular custodian by the other side on relevance, harassment, and/or any other legitimate grounds.  The Parties may, upon a showing of good cause, jointly agree in writing to modify the eleven (11) custodian limit.  If, after meeting and conferring, the Parties cannot reach an agreement regarding modifying the custodian limit, the Parties shall submit to the Court a joint discovery statement per Magistrate Judge van Keulen's Civil Scheduling & Discovery Standing Order, summarizing their dispute and their competing proposals.  Contested requests for additional or fewer custodians per producing party shall be based upon a showing of a distinct need based on the size, complexity, and issues of this specific case, and the comparable availability of relevant and responsive materials from sources other than custodial ESI.  Cost-shifting may be considered as part of any such request to modify the number of agreed upon custodians.

4.     **SEARCH TERMS.**  Each requesting party is limited to ten (10) search terms per custodian for its custodial ESI production requests.  The Parties may, upon a showing of good cause, jointly agree in writing to modify the ten (10) search term

limit.  If, after meeting and conferring, the Parties cannot reach an agreement regarding modifying the search term limit, the Parties shall submit to the Court a joint discovery statement per Magistrate Judge van Keulen's Civil Scheduling & Discovery Standing Order, summarizing their dispute and their competing proposals.  Contested requests for additional or fewer search terms per custodian shall be based upon a showing of a distinct need based on the size, complexity, and issues of this specific case, and the comparable availability of relevant and responsive materials from sources other than custodial ESI.  Cost-shifting may be considered as part of any such request to modify the number of agreed upon search terms.

A.   Focused terms, rather than overbroad and indiscriminate terms, shall be employed.

B.   A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term.

C.   A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term, unless they are variants of the same word. Variants shall be understood to include acronyms of a word or phrase; abbreviated, shorthand, or slang versions of a word/phrase; codenames referring to a particular product or thing; and similar variations for referring to the same specific term.  Notwithstanding this agreed-upon limitation, the Parties agree that disjunctive combinations of multiple words or phrases will be allowed for one type of search only:  a search related to disputed commands, options, variables, objects, attributes, and/or other elements at issue in this litigation relating to the parties' copyright claims and defenses, provided that (1) such a disjunctive combination is technically feasible and not unduly burdensome to run as a search; and (2) the requesting party adds context to such disjunctive combinations, by

the use of narrowing search criteria, where such context is possible and warranted (*e.g.*, and without limitation, single-word terms that are likely to hit on and sweep in irrelevant ESI), in order to minimize hits on irrelevant material.

D.      Use of narrowing search criteria (*e.g.*, "and," "but not," "w/#," and specific date ranges) is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

5.      **TIMEFRAME.**  The Parties agree that the timeframe for custodial ESI searches will begin on January 1, 2010 and end on April 23, 2020, subject to two narrow exceptions:  (i) for any searches proposed by Real Intent that are directed to its copyright defenses in this action—including but not limited to searches relating to the copyrightability (*e.g.*, originality, creativity, etc.) of disputed elements underlying Synopsys' copyright claims, interoperability (*e.g.*, Synopsys' in-Sync and TAP-in programs), fair use, scenes-a-faire, and estoppel or laches-related defenses—such searches will have a timeframe that starts at the earliest possible start date for a given custodian; and (ii) for any searches proposed by Synopsys that are directed to its allegations that Real Intent copied specific elements (*e.g.*, commands, options, variables, objects, attributes, etc.) from Synopsys' VC SpyGlass product, such searches will be subject to an end date of June 29, 2021. A party seeking to invoke an exception above shall have the burden of justifying the applicability of the exception, and shall act in good faith to ensure that searches invoking these exceptions are narrowly tailored to the subject matter specified. Moreover, the Parties may jointly agree in writing to modify the timeframe by search term or by custodian.  If, after meeting and conferring, the Parties cannot reach an agreement regarding modifying the timeframe, the Parties shall submit to the Court a joint discovery statement per Magistrate Judge van Keulen's Civil Scheduling & Discovery Standing Order, summarizing their dispute and their competing proposals.  Contested requests for a different timeframe shall be based

upon a showing of a distinct need based on the size, complexity, and issues of this specific case, and the comparable availability of relevant and responsive materials from sources other than custodial ESI.  Cost-shifting may be considered as part of any such request to modify the timeframe.

