HOGAN LOVELLS US LLP
Patrick T. Michael (Bar No. 169745)
Helen Y. Trac (Bar No. 285824)
3 Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
patrick.michael@hoganlovells.com
helen.trac@hoganlovells.com

Christopher T. Pickens (admitted PHV)
8350 Broad Street, 17th Floor
Tysons, Virginia 22102
Telephone: (703) 610-6100
Facsimile: (703) 610-6200
christopher.pickens@hoganlovells.com

Damon M. Lewis (admitted PHV)
Lauren Cury (admitted PHV)
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
damon.lewis@hoganlovells.com
lauren.cury@hoganlovells.com

Attorneys for Plaintiff
SYNOPSYS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>                     Plaintiff,<br><br>        v.<br><br>REAL INTENT, INC.,<br><br>                     Defendant. | Case No. 5:20-cv-02819-EJD<br><br>**SECOND AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT, BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, PATENT INFRINGEMENT, AND TORTIOUS INTERFERENCE**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Synopsys, Inc. ("Synopsys") submits the following Complaint against Defendant Real Intent, Inc. ("Real Intent") for infringement of Synopsys' copyrights in its Design Compiler, PrimeTime, IC Compiler, IC Compiler II, and SpyGlass software products and associated documentation, for breach of the parties' Software License Agreement ("SLA"), for breach of the implied covenant of good faith and fair dealing, for infringement of U.S. Patent No. 9,721,057 ("the '057 Patent"), and for tortious interference with Synopsys' contracts and prospective economic advantage:

## NATURE OF THE ACTION

1.      Synopsys is a leader in the electronic design automation ("EDA") and semiconductor intellectual property industry.  It develops, manufactures, sells and licenses products and services that enable designers to create, model and verify complex integrated circuit ("IC") designs from concept to silicon.  Since 1986, engineers around the world have used Synopsys technology to design and create billions of integrated circuits and systems.

2.      Synopsys' Design Compiler product provides customers with a comprehensive solution for register transfer level ("RTL") synthesis and test.  Design Compiler synthesizes hardware description language ("HDL") descriptions of IC designs into optimized, technology-dependent, gate-level designs.  Design Compiler uses heuristics to implement a combination of library cells that meets the functional, speed, and area requirements of the IC design according to the attributes and constraints placed on it.  Design Compiler's optimization technology maps the IC design to an optimal combination of specific target logic library cells, based on the design's functional, speed, and area requirements.

3.      Synopsys' DesignWare Library is the industry's broadest portfolio of silicon-proven solutions for system-on-chip ("SoC") design.  The DesignWare Library contains a collection of technology-independent, reusable logic files created by Synopsys, which can be used in various combinations to define essential elements of a circuit's microarchitecture.  Use of the DesignWare Library enables faster circuit design and development by facilitating design reuse, optimizing synthesis, and simplifying the design verification process.

4.      Synopsys' SpyGlass platform provides designers with insight about their design,

functioning like an interactive guidance system for design engineers and managers to find the fastest and least expensive path to implementation for complex System on Chip ("SoC") designs. The SpyGlass product family is the industry standard for early design analysis, providing netlist accuracy checking, as well as in-depth analysis at the RTL phase of IC design.  SpyGlass includes a comprehensive set of electrical rules for ensuring design integrity, and provides an integrated solution for analysis, debug, and fixing through a complete set of capabilities for structural and electrical issues all tied to the RTL description of an IC design.  Among other things, the SpyGlass platform includes power optimization technology to assess and improve the power efficiency of IC designs, clock domain crossing ("CDC") verification technology, and reset domain crossing ("RDC") verification technology.  SpyGlass performs comprehensive structural and functional analysis using formal based and simulation based solutions to deliver signoff quality verification of IC designs.  VC SpyGlass is the newest generation of the SpyGlass product.

5.      Synopsys' IC Compiler and IC Compiler II products (collectively, "IC Compiler") provide customers with a comprehensive place-and-route system that, among other things, determines where each gate should be located on the physical chip (the placement portion of place-and-route), and routes wires between different elements on the chip while minimizing wire delay (the route portion of place-and-route).  Along with placement and routing, IC Compiler also handles clock tree synthesis, power routing, and block level floorplanning.  IC Compiler also contains static timing technology which computes the expected timing of a digital circuit without requiring simulation.

6.      Synopsys has a separate, timing sign-off tool, PrimeTime, that also computes the expected timing of a digital circuit without requiring simulation.  Among other things, PrimeTime provides customers with a trusted solution for timing sign-off, a required verification step before manufacturing of an integrated circuit chip.  Synopsys' IC Compiler and PrimeTime products are tightly correlated (*i.e.* the timing engines of these two products are correlated to produce closely matched timing results) because Synopsys uses some of the same proprietary static timing technology in both products.

7.      Real Intent describes itself as a leading provider of EDA software that provides tools for clock and reset domain crossing verification, advanced RTL analysis and sign-off.  Real Intent's Ascent, Meridian, and Verix products compete with certain Synopsys products, including SpyGlass and PrimeTime.

8.      Real Intent licensed certain products and design techniques from Synopsys for the sole purposes of developing, testing, supporting, and maintaining an interface between certain Synopsys products and certain Real Intent products.  Through its contracts with Synopsys, Real Intent agreed to maintain the confidentiality of Synopsys' confidential and proprietary information and also agreed, among other things, not to reverse engineer or copy Synopsys' proprietary materials, including software or other proprietary materials provided under the license agreements.

## THE PARTIES

9.      Synopsys is a corporation organized under Delaware law with its principal place of business in Santa Clara County at 690 East Middlefield Road, Mountain View, California 94043.

10.     On information and belief, Real Intent is a corporation organized under California law with its principal place of business in Santa Clara County at 932 Hamlin Court, Sunnyvale, California 94089.  Real Intent also claims to have offices in Japan, Europe, China, Korea, India, Israel, and Taiwan.

## JURISDICTION AND VENUE

11.     This action arises in part under the United States Copyright Act, 17 U.S.C. § 101, *et seq.*, and the patent laws of the United States, 35 U.S.C. § 100, *et seq.*  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

12.     This Court has supplemental subject matter jurisdiction over the pendent common law claims under 28 U.S.C. § 1367 because these claims are so related to Synopsys' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

13.     Real Intent is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the California Long Arm Statute because (1) it is incorporated in

the State of California and has its principal place of business within this judicial district, and (2) has substantial business within this State and judicial district, including at least part of its infringing activities alleged herein and regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale and sold, as well as services provided to California residents.

14.     Venue in this judicial district is appropriate under 28 U.S.C. §§ 1391 and 1400. Venue is proper in this judicial district because, among other things, (1) Real Intent has a regular and established place of business in this judicial district, (2) a substantial part of the events or omissions which give rise to the claims herein occurred in Santa Clara County, California, and (3) agreements between the parties provide federal and state courts within Santa Clara County, California with exclusive jurisdiction over disputes arising from or relating to the agreements.

