HOGAN LOVELLS US LLP
Patrick T. Michael (Bar No. 169745)
Helen Y. Trac (Bar No. 285824)
4 Embarcadero Center, Suite 3500
San Francisco, California  94111
Telephone:   (415) 374-2300
Facsimile:    (415) 374-2499
patrick.michael@hoganlovells.com
helen.trac@hoganlovells.com

Christopher T. Pickens (admitted PHV)
8350 Broad Street, 17th Floor
Tysons, Virginia  22102
Telephone:   (703) 610-6100
Facsimile:    (703) 610-6200
christopher.pickens@hoganlovells.com

Damon M. Lewis (admitted PHV)
Lauren B. Cury (admitted PHV)
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone:   (202) 637-5600
Facsimile:    (202) 637-5910
damon.lewis@hoganlovells.com
lauren.cury@hoganlovells.com

Attorneys for Plaintiff
SYNOPSYS, INC.

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (Bar No. 84065)
Reid Mullen (Bar No. 270671)
Ryan K. Wong (Bar No. 267189)
Kristin Hucek (Bar No. 321853)
Cody Gray (Bar No. 310525)
Victor Chiu (Bar No. 305404)
Bilal Malik (Bar No. 318767)
Catherine Porto (Bar No. 331168)
633 Battery Street
San Francisco, California  94111-180
rvannest@keker.com
rmullen@keker.com
rwong@keker.com
khucek@keker.com
cgray@keker.com
vchiu@keker.com
bmalik@keker.com
cporto@keker.com

Attorneys for Defendant
REAL INTENT, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>REAL INTENT, INC.,<br><br>*Defendant.* | Case No. 5:20-cv-02819-EJD<br><br>**SECOND UPDATED JOINT TRIAL SETTING CONFERENCE STATEMENT**<br><br>Date:     January 12, 2023<br>Time:    11:00 A.M.<br>Dept.:    Courtroom 4, Fifth Floor<br>Judge:   Hon. Edward J. Davila<br><br>Date Filed: 4/23/20<br><br>Trial Date: None set |

Plaintiff Synopsys, Inc. ("Plaintiff") and Defendant Real Intent, Inc. ("Defendant") (collectively, the "Parties") respectfully submit this SECOND UPDATED JOINT TRIAL SETTING CONFERENCE STATEMENT pursuant to the Clerk's Notice Continuing Hearing.

## 1. JURISDICTION

The Parties agree that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1367, and 1338(a) over the copyright, patent, and breach-of-contract claims in the complaint. *See* ECF No. 80 (Synopsys' First Amended Complaint). The Court held that it has subject-matter jurisdiction over Synopsys' claims for tortious interference. *See* ECF No. 143 at 5-8.[1]

## 2. SUBSTANCE OF THE ACTION

### A. Synopsys' Statement

Plaintiff Synopsys alleges copyright infringement, patent infringement, breach of contract and tortious interference by Real Intent. Synopsys is a leader in the electronic design automation ("EDA") and semiconductor intellectual property industry. It develops, manufactures, sells and licenses products and services that enable designers to create, model and verify complex integrated circuit ("IC") designs from concept to silicon.

With respect to the copyright infringement claims, Synopsys' technology-leading solutions include its proprietary Design Compiler, PrimeTime, IC Compiler, and SpyGlass suites of tools (collectively, the "Copyrighted Works"). Each of these products includes hundreds of Synopsys proprietary commands and options, variables, objects and attributes, and pragmas (the compilation of which is sometimes referred to as a "command set"). Synopsys' engineers and software developers exercised innovative creativity, and expended significant time and effort in developing the individual input commands, options, variables, objects and attributes, as well as the larger command set compilations of those items. The Design Compiler, IC Compiler, PrimeTime and SpyGlass software and associated user documentation are original works of authorship and are subject to copyright protection. Synopsys alleges that Real Intent gained

---

[1] Real Intent disputes that the Court has subject matter jurisdiction over Synopsys' claims for tortious interference, and thus reserves its right to re-raise this argument later. Indeed, in holding that it could exercise supplemental jurisdiction over these claims, the Court noted that it is doing so "[a]t the pleading stage" and contemplated that "later developments" may result in the Court "declin[ing] jurisdiction at that point." ECF No. 143 at 7–8.

