KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
REID P. MULLEN - # 270671
rmullen@keker.com
RYAN K. WONG - # 267189
rwong@keker.com
CODY GRAY - # 310525
cgray@keker.com
KRISTIN HUCEK - # 321853
khucek@keker.com
THERESA M. DAWSON - *pro hac vice*
tdawson@keker.com
VICTOR CHIU - # 305404
vchiu@keker.com
BILAL MALIK - # 318767
bmalik@keker.com
CATHERINE C. PORTO - #331168
cporto@keker.com
ELIZABETH A. HECKMANN - #347059
eheckmann@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188

Attorneys for Defendant
REAL INTENT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>REAL INTENT, INC.,<br><br>        Defendant. | Case No. 5:20-cv-02819-EJD (SvK)<br><br>**REAL INTENT, INC.'S OBJECTIONS TO THE DEMONSTRATIVES OF SYNOPSYS, INC.'S TECHNICAL EXPERT DR. STEPHEN EDWARDS**<br><br>Judge:    Hon. Edward J. Davila<br><br>Date Filed:  April 23, 2020<br><br>Trial Date:  October 15, 2024 |

1

Pursuant to the parties' stipulated trial procedures (ECF 628-3), Defendant Real Intent, Inc. ("Real Intent") raises the following objections to the demonstratives proposed by Plaintiff Synopsys, Inc.'s ("Synopsys") technical expert, Dr. Stephen Edwards.

**1. "Attorney Summation" Testimony**

Real Intent objects to slides PDX7-041, PDX7-043, PDX7-046, PDX7-052, PDX7-054, PDX7-055, PDX7-056, PDX7-057, PDX7-058, PDX7-061, PDX7-062, PDX7-063, PDX7-064, PDX7-065, PDX7-066, PDX7-070, PDX7-071, PDX7-072, PDX7-073, PDX7-074, PDX7-075, PDX7-076, PDX7-077, PDX7-078, PDX7-079, PDX7-080, PDX7-081, PDX7-082, PDX7-083, PDX7-084, PDX7-086, PDX7-087, PDX7-088, PDX7-089, PDX7-090, PDX7-091, PDX7-092, PDX7-093, PDX7-106, PDX7-107, PDX7-108, PDX7-109, PDX7-112, PDX7-114, PDX7-119, PDX7-121, PDX7-122, PDX7-123, PDX7-124, PDX7-125, PDX7-126, PDX7-127, PDX7-128, PDX7-129, PDX7-133, PDX7-135, PDX7-136, and PDX7-140 of Dr. Edwards' proposed demonstratives as improper expert testimony.  These slides do not offer ***any*** expert testimony at all, but present an early closing argument, parading before the jury snippets from emails, documents, and deposition testimony without applying any actual technical expertise.

For example, nine slides feature deposition testimony excerpts from former Real Intent employees.  In one, Dr. Edwards appears to be poised to interpret what Real Intent engineers meant when they used the phrase "gold standard" in connection with PrimeTime and Design Vision.  *See* PDX7-052.  There is ***no*** technical expertise that Dr. Edwards could possibly apply to this testimony; the Jury should decide what "gold standard" means based on the evidence and attorney argument.  The sequence of slides purporting to demonstrate PrimeTime and Design Vision copying over time, as discussed below in Section 2, is another example of Dr. Edwards providing improper attorney summation.

Dr. Edwards should not be allowed to tell the jury how to interpret emails, internal documents, and testimony, and the conclusions to be drawn from them.  As numerous courts have held, this not appropriate for an expert to do.  *See United States v. Freeman*, 498 F. 3d 893, 903 (9th Cir. 2007).  A party may not use an expert to "unfairly provid[e] . . . an additional summation" of their case "by having the expert interpret the evidence." *Id.* at 904.  Once an

expert ceases "testifying as an expert and beg[ins] providing lay testimony, he [is] no longer 'allowed . . . to testify based on hearsay information, and to couch his observations as generalized 'opinions' rather than as firsthand knowledge.'" *Id.* (citation omitted); *see also Cree v. Flores*, 157 F.3d 762, 773 (9th Cir. 1998) (Federal Rules of Evidence 602 and 803 apply to non-expert testimony); *Oracle America, Inc. v. Google Inc.*, No. 10-03561, D.I. 1803 ("Order Re Google Motion *In Limine* Re Expert Vouching for Preferred Version of Disputed Fact") (N.D. Cal. May 3, 2016) (Alsup, J.) ("[A]n expert should never purport to tell the jury which side's fact witnesses are credible or vouch for whose fact scenario is correct—that is entirely for the jury.").

The Court should not allow Dr. Edwards to "usurp[] the jury's function" by providing a summation of evidence and his lay opinions on what the jury should conclude from them. *See Freeman*, 498 F.3d at 903–04; *see also United States v. Frazier*, 387 F.3d 1244, 1263–64 (11th Cir. 2004) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.").

### 2. "PrimeTime Copying" Slides that Violate the Court's Prior Rulings

Real Intent objects to slides PDX7-041, PDX7-043, PDX7-044, PDX7-045, PDX7-046, PDX7-141, PDX7-142, and PDX7-145 of Dr. Edwards' proposed demonstratives. These slides overtly (and falsely) suggest to the jury that Real Intent wrongfully and unfairly accessed and copied from Synopsys' PrimeTime manuals before 2013, despite the fact that such copying cannot be the basis for harm in this trial and was found to be a fair use by the Court. For example, Dr. Edwards' slides PDX7-041 and PDX7-043 prominently feature PrimeTime and PrimeTime-related emails to convey Synopsys' open-statement narrative that Real Intent copied from PrimeTime before April 2013 for the same reason that it supposedly copied from Design Vision after joining the In-Sync Program—to gain an unfair, immoral, and dishonest competitive advantage. Indeed, PDX7-044, PDX7-045, PDX7-046, PDX7-141, PDX7-142, and PDX7-145 put both "PrimeTime Copying" and "Design Vision Copying" next to each other in the same timeline to imply that **both** forms of copying caused harm to Synopsys' SpyGlass and VC SpyGlass products.