6.      **EXCHANGE OF SEARCH TERM HITS.**  The Parties acknowledge that there may be instances where the volume of custodial ESI in response to a requesting party's request is particularly high or low.  The Parties agree to exchange information showing the number of "hits" for each term or combination of terms with respect to any given custodian(s) in order to identify such issues and the Parties agree to work in good faith to resolve such issues on a case-by-case basis.  Accordingly, the Parties agree to exchange mandatory "hit" reports, iteratively and as needed, in order to get a particular custodian's review population within the parameters agreed upon herein.  The Parties agree that the first of these hit reports will be exchanged on September 28, 2021.  The Parties shall meet and confer on any modifications to the proposed search terms needed to improve the efficacy of the search terms in locating discoverable information and in excluding information that is not discoverable under Rule 26(b) of the Federal Rules of Civil Procedure, including modifying terms where the burden or expense of the proposed terms outweighs the likely benefit.  If, after meeting and conferring, the Parties cannot reach an agreement regarding modifying the search terms, the Parties shall submit to the Court a joint discovery statement per Magistrate Judge van Keulen's Civil Scheduling & Discovery Standing Order, summarizing their dispute and their competing proposals.  Contested requests for modifying search terms shall be based upon a showing of a distinct need based on the size, complexity, and issues of this specific case, and the comparable availability of relevant and responsive materials from sources other than custodial ESI.  Cost-shifting may be considered as part of any such request to modify the number of agreed upon search terms.

/////

SUPPLEMENTAL STIPULATION REGARDING ELECTRONIC DISCOVERY
Case No. 5:20-cv-02819-EJD (SvK)

1749179

7.   **CULLING/FILTERING.**  Each party agrees that it will use its best efforts to filter out of its productions common system files and application executable files by using a commercially reasonably hash identification process.  Hash values that may be filtered out during this process are located in the National Software Reference Library NIST hash set list.  Additional culling of system file types based on file extension may include, but are not limited to:  WINNT, LOGS, DRVS, MP3, C++ Program File (c) , C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and Program Installers.

8.   **DEDUPLICATION.**  The Parties agree that each producing party shall deduplicate custodial ESI on a global level (across all custodians) prior to production.  The basis for such deduplication shall be the MD5 or SHA1 hash values, or some other later agreed to deduplication method such as full text deduplication.  For generating either the MD5 or SHA1 hash values for email, the Parties agree to instruct their custodial ESI processing vendors to take attachments into account for such hash value generation.  The custodians of deduplicated copies of documents should be included in the database load file, either in the CUSTODIAN field or, alternatively, in a field for duplicative or other custodians (*e.g.*, DUPE CUSTODIAN).

9.   **BACKUP DATA.**  Absent a showing of good cause, the Parties agree that no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, disaster recovery systems, and other forms of media, to comply with

its discovery obligations in the present case.  If the producing party determines that
unique, responsive information is only available, or is only likely available, on
backup media (with no active copies), it shall so notify the requesting party, and
the Parties agree to then meet and confer in good faith regarding the handling of
the backup data.  If, after meeting and conferring, the Parties cannot reach an
agreement regarding backup data, the Parties shall submit to the Court a joint
discovery statement per Magistrate Judge van Keulen's Civil Scheduling &
Discovery Standing Order, summarizing their dispute and their competing
proposals.  Contested requests for backup data shall be based upon a showing of a
distinct need based on the size, complexity, and issues of this specific case, and the
comparable availability of relevant and responsive materials from sources other
than custodial ESI.  Cost-shifting may be considered as part of any such request to
search backup data.  Nothing in this section shall be read as establishing an
affirmative duty on either party to search or preserve backup data absent a showing
of cause by the party seeking the search or preservation.

10.     **VOICEMAILS, INSTANT MESSAGES AND OTHER NON-EMAIL
COMMUNICATION.**  Absent a showing of good cause, the Parties agree that
voicemails, instant messages, text messages, communications via social media,
PDAs, mobile phones, and cloud accounts/repositories linked to mobile phones are
deemed not reasonably accessible and need not be collected, preserved, or
searched.  The Parties agree, however, that such material shall be preserved if it is
relevant to a party's claims and/or defenses and if it is technically feasible.  Each
party further agrees that if it determines that unique, responsive information is only
available, or is only likely to be available, in instant messages, text messages,
social media communications, PDAs, mobile phones, or cloud
accounts/repositories linked to mobile phones, it will so notify the requesting
party, and the Parties will then meet and confer in good faith regarding the
handling of such materials.  If, after meeting and conferring, the Parties cannot

1749179

reach an agreement regarding such materials, the Parties shall submit to the Court a joint discovery statement per Magistrate Judge van Keulen's Civil Scheduling & Discovery Standing Order, summarizing their dispute and their competing proposals.  Contested requests for such materials shall be based upon a showing of a distinct need based on the size, complexity, and issues of this specific case, and the comparable availability of relevant and responsive materials from sources other than custodial ESI.  Cost-shifting may be considered as part of any such request to search such non-email communications.