## FACTUAL BACKGROUND

### Synopsys' Intellectual Property

15.     As a world leader in EDA, Synopsys is helping the electronics market innovate smarter, connected and more secure technology in all aspects of semiconductor design, verification, IP integration, and application security testing.  Synopsys provides a complete front-to-back design and test environment, software-level to silicon-level verification, design reuse technology, field-programmable gate array solutions, and professional services to help its customers get their silicon working quickly and accurately.  These technology-leading solutions help give Synopsys customers a competitive edge in quickly bringing the best products to market while reducing costs and schedule risk.  Since 1986, engineers around the world have used Synopsys technology to design and create billions of integrated circuits and systems.

16.     Design Complier is a proprietary suite of tools that enables integrated circuit designers to maximize productivity with concurrent optimization of timing, area, power, and test prior to physical implementation.  For over three decades, Synopsys' Design Compiler product has been an industry leading tool for RTL synthesis and test.  Design Compiler is used by integrated circuit designers in the U.S. and worldwide and provides customers a rapid, cost-effective path to high-quality tests and working silicon.  Synopsys has continuously developed

Hogan Lovells US LLP
Attorneys At Law
San Francisco

SECOND AMENDED COMPLAINT

new and innovative features for its Design Compiler product which deliver superior quality of results and streamline the flow for a faster and more predictable design implementation.

17.    To address the important issue of timing in integrated circuit designs, Synopsys spent years investing in and developing PrimeTime – its proprietary static timing analysis ("STA") tool that computes the expected timing of a digital circuit without requiring simulation – and provides customers with a trusted solution for timing sign-off, a required verification step before manufacturing.  PrimeTime is a successful product and is widely used for gate-level static timing analysis.

18.    To address the need for static and formal verification of integrated circuit designs, Synopsys spent years investing in and developing SpyGlass.  SpyGlass is a set of design analysis tools that help integrated circuit designers identify design bugs early in the product development phase.  Synopsys has invested many years and significant money in the development of SpyGlass, a trusted solution for lint checking, CDC verification, PrimeTime compatibility and early power exploration that speeds the development of complex SoC designs before handoff to back-end physical implementation tools.

19.    To address the need for a place-and-route solution that delivers quality of results for next generation integrated circuit designs, Synopsys spent years investing in and developing the IC Compiler products.

20.    Design Compiler includes hundreds of Synopsys proprietary commands, options, variables, objects, and attributes (the compilation of which is sometimes referred to as a "command set").  PrimeTime also has a command set, which includes a portion of the Design Compiler command set, as well as additional Synopsys proprietary commands, options, variables, objects and attributes.  Other Synopsys products—including SpyGlass, Design Vision, HDL Compiler, and the IC Compiler products—include some or all of the Design Compiler command set, as well as additional Synopsys proprietary commands, options, variables, objects, and/or attributes, in their own command sets.

21.    These proprietary Synopsys command sets are used within customer "scripts" that are input into and executed by Synopsys products.  The commands, options, variables, objects,

and attributes, and the command set compilations of those items, are proprietary to Synopsys and are not part of any open format or standard.

22.     Design Compiler, PrimeTime, IC Compiler and SpyGlass also support a set of open source commands referred to as Synopsys Design Constraints ("SDC") that are distinct from the Synopsys proprietary commands, options, variables, objects, and attributes and are not the subject of this lawsuit.  However, Synopsys includes additional, proprietary options for certain of the SDC commands in the command sets for its tools.  These proprietary options are not open source and are not part of SDC.

23.     Synopsys' engineers and software developers expended significant creativity, time and effort in developing the individual input commands, options, variables, objects and attributes, as well as the larger command set compilation of those items.  In addition to developing Design Compiler, PrimeTime, IC Compiler and SpyGlass, Synopsys also invests substantial time, effort, and money to protect its intellectual property, and add technology and engineering talent to advance Synopsys' synthesis, place-and-route, verification, and timing analysis solutions.

24.     The Design Compiler, IC Compiler, PrimeTime and SpyGlass software and associated user documentation are original works of authorship and are subject to copyright protection.

25.     Synopsys owns all rights to the Design Compiler software and user documentation, which have been registered with the United States Copyright Office: U.S. Registration Nos. TX 2-616-958, TX 8-861-313, TX 8-863-011, TX 8-863-045, TX 8-863-868, and TX 8-863-872.  True and correct copies of these registrations are attached as Exhibits 1–6.

26.     Synopsys owns all rights to the IC Compiler software and user documentation, which have been registered with the United States Copyright Office, including: U.S. Registration Nos. TX 8-426-385, TX 8-426-420, TX 8-426-612, TX 8-426-814, TX 8-426-822, and TX 8-862-510.  True and correct copies of these registrations are attached as Exhibits 7–12.

27.     Synopsys owns all rights to the PrimeTime software and user documentation, which have been registered with the United States Copyright Office: U.S. Registration Nos. TX 6-539-658, TX 6-539-659, TX 6-539-660, TX 6-539-661, TX 6-539-662, and TX 8-861-114.

1    True and correct copies of these registrations are attached as Exhibits 13–18.

2    28.    Synopsys owns all rights to the SpyGlass software and user documentation, which

3    have been registered with the United States Copyright Office:  U.S. Registration Nos. TX 8-957-

4    319 and TX 8-956-844.  True and correct copies of these registrations are attached as Exhibits 20-

5    21.

6    29.    Synopsys has also developed novel techniques and technologies related to

7    integrated circuit design, testing, and verification, which are protected by numerous U.S. Patents.

8    30.    U.S. Patent No. 9,721,057 ("the '057 Patent"), entitled "System and Method for

9    Netlist Clock Domain Crossing Verification," was duly and legally issued by the U.S. Patent and

10   Trademark Office ("USPTO") on August 1, 2017.  Synopsys is the assignee and holder of all

11   rights, title, and interests in the '057 Patent, including without limitation all rights to sue for

12   damages for infringement thereof.  A true and correct copy of the '057 Patent is attached hereto

13   as Exhibit 19.

14   31.    In addition to its tool suites, Synopsys has spent three decades developing its

15   DesignWare Library.  The DesignWare Library contains a collection of technology-independent,

16   reusable logic files (or "DesignWare Library components") created by Synopsys, which are

17   tightly integrated into the Synopsys synthesis environment and can be used in various

18   combinations to define essential elements of a circuit's microarchitecture.  Synopsys customers

19   license the DesignWare Library in conjunction with Design Compiler under a single license

20   agreement.  The Library's array of pre-validated, synthesizable components enables faster circuit

21   design and development by facilitating design reuse, optimizing synthesis, and simplifying the

22   design verification process.