1  access to the Synopsys proprietary command sets for Design Compiler, IC Compiler, PrimeTime
2  and/or SpyGlass products and copied substantial portions into its own Ascent, Meridian, and
3  Verix software products and documentation. Synopsys denies Real Intent's new contention that
4  the registrations do not cover the user manuals and other product documentation that Real Intent
5  copied.

6  With respect to Synopsys' patent claim, U.S. Patent No. 9,721,057, entitled "System and
7  Method for Netlist Clock Domain Crossing Verification," (the "Patent-in-Suit") pertains to a
8  novel approach to netlist-level clock domain crossing (CDC) verification that leverages the
9  results from prior RTL-level CDC verification.  Synopsys alleges that Real Intent's Verix PCDC
10 (also known as Verix PhyCDC) and Meridian Physical CDC (collectively "PCDC") products
11 directly infringe the Patent-in-Suit.  Synopsys further alleges that Real Intent has induced PCDC
12 users to infringe the Patent-in-Suit by instructing users to run PCDC in an infringing manner.

13 Next, with respect to Synopsys' breach of contract claims, Synopsys and Real Intent are
14 parties to a number of interoperability agreements, including:  (1) the in-Sync License and
15 Cooperative Agreement No. ILC-70010729-002 ("2015 in-Sync Agreement"); (2) the in-Sync
16 License and Cooperative Agreement, No. ILC-70010729-003 ("2016 in-Sync Agreement"); and
17 (3) the Synopsys Loan Agreement, No. SLNA-70010729 ("SLA").  Each of these agreements
18 contained restrictions on Real Intent's use of the licensed Synopsys products, including
19 restrictions against:  (i) reverse engineering and/or attempting to reconstruct, identify, or discover
20 underlying user interface techniques of the Licensed Products; (ii) modifying, incorporating into
21 or with other software, and/or creating a derivative work of the Licensed Products; and/or (iii)
22 using the Licensed Products in a manner other than for the specific purposes permitted in these
23 agreements.  Synopsys alleges that Real Intent has breached these agreements as well as the
24 implied covenant of good faith and fair dealing by misusing Synopsys' confidential and
25 proprietary information to compete unfairly against Synopsys in the marketplace.

26 Finally, with respect to tortious interference, Synopsys' DesignWare Library is an
27 industry-leading collection of reusable IP blocks that are tightly integrated into the Synopsys
28 synthesis environment. Synopsys alleges that Real Intent improperly acquired DesignWare files

by soliciting Synopsys' licensed Design Compiler customers seeking to evaluate or use Real Intent products. Real Intent then modified these files to create its own products designed to be equivalent to Synopsys' protected DesignWare Library components. Real Intent then promoted and distributed these as "replacements" for DesignWare Library components, calculated to induce breach or disrupt contracts and economic relationships between Synopsys and its licensees.

### B. Real Intent's Statement

Real Intent is a small EDA company based in Sunnyvale, California, that provides specialized EDA software to IC designers for a critical portion of the chip-design process called "static sign-off." Modern ICs are incredibly complex, and chip designers rely on a wide variety of EDA software tools to design, optimize, and thoroughly test modern ICs before they are fabricated (*i.e.*, mass produced onto silicon). This design process is referred to in the EDA industry as the "design flow" for IC development. Real Intent's static sign-off software tools are used by chip designers as part of the design flow in designing, optimizing, and testing their ICs.

Because Real Intent's EDA software is focused on only specific aspects of the chip-design process (*i.e.*, static sign-off), it cannot be used for the entire IC design flow. All of Real Intent's customers must use EDA software from other vendors to design their chips and handle stages of the design flow that Real Intent's products do not cover, and many Synopsys customers for *other* stages of the design flow rely on Real Intent's software for static sign-off on their chip designs.