This Court, however, has already found that Real Intent's copying from PrimeTime (at

any time) was a fair use, ECF 728 at 33–47, and, as the Court noted in its preliminary instructions to the Jury, copying from PrimeTime is not—and cannot be—within the scope of the breach of contract that the Court found at summary judgment.  Dr. Edwards (and Synopsys' attorneys) should not be allowed to suggest to the jury that Real Intent has been a bad actor even before the In-Sync Agreements were signed, and that any copying from PrimeTime before April 2013 means that Real Intent must have copied from Design Vision after April 2013.  Moreover, because Synopsys has already argued to the jury that Real Intent's copying from Design Vision amounts to "unfair competition" and a theft of Synopsys' innovation in its command sets that produced an unwarranted increase in Real Intent's revenue, the juxtaposition of PrimeTime copying with Design Vision copying will further prejudice Real Intent because it tells the jury that PrimeTime copying—while technically not at issue—was wrongful, immoral, and unfair for the same reasons as Design Vision copying.

### 3.  "DesignWare" Slides that Violate the Court's Prior Rulings

Real Intent objects to slides PDX7-098, PDX7-100, PDX7-101, PDX7-106, PDX7-107, PDX7-108, PDX7-109, PDX7-110, PDX7-112, PDX7-114, PDX7-119, PDX7-121, PDX7-122, PDX7-123, PDX7-124, PDX7-125, PDX7-126, PDX7-127, PDX7-128, PDX7-129, PDX7-133, PDX7-135, PDX7-136, and PDX7-140 of Dr. Edwards' current demonstratives as violating the Court's prior orders regarding the DesignWare breach, including the oral order issued after the jury was excused on October 17, 2024.

These slides go to the how Real Intent accessed and modified DesignWare modules or tried to conceal its actions.  But liability as to this theory of breach has already been established, there is no dispute as to the scope of that breach, and both parties have represented to the Court that the only issue that remains for this claim is determining whether Synopsys is entitled to any damages for that breach for avoided research and development costs only.  Indeed, earlier today, the Court acknowledged the same in its Order prohibiting Synopsys from presenting evidence of Real Intent "hiding" DesignWare modules, finding that such evidence "is more prejudicial than probative," and that it "has marginal relevance to damages" because it "does not directly pertain to the question of damages here, that is, avoided R&D costs." Oct. 17, 2023 Tr. at 607:14-22; *see*

*also* ECF No. 725 at 4–5.  As the Court ruled today "efforts to hide are highly inflammatory, of course, and the jury could focus their attention on culpability and liability, rather than damages. Oct. 17, 2023 Tr. at 607:5-7.  All of these slides should be stricken, and related testimony excluded.

### 4. "State of Mind" Testimony

Dr. Edwards should not be permitted to improperly opine on Real Intent's (and others') state(s) of mind, in contravention of this Court's *Daubert* Order.  *See* ECF 513 at 11–12 ("Neither expert will be permitted to opine regarding the state of mind of witnesses or assess witness credibility.").  Notwithstanding the Court's *Daubert* Order, Dr. Edwards purports to opine on Real Intent's motives and "needs."  For example, Dr. Edwards opines that "Real Intent Needed DesignWare Support Quickly."  PDX7-121.  Equally troubling, the prior version of Dr. Edwards' demonstratives included several slides entitled "Why Real Intent 'Protected' DesignWare Files," "Real Intent Knew of Risks," and "[Customer] Wanted Design Vision Commands and Attributes," which all purport to opine on the motives and beliefs of Real Intent and a third-party customer.

After Real Intent raised these concerns during a meet-and-confer conference, Synopsys simply deleted the titles from those slides, but did not change anything else about the offending slides, which suggests that Dr. Edwards will simply offer his state-of-mind testimony live and on the stand.  A party's or person's state of mind, including what they purportedly knew or intended, or motives for certain conduct, is not the proper subject of expert testimony.  *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1087 (C.D. Cal. 2013) (a party's mental state "is not a proper subject for expert testimony, and it must be established (if at all) by other evidence"); *see also Oracle America, Inc. v. Google Inc.*, No. 10-03561, D.I. 1803 (N.D. Cal. May 3, 2016) (Alsup, J.) ("Nor should an expert ever attempt to tell the jury what someone intended or was thinking. The mental state of the characters in our story on trial is for the jury to decide, never for experts to speculate about. No expert is a mind reader.  These are clear-cut prohibitions.").  The Court should not permit Dr. Edwards to offer any testimony regarding state of mind, motive, or intent of any person or party.

| | |
|---|---|
| Dated: October 17, 2024 | KEKER, VAN NEST & PETERS LLP |
| | By: */s/ Ryan K. Wong* |
| | ROBERT A. VAN NEST |
| | REID P. MULLEN |
| | RYAN K. WONG |
| | CODY GRAY |
| | KRISTIN HUCEK |
| | THERESA M. DAWSON |
| | VICTOR CHIU |
| | BILAL MALIK |
| | CATHERINE C. PORTO |
| | ELIZABETH A. HECKMANN |
| | |
| | Attorneys for Defendant |
| | REAL INTENT, INC. |