11. **PRODUCTION FORMAT FOR CUSTODIAL ESI.**  The Parties agree that the format of productions of custodial ESI will comply with the below listed requirements:

A. **IMAGE FORMAT.**  All documents covered by this Supplemental Stipulation will be produced as single black and white Group IV TIFFs, created with a resolution of at least 300 dots per inch (dpi).  Color documents may be produced in JPG format in lieu of TIFF images, and if so produced, the color JPG files will also be provided with a resolution of at least 300 dpi.  Each TIFF or JPG image filename shall correspond to the Bates number associated with that page.  TIFF or JPG files shall allow all text and images that would be visible to a user of the custodial ESI documents.  The Parties may reasonably request and obtain color JPG versions of individual files produced as black and white TIFF images if the absence of color impacts the legibility or usefulness of the produced document.

B. **PRESENTATIONS.**  The Parties will make reasonable efforts to process presentations (*e.g.*, PowerPoint) with hidden slide and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF or JPG image.

/////

9

C.  **DATABASE LOAD FILES/CROSS-REFERENCE FILES.**  A production should be provided with:  (1) an ASCII delimited data file (.dat) using Concordance default delimiters; and (2) an Opticon (Concordance Image) image load file (.opt) that can be loaded into Concordance version 8 or above.

    i.    The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production.

    ii.    The Opticon file should provide the beginning and ending Bates number of each document and the number of pages it comprises. Each TIFF in a production must be referenced in the corresponding image load file.

    iii.    In addition to the metadata fields identified for production in Appendix A below, each .dat file shall include links to multi-page (document level) text files ("Text Path").

D.  **TEXT FILES.**  The multi-page text files described directly above in Section II.12.C.iii shall include text extracted from custodial ESI with extractable text.  For electronic files without extractable text (*e.g.*, scanned paper documents, PDF files without text, etc.) or documents produced without redactions, the producing party shall use optical character recognition (OCR) software to generate text for the document.  OCR generated text shall be provided for all documents without extractable text in the original native files unless the document is handwritten notes, drawings, or is otherwise not easily convertible into a searchable format. The filename for the multi-page text file shall correspond to the beginning production number of the document.

E.  **NATIVE FILES.**  Any file produced in native format should be produced with a link in the NativeLink field, along with extracted full text and

SUPPLEMENTAL STIPULATION REGARDING ELECTRONIC DISCOVERY
Case No. 5:20-cv-02819-EJD (SvK)

1749179

applicable metadata fields set forth in Appendix A.  Any file produced in native format should be named to match the beginning Bates number of their corresponding entries in the database load files.  Additionally, every file produced natively should be accompanied by a Bates-stamped and confidentiality-stamped TIFF placeholder indicating the document was provided in native format.  Only the files discussed below may be produced in native format unless the Parties agree otherwise in writing.

      i.   **SPREADSHEETS.**  Except for the placeholder referenced in Section II.12.E above, TIFF or JPG images of spreadsheets need not be produced unless redacted.  Where produced in TIFF or JPG format, the Parties will make reasonable efforts to ensure that any spreadsheets that are produced only as TIFF or JPG images are formatted so as to be readable and that any hidden content is included in the produced images.

      ii.   **VIDEO AND AUDIO FILES.**  Audio and video files will be produced in native format, with TIFF placeholders and available metadata provided in database load files.

      iii.   **EXCEPTIONS.**  For any processing exception (i.e. a file that cannot be processed by standard custodial ESI processing tools) that is being produced due to document family relationships, the producing party shall provide a placeholder image that includes the file name of the document, a Bates number, and a confidentiality designation, in addition to associated metadata.

      iv.   **REQUESTS FOR ADDITIONAL NATIVE FILES.**  If good cause exists to request production of specified files, other than those specifically set forth above, in native format, the requesting party may request such production and provide an explanation for the need for native file review, which request shall not unreasonably be