23   32.    Synopsys invests substantial time, effort, and money to protect its DesignWare

24   Library.  Each component within the DesignWare Library is encrypted, such that the specifics of

25   its design and function are not visible to customers or other third parties.  In addition, access to

26   the DesignWare Library is subject to limited use and confidentiality provisions contained in each

27   end user's Design Compiler license agreement.  Collectively, these provisions permit use of

28   DesignWare "solely for the purpose of creating, modifying, and simulating" the end user's

designs and prohibit external sharing of DesignWare Library components with unlicensed third parties.

33.     Synopsys allows DesignWare Library components, which are encrypted, to be used only with its tools.  To enable third-party verification of circuit designs containing DesignWare Library components, Synopsys has also created DesignWare "simulation models." Simulation models are compatible with third-party verification tools and can be used to simulate DesignWare component behavior during the design verification process.  They are subject to the same use and confidentiality restrictions as DesignWare Library components and are accessible only to licensed Design Compiler end users and collaborators.  The models may not be shared with unlicensed third parties.

34.     DesignWare simulation models are designed to be functionally equivalent to DesignWare Library components, but they cannot offer the same degree of accuracy as using the components themselves.  Only Synopsys tools (including SpyGlass) are capable of consuming DesignWare Library components and ensuring hardware equivalence, which provides Synopsys with a competitive advantage with respect to customers of Synopsys' tools.

**Real Intent's Access to Synopsys' Software and Other Proprietary Information**

35.     Synopsys and Real Intent first entered into a contractual relationship on March 26, 2015.  On that date, Synopsys and Real Intent entered into the in-Sync License and Cooperative Agreement No. ILC-70010729-002 ("2015 in-Sync Agreement").  Under the 2015 in-Sync Agreement, Synopsys granted a limited license to Real Intent to use Synopsys' HDL Compiler, VHDL Compiler, Design Vision, and VCSMXi products ("the Synopsys Licensed Products") solely for the purpose of developing, testing, supporting, and maintaining an interface between certain Real Intent products and the Synopsys Licensed Products.  Real Intent had access to the Design Compiler command set at least through its limited license to Design Vision.

36.     The 2015 in-Sync Agreement did not grant any license rights to Design Compiler, PrimeTime, IC Compiler, or SpyGlass software or documentation.  The 2015 in-Sync Agreement did not permit Real Intent to copy, or create derivative works of, any part of the Design Compiler, PrimeTime, IC Compiler, or SpyGlass software or documentation, including the proprietary

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SECOND AMENDED COMPLAINT

command sets and/or man pages.

37.     The 2015 in-Sync Agreement explicitly prohibited Real Intent from, among other things, (1) decompiling, disassembling, reverse engineering, or attempting to reconstruct, identify, or discover any source code, underlying ideas, underlying user interface techniques, or algorithms of the Synopsys Licensed Products; (2) incorporating into or with other software, or creating a derivative work of, any part of the Synopsys Licensed Products; or (3) using the Synopsys Licensed Products to develop or enhance any product that competes with a Synopsys Licensed Product.

38.     The 2015 in-Sync Agreement also restricted Real Intent from disclosing Synopsys' confidential information and prohibited Real Intent from using Synopsys confidential information for purposes other than those necessary to directly further the purposes of the 2015 in-Sync Agreement.  Real Intent agreed to take reasonable steps to protect the confidentiality of and avoid unauthorized use of Synopsys confidential information.

39.     On July 15, 2015, Synopsys and Real Intent entered into Amendment #1 to ILC-70010729-002, which amended the 2015 in-Sync Agreement.  The amendment added an additional Synopsys Licensed Product, Library Compiler, but did not otherwise amend the parties' 2015 in-Sync License Agreement.

40.     On March 10, 2016, Synopsys and Real Intent entered into an in-Sync License and Cooperative Agreement, No. ILC-70010729-003 ("2016 in-Sync Agreement"), which renewed the 2015 in-Sync Agreement.  The 2016 in-Sync Agreement did not alter the Synopsys Licensed Products, the scope of Real Intent's limited license to the Synopsys Licensed Products, Real Intent's confidentiality obligations, or the explicit prohibitions barring Real Intent from, among other things, (1) decompiling, disassembling, reverse engineering, or attempting to reconstruct, identify, or discover any source code, underlying ideas, underlying user interface techniques, or algorithms of the Synopsys Licensed Products; (2) incorporating into or with other software, or creating a derivative work of, any part of the Synopsys Licensed Products; or (3) using the Synopsys Licensed Products to develop or enhance any product that competes with a Synopsys Licensed Product.

41.     On April 5, 2017, Synopsys and Real Intent entered into the Synopsys Loan Agreement, No. SLNA-70010729 ("SLA").  Under the SLA, Synopsys granted a limited license to Real Intent to use Synopsys' HDL Compiler, VHDL Compiler, Design Vision, and Library Compiler products (the "Licensed Products") solely for the purpose of developing, testing, supporting, and maintaining an interface between the Licensed Products and certain Real Intent products.  Real Intent had access to the Design Compiler command set at least through its limited license to Design Vision.

42.     The SLA did not grant any license rights to Design Compiler, PrimeTime, IC Compiler, or SpyGlass software or documentation.  The SLA did not permit Real Intent to copy, or create derivative works of, any part of the Design Compiler, PrimeTime, IC Compiler, or SpyGlass software or documentation, including the proprietary command sets and/or man pages.

43.     The SLA explicitly prohibited Real Intent from, among other things, (1) decompiling, disassembling, reverse engineering, or attempting to reconstruct, identify, or discover any source code, underlying ideas, underlying user interface techniques or algorithms of the Licensed Products; (2) incorporating into or with other software, or creating a derivative work of any part of the Licensed Products; or (3) using the Licensed Products to develop or enhance any product that competes with a Licensed Product.

44.     The SLA also restricted Real Intent from disclosing Synopsys' confidential information and prohibited Real Intent from using Synopsys confidential information for purposes other than those necessary to directly further the purposes of the SLA.  Real Intent agreed to take reasonable steps to protect the confidentiality of and avoid unauthorized use of Synopsys confidential information.

45.     In 2019, Real Intent solicited several Synopsys employees knowledgeable about Synopsys' SpyGlass product and its command set, including its inclusion of certain portions of the Design Compiler and PrimeTime command sets.  At least one Synopsys employee left Synopsys to join Real Intent.  Upon information and belief, before departing Synopsys, he attempted to copy numerous confidential and proprietary Synopsys documents related to SpyGlass onto a portable storage device to take to his new job at Real Intent.  Upon information

and belief, confidential and proprietary Synopsys information on the portable storage device included portions of the Design Compiler, IC Compiler, PrimeTime and/or SpyGlass command sets.