Given the complexity of modern ICs, it is critical to chip designers that all of the EDA software tools they choose to use as part of the design flow interoperate, and that all of their software tools—regardless of the vendor—can accurately read and understand every detail of their chip designs, which can contain billions of components. To that end, until very recently, Real Intent and Synopsys had been engaged in a lengthy, mutually beneficial relationship to develop interoperable software that customers of both companies could use to solve problems encountered while designing complex ICs. For many years, Synopsys itself was a customer of Real Intent's EDA software products, receiving training materials and individualized technical support from Real Intent to use Real Intent's software. During that entire period, Synopsys never complained about Real Intent's use and support of common and ordinary commands found in

1  EDA software.  It was only after Synopsys acquired a direct competitor to Real Intent's products

2  that Synopsys began a campaign to push Real Intent out of the EDA market and hamper

3  interoperability between Synopsys' and Real Intent's EDA software, culminating in this lawsuit.

4       Real Intent denies that it infringed any of the copyrights-in-suit or the patent-in-suit,

5  denies that the asserted elements are copyright-protectable, denies that the asserted works were

6  properly registered, and denies that the patent-in-suit is enforceable or valid.  Real Intent also

7  denies that it has breached the parties' agreements, the implied covenant of good faith and fair

8  dealing, or tortiously interfered with Synopsys' agreements or business opportunities with actual

9  or prospective customers.

### 3. LEGAL ISSUES

#### A. Synopsys' Statement

Synopsys believes that the matters in dispute that implicate legal issues are:

1. whether Synopsys has ownership of a valid copyright in the Copyrighted Works under 17 U.S.C. § 201.  *See e.g. GoPro, Inc. v. 360Heros, Inc.*, 291 F. Supp. 3d 1060, 1068-70 (N.D. Cal. 2017) (discussing assignment of copyrights under the work for hire doctrine);

2. whether Synopsys' command sets are protectable expression under 17 U.S.C. § 102. The portions of the Copyrighted Works that Real Intent copied – Synopsys command sets – are protectable expressions that are unique and that reflect the creativity and judgment of numerous Synopsys engineers. *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 840 (Fed. Cir. 1992) (portions of computer program incorporating unique and creative arrangement of instruction entitled to copyright protection). Indeed, the copyrightability of Synopsys' command sets has been confirmed in this District. *Synopsys, Inc. v. ATopTech, Inc*, No. 13-CV-02965-MMC, 2016 WL 6158216, at *1 (N.D. Cal. Oct. 24, 2016) (jury finding that Synopsys' command sets are protectable under copyright);

3. whether Real Intent copied original elements of Synopsys' Copyrighted Works into its own software products in a manner that constitutes copyright infringement under 17

1  U.S.C. §§ 501 and 117.  *See e.g. Cavalier v. Random House, Inc.*, 297 F.3d 815, 822
2  (9th Cir. 2002) (Plaintiff may establish that the defendant copied protected elements of
3  the work by "showing that the infringer had access to plaintiff's copyrighted work and
4  that the works at issue are substantially similar in their protected elements.");

5  4. whether Real Intent's copying is shielded by the fair use doctrine.  Real Intent's
6  reliance on *Google, LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021) is misplaced, as
7  significant differences between the two cases exist.  In *Google v. Oracle*, Google
8  copied the APIs of Java libraries for which Oracle had promoted and sought wide
9  adoption by application developers.  The Java APIs are thus analogous to Synopys
10 Design Constraints – the specific commands that Synopsys makes publicly available
11 under an open source license – which are not at issue in this case.  In contrast,
12 Synopsys' copyright claims are based on Real Intent's copying of proprietary portions
13 of Synopsys' command sets that Synopsys only licenses for use with Synopsys' tools.
14 Furthermore, unlike Google and Oracle, which the jury found operated in different
15 markets (desktop vs. mobile), Real Intent is a direct competitor of Synopsys and
16 copied Synopsys' command set in order to replace Synopsys' tools in the market with
17 its own.  Accordingly, the facts of *Google v. Oracle* are distinguishable to this case.
18 Yet, in pointing out that the *Google v. Oracle* Court held that Google's use was fair
19 use "as a matter of law," Real Intent elides that the reason for the Supreme Court's
20 conclusion was that a *jury* heard evidence allowing it to find each of the four fair use
21 factors, including that Oracle's predecessor sought to make the work "open."  Only
22 with those jury findings was fair use established as a matter of law. *Google v. Oracle*
23 affirmed that fair use is a mixed question of fact and law.  In its reliance on this
24 passage, Real Intent signals its aim to impermissibly bypass the jury.