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

denied.  Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields, as well as a Bates-stamped and confidentiality-stamped TIFF placeholder.  If, after meeting and conferring, the Parties cannot reach an agreement regarding requests for additional native files, the Parties shall submit to the Court a joint discovery statement per Magistrate Judge van Keulen's Civil Scheduling & Discovery Standing Order, summarizing their dispute and their competing proposals. Contested requests for additional native files shall be based upon a showing of a distinct need based on the size, complexity, and issues of this specific case, and the comparable availability of relevant and responsive materials from sources other than custodial ESI.  Cost-shifting may be considered as part of any such request to search additional native files.

16
17
18
19
20
21
22
23

F.    **METADATA FIELDS AND PROCESSING.**  Each of the metadata and coding fields set forth in Appendix A that can be extracted shall be produced for each document.  The Parties are not obligated to populate manually any of the fields in Appendix A if such fields cannot be extracted from a document, with exception of the following:  (1) BEGBATES, (2) ENDBATES, (3) BEGATTACH, (4) ENDATTACH, (5) CUSTODIAN, and (6) CONFIDENTIALITY, which should be populated by the party or the party's vendor.

24
25

12.    **FOLDER STRUCTURE.**  Each production shall be provided in the following folder structure:

26

A.    <u>Top-level folder</u>:  This folder will indicate the production volume;

27

i.    <u>Sub-folders</u>:

28

/////

1749179

1.   <u>IMAGES</u>:  This folder will contain multiple sub-folders with ONLY TIFF (or JPG) files in them.  No other type of file should reside in this sub-folder.  Sub-folders shall not contain more than 1,000 images per folder.

2.   <u>TEXT</u>:  This folder will contain the full text files in UNICODE, UTF8, or ANSI format.  Sub-folders shall not contain more than 1,000 text files per folder.

3.   <u>DATA</u>:  This folder will contain load files compatible with Concordance version 8 or above and Opticon.

4.   <u>NATIVES</u>:  This folder will contain native files that the Parties agree to produce during the course of this litigation.  Sub-folders shall not contain more than 1,000 native files per folder.

13.   Nothing in this Supplemental Stipulation and the Parties' agreement to limit the search of custodial ESI using the foregoing search parameters shall relieve the Parties of any obligations they may have to produce specific items of responsive custodial ESI that they know about but that do not fall within the Parties' agreed-upon search parameters.  To the extent a party is aware or made aware of substantial amounts of responsive custodial ESI that has not fallen within the Parties' agreed-upon search parameters, it agrees to meet and confer with the requesting party to modify the Parties' agreed-upon search parameters in order to encompass such custodial ESI.

14.   **INADVERTENT PRODUCTION.**  The Parties agree that the inadvertent production of a privileged document or attorney work product that is custodial ESI is not a waiver of privilege in the pending case or in any other proceeding.  The Parties further agree that the receiving party shall not use produced documents and data that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection.  The Parties further agree that

1    the mere production of privileged information in this litigation as part of a mass

2    production shall not itself constitute a waiver for any purpose.

**III.    PRIVILEGE LOGS**

1.    The Parties agree to serve privilege logs in accordance with their agreements as set forth in the Stipulated Order Re: Discovery of Electronically Stored Information as Modified by the Court (Dkt. No. 33) and the Parties' joint case management statement (Dkt. No. 24).

**IV.    REDACTION LOGS**

1.    For each document that is redacted, in addition to providing the redacted version of the document, the Parties agree to furnish logs which comply with the legal requirements under Federal Law, but at a minimum will include the following information:

   A.    The Begin Production ID of the document.

   B.    The End Production ID of the document.

   C.    A description of why privilege is being asserted over the document, or some other explanation as to why the document was redacted.

   D.    If the document was redacted for privilege concerns, the type of privilege being asserted:  (i) AC for Attorney/Client; (ii) WP for Attorney Work Product; and (iii) CI for Common Interest.