**Real Intent Copied From The Design Compiler, PrimeTime, IC Compiler, and SpyGlass Command Sets**

46. On information and belief, Real Intent gained access to the Synopsys proprietary command sets for Design Compiler, IC Compiler, PrimeTime and/or SpyGlass through unlicensed and unauthorized access of Synopsys information directly or indirectly through a third-party intermediary, and/or through the Synopsys software and documentation Real Intent received pursuant to the parties' in-Sync Agreements and subsequent SLA.

47. On information and belief, upon gaining such access, Real Intent copied a qualitatively and/or qualitatively substantial portion of the Synopsys proprietary commands, options, variables, objects, and attributes in the Design Compiler, IC Compiler, PrimeTime, and/or SpyGlass command sets.

48. On information and belief, Real Intent incorporated a qualitatively and/or qualitatively substantial portion of the Synopsys proprietary command sets for Design Compiler, IC Compiler, PrimeTime, and/or SpyGlass into Real Intent's own software products and documentation, including its Ascent, Meridian, and Verix suites of tools. Real Intent copied a qualitatively and/or qualitatively substantial portion of Synopsys' documentation for its Design Compiler, IC Compiler, PrimeTime, and/or SpyGlass products into Real Intent's product documentation, including documentation for the Ascent, Meridian, and Verix suites of tools.

49. Real Intent's software products, including its Ascent, Meridian, and Verix suites of tools, compete with certain Synopsys products, including Synopsys' SpyGlass products. Real Intent advertises on its website that Verix's "capability of reading/using multi-mode SDC (design constraints) of STA for running CDC in multi-mode elevates Verix CDC to a sign-off tool." As a result, Real Intent's Verix suite of tools also competes with Synopsys' STA sign-off tool, PrimeTime.

50. On information and belief, Real Intent's use and copying of Synopsys'

proprietary and copyrighted command sets enables Real Intent to improperly compete for Synopsys' customers and revenue.  Similarly, Real Intent's use and copying of Synopsys' proprietary and copyrighted documentation enabled Real Intent to improperly compete for Synopsys' customers and revenue.

51.     On information and belief, Real Intent increased its market share and improperly took customers and revenue from the Synopsys' SpyGlass and PrimeTime products because it copied Synopsys' intellectual property.

**Real Intent Improperly Acquired and Used Synopsys' DesignWare Files**

52.     Real Intent gained unlicensed and unauthorized access to Synopsys DesignWare simulation models.  Upon information and belief, it did so by soliciting them from licensed Design Compiler users seeking to evaluate or use Real Intent verification tools.  Real Intent began collecting DesignWare simulation models in this manner as early as 2010 and has amassed a library of approximately five hundred files containing DesignWare simulation models.

53.     On information and belief, Real Intent has known at all relevant times that Synopsys makes DesignWare Library components and simulation models available only pursuant to a valid end user license agreement, and subject to confidentiality and use restrictions.  Real Intent has known at all relevant times that it does not hold, and has not ever held, a license agreement permitting access to the DesignWare Library components or simulation models, and accordingly, that its possession of DesignWare simulation models was unauthorized.

54.     Upon gaining unauthorized access to Synopsys' DesignWare simulation models, Real Intent modified those files to create synthesizable IP blocks that are designed to be equivalent to Synopsys' protected DesignWare Library components.  Real Intent also removed Synopsys identifiers and notices from these files and distributed them to customers as if they were Real Intent's own intellectual property.

55.     On information and belief, Real Intent promoted its library of modified DesignWare simulation models—in both sales communications and product documentation—as an independently developed "replacement" for DesignWare Library components, without

SECOND AMENDED COMPLAINT

1  acknowledging Synopsys' authorship or property rights in the files it was distributing.

2        56.     On information and belief, Real Intent's improper acquisition and misuse of

3  Synopsys' DesignWare simulation models was calculated to induce the breach of and/or disrupt

4  Synopsys' contracts and economic relationships with Design Compiler users.  As a party familiar

5  with the standard terms of Synopsys' license agreements, Real Intent has known at all relevant

6  times that Design Compiler customers were substantially certain to violate the terms of their

7  agreements with Synopsys by providing DesignWare simulation models to Real Intent—an

8  unlicensed third party.  Furthermore, only these licensed customers have access to encrypted

9  DesignWare Library components, and only Synopsys tools (e.g. SpyGlass) can decrypt and

10 access the internal workings of those components.  By providing Synopsys customers with

11 "replacement" components that can be used with Real Intent's tools, Real Intent sought to

12 eliminate an advantage of the SpyGlass tool that is exclusive and proprietary to Synopsys,

13 causing harm to Synopsys.

14       57.     On information and belief, as a direct result of Real Intent's improper acquisition

15 and misuse of DesignWare simulation models, Real Intent increased its market share by diverting

16 Design Compiler users from purchasing corresponding Synopsys' SpyGlass tools, causing harm

17 to Synopsys.

18                     **COUNT I: COPYRIGHT INFRINGEMENT**

19       58.     Synopsys incorporates paragraphs 1–57 as if fully set forth herein.

20       59.     The Design Compiler software and user documentation, IC Compiler software and

21 user documentation, PrimeTime software and user documentation, and SpyGlass software and

22 user documentation (collectively, "Copyrighted Software") are original works of authorship and

23 constitute copyrightable subject matter under the copyright laws of the United States, 17 U.S.C.

24 § 101 *et seq.*  The Copyrighted Software has been registered with the Copyright Office.  Relevant

25 U.S. Registration Numbers include: TX 2-616-958, TX 6-539-658, TX 6-539-659, TX 6-539-660,

26 TX 6-539-661, TX 6-539-662, TX 8-426-385, TX 8-426-420, TX 8-426-612, TX 8-426-814, TX

27 8-426-822, TX 8-861-114, TX 8-861-313, TX 8-862-510, TX 8-863-011, X 8-863-045, TX 8-

28 863-868, TX 8-863-872, TX 8-957-319, and TX 8-956-844.

60.     Synopsys is the owner of all right, title, and interest to the copyright registrations for the Copyrighted Software and has complied in all respects with the laws governing copyright. The Copyrighted Software includes the proprietary Design Compiler command set, the proprietary IC Compiler command sets, proprietary PrimeTime command set, and the proprietary SpyGlass command set.

61.     In compliance with copyright regulations, Synopsys filed with the Copyright Office a copyright application, the registration fee and a deposit of the works being registered. The effective date of the copyright registration is the day on which an application, deposit, and fee have all been received in the Copyright Office.  17 U.S.C. § 410(d).

62.     As owner of the Copyrighted Software, Synopsys enjoys the exclusive right to, among other things, reproduce the Copyrighted Software, prepare derivative works, and distribute copies of the Copyrighted Software.  17 U.S.C. §§ 101, 106.