25 5. construction of the asserted claims of the Patent-in-Suit.[2]  *See e.g. O2 Micro Int'l Ltd.*
26 *v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008) ("A claim
27 construction order always dictates how the court will instruct the jury regarding a

---

[2] The Claim Construction Hearing took place on June 3, 2021.

claim's scope.").

6. whether Real Intent's PCDC products infringe any of the asserted claims of the Patent-in-Suit pursuant to 35 U.S.C. § 271, either directly or indirectly;

7. whether Real Intent breached the 2015 in-Sync agreement, the 2016 in-Sync agreement, the SLA, and/or the implied covenant of good faith and fair dealing;

8. whether Real Intent tortiously interfered by soliciting DesignWare components from Synopsys' Design Compiler customers and misusing such components;

9. the amount of damages and the scope of non-monetary relief to which Synopsys is entitled as a result of Real Intent's copyright infringement, patent infringement, and/or breach of contract.

10. whether Synopsys is entitled to its costs, disbursements, and reasonable attorneys' fees incurred in this action.

### B. Real Intent's Statement

**Copyright**. Synopsys alleges that Real Intent copied commands from software that are part of a user interface to design computer chips. Real Intent disputes that the asserted elements are copyrightable because, among other things, (1) copyright protection cannot extend to the disputed commands, as they are a "method of operation," 17 U.S.C. § 102(b); (2) the disputed commands are *scenes a faire*, *see Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994); (3) the disputed commands are "short phrases," such as add_to_collection, that cannot be copyrighted, *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1081 (9th Cir. 2000); (4) the merger doctrine bars the copyright claim; and (5) the disputed commands are not original to Synopsys, *see Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991). Finally, Real Intent also disputes whether Synopsys properly registered the asserted works.

Even if Synopsys could show that any copying occurred, Real Intent's support or recognition of the disputed commands constitutes fair use. *See Google, LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021). In a similar case, the United States Supreme Court recently held that Google's use of Oracle's "declaring code" was fair use ***as a matter of law***. Synopsys filed an amicus brief in support of Oracle in the Supreme Court in which it represented that Synopsys'

"command sets are similar to the 'declaring code' at issue in [*Google*]." Br. for Synopsys, Inc. as *Amicus Curiae* Supporting Respondent, No. 18-956, Feb. 19, 2020, at 1.  Thus, by Synopsys' own admission, the *Google v. Oracle* decision applies to—and defeats—Synopsys' copyright infringement allegations regarding its command sets.

**Contract**. Synopsys alleges that Real Intent breached certain terms of the in-Sync Agreements and Synopsys Loan Agreement, all of which were contracts aimed to promote interoperability between Real Intent and Synopsys EDA products.  Real Intent denies that it breached any contractual obligations and the implied covenant of good faith and fair dealing.

**Patent**. Synopsys alleges that Real Intent's Meridian PCDC or Verix PCDC product infringes the asserted claims of the single patent-in-suit.  The accused Real Intent products do not infringe any of the asserted claims, and all of the claims are invalid under various provisions of the Patent Act, including Sections 101, 102, and 103.

**Tort claims**.  Synopsys alleges that Real Intent intentionally interfered with (unidentified) license agreements between Synopys and (unidentified) customers by inducing customers to breach those license agreements, and that Real Intent intentionally interfered with Synopys' prospective economic relationships by using information provided to Real Intent by Synopsys' customers to compete with Synopysys.  Real Intent denies that it engaged in any tortious conduct or that Synopys has suffered any damages as a result of the complained-of conduct.