2.    The Parties agree that redaction logs must be produced no later than 21 days after the agreed-upon date for substantial completion of document production.  The receiving party shall have thirty (30) days from the date of receipt to review and register complaints about said log(s), regardless of the date of the close of fact discovery

   **IT IS SO STIPULATED**, through Counsel of Record.

/////

/////

/////

SUPPLEMENTAL STIPULATION REGARDING ELECTRONIC DISCOVERY
Case No. 5:20-cv-02819-EJD (SvK)

1749179

1    Dated:  September 22, 2021                    HOGAN LOVELLS US LLP

2

3                                          By:   /s/ Krista S. Schwartz
                                                 KRISTA S. SCHWARTZ
4                                                PATRICK T. MICHAEL
                                                 HELEN Y. TRAC
5
                                                 Attorneys for Plaintiff
6                                                SYNOPSYS, INC.

7

8

9    Dated:  September 22, 2021                    KEKER, VAN NEST & PETERS LLP

10

11                                         By:   /s/ Bilal Malik
                                                 ROBERT A. VAN NEST
12                                               REID P. MULLEN
                                                 RYAN K. WONG
13                                               KRISTIN HUCEK
                                                 VICTOR CHIU
14                                               BILAL MALIK

15                                               Attorneys for Defendant
                                                 REAL INTENT, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

SUPPLEMENTAL STIPULATION REGARDING ELECTRONIC DISCOVERY
Case No. 5:20-cv-02819-EJD (SvK)
1749179

**Appendix A**
**(ESI Production Metadata Fields)**

| Field Name | Description |
|---|---|
| BegBates | Beginning Bates Number. |
| EndBates | Ending Bates Number. |
| BegAttach | Beginning Bates Number of the first Document in a Document family range. Documents that are part of Document families, i.e., containing parents and attachments, should receive a value. |
| EndAttach | Ending Bates number of the last document in a document family range. Documents that are part of document families, i.e., containing parents or attachments, should receive a value. |
| AttachRange | Bates number of the first page of the parent item and the Bates number of the last page of the last attachment "child" item, separated by a hyphen - |
| Attachment Count | Number of attachments |
| FileName | Filename of the original source ESI |
| NativeLink | Relative path and filename to produced native file. |
| EmailSubject | Subject line extracted from an Email. |
| Importance | Email importance flag to the extent reasonably and technically available. |
| Title | Title field extracted from the Metadata of a non-Email. |
| Document Subject | Subject field extracted from the metadata of a non-Email. |
| Author | Author field extracted from the Metadata of a non-Email. |
| From | From or Sender field extracted from an Email. |
| To | To or Recipient field extracted from an Email. |
| CC | CC or Carbon Copy field extracted from an Email. |
| BCC | BCC or Blind Carbon Copy field extracted from an Email. |
| DateSent | Sent date of an Email (mm/dd/yyyy format). |
| TimeSent | Sent time of an Email (hh:mm:ss format). |
| DateReceived | Received date of an Email (mm/dd/yyyy format). |
| TimeReceived | Received time of an Email (hh:mm:ss format). |
| DateCreated | Creation date of a file (mm/dd/yyyy format). |
| TimeCreated | Creation time of a file (hh:mm:ss format). |
| DateLastModified | Last modification date (mm/dd/yyyy format). |
| TimeLastModified | Last modification time (hh:mm:ss format). |
| DateLastPrinted | The date the document was last printed. |
| DateAccessed | The last accessed date of the document. |
| File Extension | File extension of Document (.msg, .doc, .xls, etc.) |
| Confidentiality | Confidentiality designation if a Document has been designated as such under any applicable confidentiality protective order; otherwise, blank. |
| Full Text | Relative file path to produced text/OCR File. |
| Message-ID | The Outlook Message ID assigned by the Outlook mail server, if applicable. |
| ConversationIndex | Unique alphanumeric identifier for an email conversation, which may be populated by the e-mail client for each outgoing message. |
| HASHValue | MD5 Hash value. |
| FilePath | The path to the original folder in which the document was located. |
| FileSize (in bytes) | Size of the file in bytes. |
| PageCount | Number of produced pages for a given document. |
| RecordType | To indicate "Paper," "Hard Copy," or "HC" if a hard copy document and "Edoc," "Edoc – Attachment," "Email," Or "Email Attachment" if it is an ESI item. |
| Application | Indicates software application that generated the ESI item (e.g., |

16

| | Outlook, Word). |
|---|---|
| Time Zone Processed | Time zone in which a Document was processed. |
| Number of Attachments | Number of attachments included with email. |
| Custodian | Individual from whom the documents originated |
| DuplicateCustodians | Custodians of deduplicated copies of document |

1749179