63.     On information and belief, Real Intent had access to the Copyrighted Software and copied portions of the Copyrighted Software in the form of the proprietary Design Compiler command set, the proprietary IC Compiler command sets, the proprietary PrimeTime command set, the proprietary SpyGlass command set, Design Compiler user documentation, IC Compiler user documentation, PrimeTime user documentation, and/or SpyGlass user documentation.

64.     On information and belief, Real Intent copied portions of the Copyrighted Software in the form of the proprietary Design Compiler, PrimeTime, IC Compiler, and/or SpyGlass command sets.

65.     On information and belief, Real Intent copied portions of the user documentation for the Copyrighted Software in the form of the proprietary Design Compiler, PrimeTime, IC Compiler, and/or SpyGlass user documentation, including man pages.

66.     On information and belief, Real Intent without authorization created, reproduced, and distributed derivative works, including the Ascent, Meridian, and Verix products and associated documentation, based upon the Copyrighted Software, by copying the proprietary Design Compiler command set, the IC Compiler proprietary command sets, the PrimeTime proprietary command set, the SpyGlass proprietary command set, the Design Compiler user

documentation, the IC Compiler user documentation, the PrimeTime user documentation, and/or the SpyGlass user documentation.

67.     By its actions alleged above, Real Intent directly infringed and will continue to infringe, Synopsys' copyrights in the Copyrighted Software by creating, reproducing, and distributing the Ascent, Meridian, and Verix software products and associated documentation.

68.     On information and belief, Real Intent's infringement was deliberate, willful, and in disregard of Synopsys' rights, and it was committed for the purpose of commercial gain.

69.     The direct infringement of Synopsys' copyrights by Real Intent harmed and will continue to irreparably harm Synopsys unless restrained by this Court.  Synopsys' remedy at law is not adequate, by itself, to compensate for the harm inflicted and threatened by Real Intent. Thus, in addition to all other remedies to which it is entitled, Synopsys is entitled to injunctive relief restraining Real Intent, its officers, agents, employees, and all persons acting in concert with it from engaging in further acts of copyright infringement as described herein.

70.     As a direct and proximate result of Real Intent's copyright infringement, Synopsys has suffered and will continue to suffer monetary loss to its business reputation and goodwill. Synopsys is also entitled to recover from Real Intent the damages it has suffered and will continue to suffer as a result of Real Intent's infringement, in actual amounts to be proven at trial and including, but not limited to, any and all gains, profits, and advantages Real Intent has obtained as a result of its infringement.  In the alternative, Synopsys is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

71.     Synopsys is also entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505, Section 16.6 of the 2015 in-Sync Agreement, Section 16.6 of the 2016 in-Sync Agreement, and Section 9.9 of the SLA.

## **COUNT II: BREACH OF CONTRACT – BREACH OF CONTRACT**

72.     Synopsys incorporates paragraphs 1–71 as if fully set forth herein.

73.     Synopsys and Real Intent were parties to the 2015 in-Sync Agreement, a valid contract.

74.     Synopsys and Real Intent were parties to the 2016 in-Sync Agreement, a valid

contract.

75.     Synopsys and Real Intent were parties to the SLA, a valid contract.

76.     Synopsys performed all conditions, covenants, and promises required on its part to be performed in accordance with the 2015 in-Sync Agreement's terms and conditions, and any and all other conditions required by the 2015 in-Sync Agreement for Real Intent's performance occurred.

77.     Synopsys performed all conditions, covenants, and promises required on its part to be performed in accordance with the 2016 in-Sync Agreement's terms and conditions, and any and all other conditions required by the 2016 in-Sync Agreement for Real Intent's performance occurred.

78.     Synopsys performed all conditions, covenants, and promises required on its part to be performed in accordance with the SLA's terms and conditions, and any and all other conditions required by the SLA for Real Intent's performance occurred.

79.     Upon information and belief, Real Intent breached its obligations under the 2015 in-Sync Agreement, the 2016 in-Sync Agreement, and/or the SLA by at least: (i) reverse engineering and/or attempting to reconstruct, identify, or discover underlying user interface techniques of the Licensed Products, including Synopsys' Design Vision product that permits access to Design Compiler commands on the command line in the GUI or the shell; (ii) modifying, incorporating into or with other software, and/or creating a derivative work of the Licensed Products, including Synopsys' Design Vision product and its support for the Design Compiler command set; and, (iii) using the Licensed Products, including Synopsys' Design Vision product and its support for the Design Compiler command set, in a manner other than for developing, testing, supporting, and maintaining an interface between the Licensed Products and Real Intent's products specified in the design flow attached to the SLA.

80.     As a direct and proximate result of Real Intent's breaches, Synopsys has been damaged in an amount to be proven at trial. Real Intent misused Synopsys' confidential and proprietary information against Synopsys—for the benefit of Real Intent—to compete unfairly in the marketplace. Through its breaches, Real Intent was able to unfairly compete with Synopsys,

including Synopsys' SpyGlass product suite, even though Real Intent did not invest the time, money, and/or other resources that Synopsys did to develop such products, services and technology.  As a result, Synopsys has suffered and will continue to suffer economic injury and monetary loss to its business, including, for example, lost sales and price erosion of Synopsys' products.

81.     Synopsys is also entitled to recover its attorneys' fees and costs of suit pursuant to Section 16.6 of the 2015 in-Sync Agreement, Section 16.6 of the 2016 in-Sync Agreement, and Section 9.9 of the SLA.

### COUNT III: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

82.     Synopsys incorporates paragraphs 1–81 as if fully set forth herein.

83.     Real Intent entered into contracts with Synopsys under which Real Intent was provided access to certain Synopsys confidential information, and agreed to terms of confidentiality and use with respect to Synopsys confidential information.

84.     Synopsys performed all duties under the 2015 in-Sync Agreement, 2016 in-Sync Agreement, and SLA, and all conditions for performance by Real Intent had occurred.

85.     Nothing in the SLA authorizes Real Intent to copy any portion of Synopsys documentation or any portion of Synopsys Products, including their proprietary command sets, into Real Intent's products.  Real Intent agreed under the SLA to take reasonable steps to protect the confidentiality of and avoid unauthorized use of Synopsys' confidential information.

86.     Nothing in the 2015 in-Sync Agreement or the 2016 in-Sync Agreement authorizes Real Intent to copy any portion of Synopsys Products, including their proprietary command sets, or Synopsys documentation into Real Intent's products.  Real Intent agreed under the SLA to take reasonable steps to protect the confidentiality of and avoid unauthorized use of Synopsys' confidential information.

87.     The SLA, the 2016 in-Sync Agreement, and the 2015 in-Sync Agreement each contained and imposed an implied covenant of good faith and fair dealing that Real Intent would not improperly reverse engineer, access, use, disclose, and/or copy from Synopsys products that

1   were not among the Licensed Products and/or the Synopsys Licensed Products.