### 4. MOTIONS

The Parties are awaiting rulings on claim construction.

#### A. Synopsys' Motions

Synopsys anticipates filing a discovery motion over Real Intent's refusal to produce all of the source code in which the copyrighted expressions are copied. Real Intent has agreed to produce all of its product executables for the relevant period, but to date has not done so. If Real Intent fails to do so in a timely manner, Synopsys may file a discovery motion on that issue as well.

#### B. Real Intent's Anticipated Motions

Real Intent anticipates filing a Section 101 motion on the patent claim, an analytic

1  dissection motion on the copyright claim, a motion for summary judgment, and *Daubert* motions.

2  Real Intent also anticipates filing a motion to address Synopsys' failure to register the works it has accused Synopys of infringing. Specifically, Synopys accuses Real Intent of infringing its copyrights in user manuals or other product documentation associated with its software products. *See*, *e.g.*, ECF (Second Amended Complaint) ¶¶ 59-77. Synopsys recently conceded, however, that it never deposited with the Copyright Office most of the user manuals it has accused Real Intent of infringing in this case. Deposit is a prerequisite to obtaining a copyright registration, and registration is a prerequite to a claim for copyright infringement. *See* 17 U.S.C. §§ 408(b) & 411(a); *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684 (2014) ("[T]he original work must be on file with the Copyright Office before a copyright owner can sue for infringement.").

Regarding Synopsys' anticipated motions referenced above, Real Intent believes its source code production is sufficient. Synopsys has not raised an issue with Real Intent's source code production in several months. To the extent Synopsys believes that Real Intent's production is insufficient, Real Intent expects that Synopsys will raise that issue with Real Intent first so that the parties can meet and confer before burdening the Court with a discovery motion.

### 5. DISCOVERY

Fact discovery is currently scheduled to close six (6) weeks after issuance of the Court's claim construction order and expert discovery is to be completed twenty four (24) weeks after issuance of the Court's claim construction order. ECF No. 103 at 2-3.

### 6. SETTLEMENT AND ADR

The Parties have not engaged in any settlement discussions or ADR proceedings. That said, the Parties are amenable to engage in a settlement conference before a magistrate judge.

### 7. BIFURCATION AND SEPARATE TRIAL OF ISSUES

Synopsys does not believe that bifurcation, or a separate trial of specific issues, is appropriate or desired. Real Intent reserves the right to seek bifurcation depending on pre-trial developments.

### 8. TRIAL

The case will be tried before a jury, though equitable defenses may require a bench trial on certain issues. The Parties estimate the trial will be ten days. Real Intent believes this case will be trial ready by early 2024. Synopsys cannot estimate trial readiness at this time, as the remaining case schedule is keyed off issuance of the forthcoming claim construction order.

### 9. SCHEDULING

#### A. Synopsys' Position

Real Intent proposes replacing the current dispositive motions briefing schedule with an analytic dissection briefing schedule, followed by dispositive motions briefing, based on a case out of the Eastern District of Texas. But that case, *SAS Institute Inc. v. World Programming Ltd.*, 496 F. Supp. 3d 1019, 1020 (E.D. Tex. 2020), does not support Real Intent's position. Although that Court held a "Copyrightability Hearing" separate from summary judgment, the hearing was held only after the Court found the parties' summary judgment motions inadequate to settle the issue of copyrightability. It makes no mention of analytic dissection, let alone declaring it incompatible with summary judgment. Moreover, the Ninth Circuit has not adopted this novel procedure and its propriety is curently before the Federal Circuit on appeal. *SAS Inst. Inc. v. World Programming Ltd.*, No. 21-1542 (Fed. Cir. Jan 13, 2021). Furthermore, Synopsys does not believe that a separate briefing schedule is necessary for analytic dissection motions. Indeed, analytic dissection is relevant to the issue of protectability and copying, which courts in this district routinely consider at the summary judgment stage. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1476 (9th Cir. 1992) ("Analytic dissection is relevant [] to the copying element of a copyright infringement claim."); *Apple*, 35 F.3d at 1438 (district court correctly performed analytic dissection on summary judgment); *Domingo Cambeiro Pro. Corp. v. Advent*, 211 F.3d 1273 (9th Cir. 2000) (affirming application of analytic dissection on summary judgment); *Corbello v. Valli*, 974 F.3d 965, 974 (9th Cir. 2020) (same).