2       88.    The SLA, the 2016 in-Sync Agreement, and the 2015 in-Sync Agreement each

3   contained and imposed an implied covenant of good faith and fair dealing that Real Intent would

4   not improperly reverse engineer, access, use, disclose, and/or copy Synopsys Confidential

5   Information that it gained access to, directly or indirectly, through an unauthorized third party

6   intermediary.

7       89.    Despite this covenant, on information and belief, Real Intent's Ascent, Meridian,

8   and Verix software products and user documentation contain excerpts from the confidential

9   Design Compiler, IC Compiler, PrimeTime, and/or SpyGlass command sets and user

10  documentation.

11      90.    Real Intent's acts of improperly incorporating parts of the Design Compiler, IC

12  Compiler, PrimeTime, and/or SpyGlass user documentation and commands set into Real Intent

13  products were wrongful, independent of any breach of contract itself.  Real Intent wrongfully

14  maintained an ongoing contractual relationship with Synopsys and took advantage of that

15  contractual relationship to use and benefit from Synopsys' confidential and proprietary materials.

16  Real Intent's bad faith conduct denied and was calculated to deny Synopsys the benefit of those

17  contracts, including its bargained-for expectation that Real Intent would respect and protect

18  Synopsys' proprietary and confidential information.

19      91.    The wrongful acts of Real Intent described herein, including its breaches of the

20  implied covenants contained in and imposed by the SLA, were at all relevant times undertaken in

21  bad faith.

22      92.    Through its breaches of the covenant of good faith and fair dealing, Real Intent

23  misued Synopsys' confidential and proprietary information against Synopsys—and for the

24  benefit of Real Intent—to compete unfairly in the marketplace.  As a direct and proximate result

25  of Real Intent's breaches, Synopsys has suffered and will continue to suffer economic injury and

26  monetary loss to its business, including, for example, lost sales and price erosion of Synopsys'

27  products.

28      93.    Real Intent's breaches of the covenant of good faith and fair dealing have caused

1    damage to Synopsys in an amount to be proven at trial.

2        94.    As a direct and proximate result of the actions of Real Intent alleged herein,

3    Synopsys has been irreparably harmed, and that harm will continue absent an injunction

4    restraining Real Intent from improperly using, copying, publishing, disclosing, or transferring

5    materials gained through the improper copying of Synopsys' user documentation and its Design

6    Compiler, IC Compiler, PrimeTime, and SpyGlass command sets.

7                    **COUNT IV: INFRINGEMENT OF THE '057 PATENT**

8        95.    Synopsys incorporates paragraphs 1–94 as if fully set forth herein.

9        96.    On information and belief, Real Intent and/or users of the Real Intent Verix PCDC

10   software product, also known as Verix PhyCDC (Verix PCDC and Verix PhyCDC are

11   collectively and disjointedly referred to herein as "PCDC") have directly infringed (either literally

12   or under the doctrine of equivalents) and continue to directly infringe one or more claims of the

13   '057 Patent by making, using, offering to sell, and/or selling PCDC within the United States

14   without authority or license, in violation of 35 U.S.C. § 271(a).

15       97.    As just one non-limiting example, set forth below is an exemplary infringement

16   claim chart for claim 1 of the '057 Patent against PCDC.  Synopsys reserves the right to modify

17   this chart, including on the basis of information it learns through discovery.

| '057 Patent Claim 1 | Real Intent PCDC |
|---|---|
| An automated method, implemented as design verification software running on a computer system having a data storage and a processor, for netlist clock domain crossing (CDC) verification, the method comprising: | PCDC is a design verification software product that runs on a conventional computer system that includes, among other things, a central processing unit ("CPU"), random access memory ("RAM"), and other data storage media such as a hard disk drive and/or a solid state drive.  Real Intent advertises that PCDC "performs gate-level, multimode CDC sign-off." *See* https://www.realintent.com/gate-level-cdc-verix-pcdc/; https://www.techdesignforums.com/blog/2015/05/21/meridian-physical-cdc-real-intent/; https://www.youtube.com/watch?v=SdF3xEoBmI0. |
| receiving, by a data storage accessible to a processor, (a) a register-transfer-level (RTL) design of an integrated circuit, together with RTL-level CDC constraints for the RTL design, (b) RTL CDC verification results, and (c) a | As shown in the below diagram, in order to perform gate-level, multimode CDC sign-off, PCDC receives a variety of data generated by and/or provided by the Verix CDC product, including an RTL description of a circuit design, constraints for the design, and CDC verification results.  Upon information and belief, a data storage, such as RAM or other data storage media such as a hard disk drive and/or a solid state drive, stores a netlist description of the circuit design as |

Hogan Lovells US LLP
Attorneys At Law
San Francisco

| | |
|---|---|
| netlist corresponding to the RTL design; | received by PCDC.  Real Intent advertises that PCDC "fully leverages the Verix Multimode CDC RTL sign off data" and "results from RTL CDC."  *See* https://www.realintent.com/gate-level-cdc-verix-pcdc/; https://www.youtube.com/watch?v=SdF3xEoBmI0.  *See also* http://deepchip.com/gadfly/gad062218.html ("**Verix PhyCDC** goes complete gate-level netlist CDC sign-off with glitch checking.  Uses SDC constraints and RTL CDC results for fast incremental sign-off of all pathways."); https://www.globenewswire.com/news-release/2018/06/18/1525749/0/en/Real-Intent-Launches-Verix-PhyCDC-the-Next-Innovation-in-SoC-Design-Sign-off.html ("Verix PhyCDC ... leverages the results from RTL CDC to identify incremental CDC paths and constraints to optimize the CDC analysis at gate level.… Its easy setup by reusing constraints from RTL, … and incremental sign-off through diff analysis gives implementation teams the fastest pathway for RTL + Netlist CDC sign-off."). |
| migrating, by the processor, the RTL-level CDC constraints to netlist CDC constraints and storing the migrated netlist CDC constraints in the data storage; | Because "RTL CDC constraints are not directly applicable to the netlist," PCDC migrates RTL-level CDC constraints to netlist CDC constraints.  This allows "[e]asy setup by reusing constraints from RTL" and avoids "manual conversion of constraints from RTL to Netlist [which] is error-prone and needs high effort."  "All the CDC analysis data is stored in a database."  *See* https://www.realintent.com/gate-level-cdc-verix-pcdc/.  Upon information and belief, this stored data includes the migrated constraints.  *See also* https://www.youtube.com/watch?v=SdF3xEoBmI0; https://www.globenewswire.com/news-release/2018/06/18/1525749/0/en/Real-Intent-Launches-Verix-PhyCDC-the-Next-Innovation-in-SoC-Design-Sign-off.html ("easy setup by reusing constraints from RTL"). |
| checking, by the processor, the received netlist for asynchronous clock domain crossings using the migrated netlist CDC constraints to identify correspondences between RTL and netlist level | PCDC "performs gate-level, multimode CDC sign-off, ensuring that all signals crossing from one clock domain to another asynchronous domain are reliably captured."  *See* https://www.realintent.com/gate-level-cdc-verix-pcdc/. As shown in the below diagram, results are provided to users via "Verix PCDC's smart reporting [that] keeps users focused |