#### B. Real Intent's Position

Real Intent requests that the Court modify the case schedule to allow for the filing and resolution of "an analytic dissection motion as to Synopsys' copyright claim, separate and apart

from any summary judgment motion(s) it may file." ECF No. 100 at 3 n.1.  During the analytic dissection process, courts must "filter out as unprotectable the ideas, expression necessarily incident to the idea, expression already in the public domain, expression dictated by external factors (like . . . compatibility with other programs, and demands of the industry served by the program), and expression not original to the programmer or author." *Atari Games Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832, 839 (Fed. Cir. 1992).

The most efficient framework for this case is for the parties to brief the analytic dissection issues and the Court to resolve those issues ***before*** summary judgment.  At the analytic dissection stage, the Court, with the benefit of focused briefing, argument, and/or live testimony, can determine the "core protectable expression, ***if any***, covered by each asserted work." *SAS Inst. Inc. v. World Programming Ltd.*, 18-cv-295, ECF. No. 436 (Order as to Copyrightability) at 2 (E.D. Tex. Aug. 24, 2020).  Then, with the benefit of a Court ruling on those issues, the parties can tailor their summary judgment briefing to address whether there are any triable issues of fact with respect to infringement of such protectable expression (as opposed to other unprotectable elements of the work).  *See id.* (deferring summary judgment motions to "a later . . . date" until ***after*** copyrightability hearing).  (The *SAS Institute* order refers to "abstraction-filtration-comparison," which is similar to analytic dissection.  *See Apple*, 35 F.3d at 1445.)  Thus, Real Intent proposes that the Court amend the current dispositive motions briefing schedule to include an analytic dissection briefing schedule:

| PROPOSED EVENT | PROPOSED DEADLINE |
|---|---|
| Last Day to File Analytic Dissection Briefs and *Daubert* Motions Related to Analytic Dissection | The first Thursday that falls at least four weeks after the expert discovery deadline |
| Last Day to File Responses to Analytic Dissection Briefs and *Daubert* Motions Related to Analytic Dissection | Three weeks after analytic dissection briefs and related *Daubert* motions are filed |
| Last Day to File Replies to *Daubert* Motions Related to Analytic Dissection | Two weeks after responsive briefs for analytic dissection and related responsive *Daubert* motions are filed |

Synopsys cites no authority foreclosing a separate analytic dissection hearing and briefing

schedule that precedes summary judgment. Conducting analytic dissection prior to summary judgment, however, will substantially narrow the issues that remain to be tried in this matter, and will streamline any issues that may remain for summary judgment and/or trial.

**10. <u>OTHER MATTERS</u>**

None at this time.

Dated: December 30, 2022

Respectfully submitted,

HOGAN LOVELLS US LLP

By: */s/ Patrick T. Michael*
    Patrick T. Michael
    Christopher T. Pickens
    Damon M. Lewis
    Helen Y. Trac
    Lauren B. Cury

    Attorneys for Plaintiff
    SYNOPSYS, INC.

KEKER, VAN NEST & PETERS LLP

By: */s/ Reid Mullen*
    Robert A. Van Nest
    Reid Mullen
    Ryan K. Wong
    Cody Gray
    Kristin Hucek
    Victor Chiu
    Bilal Malik

    Attorneys for Defendant
    REAL INTENT, INC.

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained for the other signatories in this e-filed document.

*/s/ Patrick T. Michael*
Patrick T. Michael