SECOND AMENDED COMPLAINT

| | |
|---|---|
| crossings and reporting any CDC violations found in the netlist; and | on important issues through efficient organization of findings. Helpful guidance and suggested actions help users pinpoint the source of the problems quickly." "Real Intent's state-of-the-art design intent debugger and analysis manager—iDebug—provides for user configurability and programmability with its command line interface (CLI).  All the CDC analysis data is stored in a database that can be accessed through the CLI, so users are not stuck with one methodology that the tool provides for debug."  *See* https://www.realintent.com/gate-level-cdc-verix-pcdc/. |
| comparing, by the processor, netlist CDC verification results with the received RTL CDC verification results and reporting similarities and differences between the netlist CDC verification results with the received RTL CDC verification results. | Upon information and belief, PCDC compares and reports similarities and differences between the RTL CDC and the netlist CDC.  PCDC "[e]nables incremental sign-off through CDC-diff analysis."  "PCDC's smart reporting keeps users focused on important issues through efficient organization of findings.  Helpful guidance and suggested actions help users pinpoint the source of problems quickly.  Real Intent's state-of-the-art design intent debugger and analysis manager—iDebug—provides for user configurability and programmability with its command line interface (CLI).  CDC analysis data is stored in a database that can be accessed through the CLI, so users are not stuck with one methodology that the tool provides for debug" *See* https://www.realintent.com/gate-level-cdc-verix-pcdc/; *see also* https://www.globenewswire.com/news-release/2018/06/18/1525749/0/en/Real-Intent-Launches-Verix-PhyCDC-the-Next-Innovation-in-SoC-Design-Sign-off.html ("Verix PhyCDC also includes iDebug, Real Intent's state-of-the-art design intent debugger and data manager. … Its easy setup by reusing constraints from RTL, parallel processing to significantly reduce runtime, and incremental sign-off through diff analysis gives implementation teams the fastest pathway for RTL + Netlist CDC sign-off."). |

98.     Additionally and/or alternatively, Real Intent has indirectly infringed and continues to indirectly infringe the '057 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of PCDC to directly infringe the '057 Patent.  In particular, Real Intent had actual

1    knowledge of the '057 Patent no later than the filing of this complaint; Real Intent intentionally

2    causes, urges, or encourages users of PCDC to directly infringe one or more claims of the '057

3    Patent by promoting, advertising, and instructing customers and potential customers about PCDC

4    and uses thereof, including infringing uses (*see, e.g.,* https://www.realintent.com/gate-level-cdc-

5    verix-pcdc/); Real Intent knows (or should know) that its actions will induce PCDC users to

6    directly infringe one or more claims of the '057 Patent; and users of PCDC directly infringe one

7    or more claims of the '057 Patent.  For example, at a minimum, Real Intent has supplied and

8    continues to supply PCDC to customers while knowing that installation and use of PCDC will

9    infringe one or more claims of the '057 Patent and that Real Intent's customers then directly

10   infringe one or more claims of the '057 Patent by installing and using PCDC in accordance with

11   Real Intent's product literature.  *See, e.g.,* https://www.realintent.com/gate-level-cdc-verix-pcdc/.

12         99.     Additionally and/or alternatively, Real Intent has indirectly infringed and

13   continues to indirectly infringe the '057 Patent, in violation of 35 U.S.C. § 271(c), by offering to

14   sell and/or selling components that contribute to the direct infringement of one or more claims of

15   the '057 Patent.  In particular, Real Intent had actual knowledge of the '057 Patent no later than

16   the filing of this complaint; Real Intent offers for sale and/or sells PCDC, which is a material

17   component of the '057 Patent and is not a staple article of commerce suitable for substantial non-

18   infringing use; Real Intent knows (or should know) that PCDC was especially made or especially

19   adapted for use in an infringement of the '057 Patent; and users of devices that comprise PCDC

20   directly infringe one or more claims of the '057 Patent.  For example, Real Intent has offered and

21   offers to sell and/or has sold and sells PCDC to customers for installation on computers with a

22   processor and data storage.  PCDC is a material component of the computer devices that meet one

23   or more claims of the '057 Patent.  *See, e.g.,* https://www.realintent.com/gate-level-cdc-verix-

24   pcdc/.  Further, Real Intent especially made and/or adapted PCDC for use in computer devices

25   that meet one or more claims of the '057 Patent, and PCDC is not a staple article of commerce

26   suitable for substantial non-infringing use.  Real Intent's customers directly infringe one or more

27   claims of the '057 Patent by installing PCDC on a computer device and using PCDC to perform

28   gate-level multimode CDC sign-off.  *See* https://www.realintent.com/gate-level-cdc-verix-pcdc/.

100.    Synopsys is entitled to recover from Real Intent all damages that Synopsys has sustained as a result of Real Intent's infringement of the '057 Patent, including, without limitation, a reasonable royalty and lost profits.

101.    Real Intent's infringement of the '057 Patent is exceptional and entitles Synopsys to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

102.    Real Intent's infringement of the '057 Patent has caused irreparable harm, including the loss of market share, to Synopsys and will continue to do so unless enjoined by this Court.

## COUNT V: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

103.    Synopsys incorporates paragraphs 1-102 as if fully set forth herein.

104.    Synopsys maintains license agreements with Design Compiler customers, providing for the use of the Design Compiler suite and the DesignWare Library components and simulation models.  Each customer's license agreement contains confidentiality and limited-use provisions prohibiting the sharing of DesignWare Library components and simulation models with unlicensed third parties.

105.    At all relevant times, Real Intent was aware that Synopsys makes Design Compiler and the DesignWare Library components and simulation models available only pursuant to a valid license agreement, and accordingly, that Synopsys' relationship with each of its Design Compiler customers was governed by contract.

106.    Real Intent engaged in intentional actions designed to induce the breach of Synopsys' contractual relationships with its Design Compiler customers.  Specifically, Real Intent solicited DesignWare simulation models from Design Compiler customers, knowing that their compliance with its request was substantially certain to violate the terms of their end user license agreements with Synopsys.

107.    Real Intent further solicited these DesignWare simulation models so that it could, among other things, use the models without attribution in support of efforts to gain new customers and market share, including the Synopsys customers that were solicited for the models,

which undermined Synopsys' competitive position and contractual relationship with those customers, and others.

108.    In  providing DesignWare simulation models to Real Intent, Design Compiler customers actually breached the limited use and confidentiality provisions of their Design Compiler license agreements.

109.    Using these DesignWare simulation models, Real Intent intentionally created components allegedly "equivalent" to the DesignWare Library components, removed Synopsys identifiers and notices from the code, and marketed and distributed them as Real Intent's own intellectual property to potential customers as a purported replacement for the DesignWare Library components.  These actions were calculated to increase Real Intent's market share by diverting sales of Synopsys' tools (including SpyGlass), which are the only tools that can legally consume Synopsys' encrypted DesignWare Library components.

110.    As a direct and proximate result of Real Intent's conduct, and the resulting breaches of Synopsys' Design Compiler license agreements, Synopsys has suffered, and continues to suffer, damage to its business in an amount to be determined at trial.

## COUNT VI: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

111.    Synopsys incorporates paragraphs 1–110 as if fully set forth herein.

112.    Synopsys maintains economic relationships with Design Compiler users in the form of existing license agreements, which provide for the use of the Design Compiler suite and the DesignWare Library components and simulation models.  These relationships afford Synopsys probable future economic benefit and advantage in the form of future contract renewals and new contracts for additional products in Synopsys' EDA ecosystem—in particular, SpyGlass, the only design verification suite capable of consuming encrypted DesignWare Library components.

113.    Real Intent was aware of the existence of an economic relationship between Synopsys and Design Compiler users and DesignWare component and simulation model users, as demonstrated by the fact that it knew Synopsys only makes the DesignWare Library components

1    and simulation models available to existing Synopsys customers that are parties to a valid license

2    agreement for Design Compiler.

3         114.    Real Intent engaged in intentional, unlawful conduct designed to disrupt Synopsys'

4    economic relationships with Design Compiler and DesignWare Library component and

5    simulation model users.  Specifically,  Real Intent obtained unauthorized and unlicensed access to

6    hundreds of Synopsys' DesignWare simulation models—logic files that constitute proprietary,

7    non-public information—by soliciting them from licensed Synopsys customers.  Using these

8    DesignWare simulation models, Real Intent intentionally created components "equivalent" to the

9    DesignWare Library components, removed Synopsys identifiers and notices from the code, and

10   marketed and distributed them as Real Intent's own intellectual property to potential customers as

11   a purported replacement for the DesignWare Library components.  These actions were calculated

12   to increase Real Intent's market share by diverting sales of Synopsys' tools (including SpyGlass),

13   which are the only tools that can legally consume Synopsys' encrypted DesignWare Library

14   components.

15        115.    Real Intent's unlicensed acquisition and misuse of Synopsys' DesignWare

16   simulation models interfered with Synopsys' established economic relationships, including by

17   creating a perception that Real Intent could offer Synopsys' customers components "equivalent"

18   to DesignWare Library components and a verification solution comparable to Spyglass.  Based on

19   this perception, Real Intent was able to, among other things, unfairly compete with Synopsys

20   SpyGlass' business without investing the time, money, and/or other resources that Synopsys did

21   to offer the ability to consume and verify DesignWare Library components.

22        116.    As a direct and proximate result of Real Intent's unlawful conduct, Synopsys has

23   suffered, and continues to suffer economic injury and monetary loss to its business, including, for

24   example, lost sales and price erosion of its products, and lost competitive advantage.

25                              **RELIEF SOUGHT**

26        Wherefore, Synopsys respectfully requests:

27        A.      Judgment be entered that Real Intent infringed one or more of Synopsys'

28   copyrights;

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SECOND AMENDED COMPLAINT

1    B.    Judgment be entered that Real Intent infringed one or more claims of the '057

2    Patent;

3    C.    Judgment be entered that Real Intent breached the SLA;

4    D.    Judgment be entered that Real Intent breached the covenant of good faith and fair

5    dealing;

6    E.    An injunction enjoining Real Intent, its officers, agents, servants, employees,

7    successors, assigns and all persons acting in concert with it or them, from directly engaging in

8    acts that infringe Synopsys' copyrights;

9    F.    An injunction enjoining Real Intent, its officers, agents, servants, employees,

10    successors, assigns and all persons acting in concert with it or them, from directly or indirectly

11    engaging in acts that infringe the '057 Patent;

12    G.    An injunction requiring Real Intent to cease all solicitation and acquisition of

13    Synopsys' DesignWare Library components or simulation models, and modification and

14    disclosure of any portion of the same;

15    H.    An injunction requiring Real Intent to cease all use and disclosure of any portion

16    of the Synopsys software and documentation, and to "return or destroy" all copies of Synopsys'

17    confidential and proprietary information, including all copies of Synopsys software, and all

18    copies of DesignWare Library components and simulation models;

19    I.    An award of actual damages and any additional infringer's profits under 17 U.S.C.

20    § 504 together with pre-judgment and post-judgment interest on the damages awarded; or if

21    elected prior to final judgment, statutory damages pursuant to 17 U.S.C. § 504(c);

22    J.    An award of damages sufficient to compensate Synopsys for Real Intent's patent

23    infringement pursuant to 35 U.S.C. §§ 284-285;

24    K.    An award of actual damages sustained as a result of Real Intent's breach of the

25    2015 in-Sync Agreement, the 2016 in-Sync Agreement, and the SLA;

26    L.    An award to Synopsys of its actual damages sustained as a result of Real Intent's

27    breach of the implied covenant of good faith and fair dealing;

28    M.    An award to Synopsys of its actual damages sustained as a result of Real Intent's

1  intentional interference with Synopsys' contractual relationships;

2        N.     An award to Synopsys of its actual damages sustained as a result of Real Intent's

3  intentional interference with Synopsys' prospective economic advantage;

4        O.     An award of attorneys' fees pursuant to 17 U.S.C. § 505, 35 U.S.C. § 285 and/or

5  Section 9.9 of the SLA;

6        P.     Costs and expenses in this action; and

7        Q.     Any and all other legal or equitable relief that the Court deems just and proper.

8

9  Dated: October 25, 2022              Respectfully submitted,

10                               HOGAN LOVELLS US LLP

11

12                               By: */s/ Patrick T. Michael*

13                                Patrick T. Michael

14                               Attorneys for Plaintiff
                              Synopsys, Inc.

15

16                         **JURY TRIAL DEMAND**

17       Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Synopsys demands a trial

18  by jury of all issues triable of right by jury.

19

20  Dated:  October 25, 2022             Respectfully submitted,

21

22                               HOGAN LOVELLS US LLP

23

24                               By: */s/ Patrick T. Michael*

25                                Patrick T. Michael

26                               Attorneys for Plaintiff
                              Synopsys, Inc.

27

28