**WILLKIE FARR & GALLAGHER LLP**
Krista S. Schwartz (Bar No. 303604)
  kschwartz@willkie.com
Barrington Dyer (Bar No. 264762)
  bdyer@willkie.com
Joshua D. Anderson (Bar No. 312836)
  jdanderson@willkie.com
Stephen Henrick (Bar No. 310539)
  shenrick@willkie.com
Alex Rhim (Bar No. 333508)
  arhim@willkie.com
Jacob Karim (Bar No. 340376)
  jkarim@willkie.com
Christopher J. Lee (Bar No. 342055)
  clee3@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

**WILLKIE FARR & GALLAGHER LLP**
Shaimaa M. Hussein (*Pro Hac Vice*)
  shussein@willkie.com
Devon W. Edwards *(Pro Hac Vice)*
  dedwards@willkie.com
787 Seventh Ave.
New York, NY 10019
Telephone: (212) 728-8000

**WILLKIE FARR & GALLAGHER LLP**
Dane Sowers (*Pro Hac Vice*)
  dsowers@willkie.com
1875 K Street, N.W.
Washington, DC 20006
Telephone: (202) 303-1000

Attorneys for Plaintiff
SYNOPSYS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SYNOPSYS, INC.<br><br>  Plaintiff,<br><br>  v.<br><br>REAL INTENT, INC.<br><br>  Defendant. | Case No. 5:20-cv-02819-EJD (SvK)<br><br>**JOINT SUBMISSION ON SYNOPSYS' OBJECTIONS TO REAL INTENT'S DEPOSITION DESIGNATIONS**<br><br>Complaint Filed: 4/23/2020<br>Trial Date:          10/15/2024 |

Pursuant to section 18(c) of the Stipulation Regarding Agreed Trial Procedures (Dkt. No. 628-3), Synopsys objects to the following affirmative deposition designations of Real Intent to the depositions of Manoj Gandhi, Randy Tinsley, and Jeff Morrison. Attached hereto as Exhibits A, B, and C respectively are clip reports of the parties' designations and counter-designations of Messrs. Gandhi, Tinsley, and Morrison, with the portions of testimony objected to by Synopsys highlighted. Attached as Exhibits D, E, F and G are excerpts from the opening expert report of Brian Napper, the opening expert report of Dr. Stephen Edwards, the supplemental expert report of Dr. Stephen Edwards, and the deposition of Jeffrey Morrison, respectively.

## I. Synopsys' Objections to Designations of Manoj Gandhi.

Synopsys objects to the highlighted portions of Mr. Gandhi's deposition at lines 70:3–70:5, 71:24–72:2, 72:18–72:19, 72:22–73:05, 221:3–221:8, 221:25–222:4, 222:6–222:9, and 224:22–225:20 because they contravene the law of the case and the Court's ruling on Synopsys' supplemental motion *in limine* to exclude rejected breach of contract defenses. Those lines of Mr. Gandhi's deposition refer repeatedly to "interoperability" in a way that crashes into the "guard rails" established by the Court regarding interoperability. *See* ECF 725 at 3.

As the Court explained in its order addressing Synopsys' supplemental motion *in limine*, "Real Intent may only discuss its reasons for copying to provide context." *Id.* Real Intent may not, on the other hand, argue that interoperability is an excuse to breach or "that it believed its copying was acceptable since it was doing so to further interoperability." *Id.* To take just one example, lines 72:22-73:5 of Mr. Gandhi's deposition discuss whether "interoperability [was] important to Synopsys." Ex. A at 72:22-73:5. That excerpt is not necessary to "provide context." Indeed, the testimony has nothing to do with Real Intent specifically, copying of proprietary commands, options and attributes, or use of proprietary DesignWare files. The testimony has no relevance to, and is completely divorced from, Real Intent's liability for copying. The "flip side of this coin" referenced below—supposed benefits to Synopsys from vendors that participate in In-Sync without breaching their

agreements—are not relevant to damages from copying commands or DesignWare. Real Intent plainly intends to use that excerpt and the others listed above to insinuate that interoperability is a defense to liability in this case. See ECF 725 at 3.

During the meet and confer concerning these "interoperability" issues, Real Intent expressed its belief that this information is relevant to damages and the lack of foreseeability, rather than as a defense to liability. It is not clear how interoperability as a general concept—divorced from the specifics of this case—is possibly relevant to damages. Real Intent is looking to claim that because some general, unspecified types of interoperability are helpful to Synopsys, the specific acts at issue here were of no consequence. And the question of whether Synopsys gained some unspecified "benefit" from Real Intent's copying is irrelevant to the question of whether lost sales were foreseeable, as well as the quantification of Synopsys' lost sales and Real Intent's unjust enrichment. Real Intent apparently wishes to argue that it could not have known its copying would cause harm because it copied for the purpose of interoperability. But that depends on a subjective belief that its copying was permissible and within the scope of the agreements, such that Real Intent could not have known damages would flow from it. Such evidence runs afoul of the Court's order, is not relevant to the question of foreseeability, and should be excluded.

**Real Intent's Position**

As Real Intent has represented to the Court, it has not, and will not, use interoperability as a defense to breach or liability. However, Real Intent is entitled to explain the context in which Real Intent was operating for purposes of showing that Synopsys did not suffer any harm. This issue has been previously briefed with respect to Ms. Bartleson's deposition testimony. See generally ECF 745. In particular, Synopsys has framed the in-Sync Program as a type of corporate giveaway that Real Intent gained access to for a "nominal fee." Real Intent to entitled to show the flip side of this coin that all of Synopsys' interoperability programs, including the in-Sync and SDC-related TAP-in Program, had great benefits to Synopsys.

**II.    Synopsys' Objections to Designations of Randy Tinsley.**

2

Synopsys objects to the highlighted portions of Mr. Tinsley's deposition at lines 25:23-24, 32:4-32:17, 33:2-8, 39:13-15, 42:20, 45:4-11, 46:1-2, 46:6-7, and 46:24-47:03 because they contradict the Court's ruling on Synopsys's motion *in limine* No. 31 and would be unduly prejudicial to Synopsys under Rule 403. Synopsys will separately be objecting to the admissibility of TX2071, the document referenced in the deposition excerpts.

In motion *in limine* No. 31, Synopsys sought to exclude evidence of potential acquisitions, and in particular evidence related to ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊. At the hearing, counsel for Real Intent insisted that Real Intent had no plans to discuss the ▊▊▊▊▊▊▊▊, but instead would engage in limited questioning relating to Synopsys' views about Real Intent as an "innovative company" that "had strong support at top customers." (10/1 Pretrial Conf. Tr. at 126:9–12). Real Intent also asserted it wished to discuss ▊▊▊▊▊▊▊▊▊▊ for the purpose of showing Synopsys had notice of Real Intent's copying. (*Id.* 128:23–130:9).

Based on these representations, the Court ruled, "evidence of Synopsys praising Real Intent as an innovative company and evaluating Real Intent's products such that it would have known of Real Intent's use of the commands is relevant to Real Intent's defenses," but that Real Intent "may not specifically reference ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊," because the jury "may assume [an] ulterior motive" on the part of Synopsys. (Dkt. No. 687 at 7-8.) Synopsys does not object to portions of Mr. Tinsley's designated testimony that discuss "Synopsys praising Real Intent," but the highlighted testimony crosses the line set by the Court or otherwise has no relevance to the topics within the fair scope of the Court's order.

By means of example, that Synopsys had a "▊▊▊▊▊▊▊▊▊▊" has no relevance, and it concerns only a document that is specific to ▊▊▊▊▊▊▊▊. Likewise, testimony about Synopsys's "▊▊▊▊▊▊" with respect to Real Intent and its potential ▊▊▊▊▊ alludes to the excluded proposed transaction. Other designated testimony is more explicit, and alludes directly to the ▊▊▊▊▊▊ as "▊▊▊▊▊▊▊▊▊▊▊▊▊▊" (Ex. B at 33:2-8); ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊" (*id.* at 45:4-11); and how

|   |   |
|---|---|
| 1 | ▮▮▮▮▮▮▮▮▮▮▮ would "▮▮▮▮▮▮▮▮▮▮▮▮▮" (id. at 46:6- |
| 2 | 47:3). Anyone with a modicum of common sense would understand these statements to |
| 3 | concern an ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The Court's order was not limited |
| 4 | to the magic word "▮▮▮▮," but was instead motivated by a concern that the jury would |
| 5 | infer an ulterior motive for this lawsuit. Real Intent should not be permitted to generate that |
| 6 | unfair prejudice by artfully selecting statements that, though not using the word "▮▮▮▮," |
| 7 | would indicate the very same thing to a jury. Absent further impermissible context about |
| 8 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the jury would be led to erroneously believe that |
| 9 | it was general competition (or perhaps interoperability) between Real Intent's tools and |
| 10 | Synopsys' that would provide these benefit. |
| 11 | Separately, Synopsys objects to lines 44:6-11 of Mr. Tinsley's testimony pursuant to |
| 12 | the Court's ruling on Synopsys's motion *in limine* No. 8. (Dkt. No. 687 at 4.) Mr. Tinsley's |
| 13 | testimony that "Synopsys is substantially bigger" than Real Intent is irrelevant and would |
| 14 | only serve to play into the David vs. Goliath themes that the Court has already recognized |
| 15 | would prejudice Synopsys. Real Intent is not "permitted to say they're picking on us or you |
| 16 | should find for us because [ ] we're smaller, and they're you know, the bull, and they get their |
| 17 | way all of the time." (Oct. 1, 2024 Hearing Tr. at 49:16-20.) The jury is well aware that |
| 18 | Synopsys and Real Intent are competitors for static verification tools; context about the |
| 19 | disparate size of the two companies as a whole would lack any probative value. |
| 20 | **Real Intent's Position:** |
| 21 | None of the designated testimony from Mr. Tinsley runs afoul of the Court's order. |
| 22 | Synopsys' motion *in limine* no. 31 sought to preclude Real Intent from any evidence |
| 23 | "referencing Synopsys' ▮▮▮▮▮▮▮▮▮▮▮." ECF 496. The Court granted |
| 24 | this motion only as to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but otherwise ruled denied |
| 25 | the motion. 10/9/2024 Pretrial Order, ECF 687, at 8. In so ruling, the Court noted that "any |
| 26 | potential prejudice to Synopsys that the jury may assume any ulterior motive can be avoided |
| 27 | without discussing ▮▮▮▮▮▮▮▮▮▮ and instead referring to the discussions in the |
| 28 | context of 'business dealings' or something similar." *Id.* |

Cognizant of this ruling, Real Intent designated limited portions of Mr. Tinsley's deposition video that go specifically to the topics that the Court said were fair game— "evidence praising Real Intent as an innovative company" and Synopsys's "evaluating Real Intent's products." *Id.* Real Intent is permitted to "reference the underlying documents or discussions," without referencing ▮▮▮▮▮▮▮▮. That's exactly what Real Intent does. Real Intent further notes that, based on the Court's order, it decided that it would limit its examination of Mr. Tinsley and, instead of calling him as a live witness, it would designate limited portions of his deposition testimony and would move for admission of a redacted version of TX2071, which Real Intent understands will form the basis of separate briefing from Synopsys. Real Intent thought by designating portions of Mr. Tinsley's deposition testimony, it could, in a way that was fair to both parties, respect the balancing struck by the Court in its Order. These selected designations do just that.

First, Synopsys objects to testimony referring to Synopsys having a code name for Real Intent as necessarily implying to jurors that Synopsys was ▮▮▮▮▮▮▮▮. Ex. B at 25:23-24. Not so. The jurors understand that Synopsys and Real Intent are competitors, and it is common for large companies doing market research on their competitors to do so through the use of code names. That Synopsys may have also done so in the context of ▮▮▮▮ is not a fact that is going to be put before the jury.

Second, Synopsys objects to testimony generally about the importance to customers of having a static verification tool, and about "strategy." *Id.* at 32:04-32:17; 39:13-15. None of this mentions ▮▮▮▮▮▮▮▮.

Third, Synopsys objects to testimony about it looking to "innovate" and "improv[e] [its] competitiveness" in the static verification space. *Id.* at 33:02-08. Again, none of this testimony suggests that Synopsys would be doing so through ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮.

Fourth, Synopsys objects to testimony about how Real Intent's R&D team or application engineers might benefit Synopsys. There is no mention here that the benefits were being considered in the context of ▮▮▮▮▮▮▮▮. Instead, this testimony goes

directly to praise by Synopsys of the quality of Real Intent's talent, which is expressly permitted by the Court's Pretrial Order. ECF 687 at 8 ("evidence of Synopsys' praising Real Intent as an innovative company and evaluating Real Intent's products . . . is relevant to Real Intent's defenses").

And finally, Synopsys objects to portions of testimony that discuss whether Mr. Tinsley and Synopsys viewed Real Intent to present a significant competitive threat to Synopsys in July 2020, and Mr. Tinsley, speaking about the parties' relative size with respect to the CDC and RDC markets, says that Synopsys' position in these markets is "substantially bigger." *Id.* at 44:06-44:11. This testimony has nothing to do with motion *in limine* number 8, which dealt with prohibitions about pejoratively characterizing the overall size of the companies, versus whether or not Synopsys perceived Real Intent to pose a competitive threat and should thus be allowed.

**III.    Synopsys's Objections to Designations of Jeff Morrison.**

Synopsys objects to the highlighted portions of Mr. Morrison's deposition testimony at lines 10:09-13, 11:22-12:09, 77:01-77:03, 79:11-80:02, 116:19-21, and 116:24 because they serve only to re-raise a long-waived discovery dispute and have no probative value on any issue in this case. Effectively, Real Intent complains that Mr. Morrison—who works in Synopsys' finance department and was Synopsys' designated 30(b)(6) representative on several topics (*See* Ex. C at 9:20-23, 10:9-12, and 11:22-12:9)—lacked knowledge about (1) "whether Synopsys has suffered any harm from the allegations against Real Intent in this case" (*id.* at 116:19-24; (2) "what aspects of DesignWare Synopsys is accusing Real Intent of unlawfully accessing" and how much time or money it took Synopsys to create those aspects (*id.* at 79:11-80:2); and (3) "Synopsys's costs to create the command sets that are at issue in this case" (*id.* at 77:1-3).

As an initial matter, the questions posed touch on topics outside the scope of Mr. Morrison's 30(b)(6) designation. First, Mr. Morrison was never designated on the issue of "harm from the allegations against Real Intent in this case." *See* TX2131 (Real Intent's Second Amended Notice of Rule 30(b)(6) Deposition Topics), numbers 38, 42, 72 and 73 (no

mention of harm.) Topics for which *other* witnesses were designated—including Mr. Namit Gupta, who already testified—did address harm. *See id.*, Topics 21, 37, 56, 63, 64, 74. Real Intent should not be permitted to try an pass off Mr. Morison as corporate witness for a topic he was never designated for.

Second, despite being designated for Synopsys' investment in "COPYRIGHTED WORKS" (TX2131, Topic 38), Mr. Morrison was asked about his knowledge of "Synopsys's costs to create the command sets that are at issue in this case" (Ex. C at 77:1-3). This is a subject that Mr. Morrison attested to having no knowledge of. (Ex. G, Morrison Tr. at 76:24-25 ("Q. What is a command set? A. I don't know."))

Third, as to DesignWare, Mr. Morrison testified he had no knowledge of the DesignWare Real Intent *unlawfully accessed*. (Ex. C at 79:11-14) ("Q. Do you know what aspect of DesignWare Synapsys is accusing Real Intent of unlawfully accessing? A. No.") That makes sense, because the DesignWare components Real Intent accessed would not be known to Mr. Morrison, nor would they have been reviewable by him given Real Intent's Attorneys' Eyes Only designations.

Mr. Morrison's lack of knowledge on these topics is the ***entirety*** of his designated testimony, and has zero probative value whatsoever, especially given his testimony that he lacks "personal knowledge of any of the allegations in this case." (*Id.* at 117:8-10.)

Furthermore, both Dr. Stephen Edwards and Brian Napper opine on the cost to develop DesignWare. Ex. D (Napper Opening Rpt.) at ¶¶ 139-144; Ex. E (Edwards Opening Rpt.) at ¶ 56; Ex. F (Edwards Supplemental Rpt.) at ¶ 133. This issue is plainly one that calls for expert testimony. Introduction of Mr. Morrison's testimony would significantly prejudice Synopsys by suggesting that Synopsys does not care about this lawsuit or is not sincere about protecting its command sets and DesignWare models, or that it failed to adequately prepare its 30(b)(6) designee. Pursuant to Rules 401 and 403, the testimony should be excluded.

**Real Intent's Position:**

Synopsys' objections to ***two minutes*** of Jeff Morrison's deposition testimony are meritless. Mr. Morrison was designated to testify as a Rule 30(b)(6) witness on key issues

1  that remain for this trial. In particular, Mr. Morrison was designated to testify on behalf of
2  Synopsys regarding R&D time and costs that went into creating DesignWare, including, in
3  particular, "each aspect of DesignWare that [Synopsys] allege[s] was unlawfully accessed by
4  Real Intent." Tr. 11:23-12:03. He testified that he did not know how much time or expense it
5  took Synopsys to develop the aspects of DesignWare at issue in this case. That binding
6  admission—that *Synopsys* does not know the time and effort to create DesignWare—directly
7  responds to Synopsys' assertions throughout this trial that it took significant time, effort, and
8  expense to create DesignWare and that Real Intent avoided some of those costs by accessing
9  or using DesignWare. The testimony also addresses *Synopsys'* lack of corporate knowledge
10 regarding the time and effort to create the command sets and its lack of harm from the
11 allegations in this case, which directly responds to Synopsys' assertions that it took years of
12 time and effort to create these command sets and that it was harmed by Real Intent's breach.

13      Mr. Morrison was additionally designated to testify on behalf of Synopsys as to
14 "Financial information relating to the copyrighted works, including but not limited to your
15 revenues, profits, costs, projections, marketability of your products, market share, pricing,
16 distribution, customer perceptions, or other financial analyses relating to the copyrighted
17 works." Tr. 11:12-19. Accordingly, Synopsys's knowledge about Synopsys's costs to create
18 the command sets at issue in the case, *see* Tr. 77:01-77:03, is squarely within Mr. Morrison's
19 area of testimony as a corporate representative. Real Intent did not designate the recitation of
20 Mr. Morrison's designation on this topic in an effort to avoid confusing the jury by
21 referencing "copyrighted works." However, as the Court is aware, the damages calculations
22 underlying Synopsys's breach of contract claim are identical to those in the copyright case.
23 Moreover, the "copyrighted works" referenced in the above designation include the command
24 sets at issue in the case. Therefore, *Synopsys's* lack of knowledge about its costs to create the
25 command sets at issue is squarely within Mr. Morrison's testimony as a 30(b)(6)
26 representative.

27      Synopsys is simply raising new objections as to the scope of Mr. Morrison's 30(b)(6)
28 topics and testimony. Synopsys did not object to either the designations or the questions

designated by Real Intent to be played at trial during Mr. Morrison's deposition. Therefore, Synopsys's belated objections on the basis that any of the testimony Real Intent designates is outside the scope of Mr. Morrison's designated topics (which it is not) have been waived.

Lastly, these issues have nothing to do with Mr. Morrison's lack of personal knowledge—he was testifying as a Rule 30(b)(6) witnesses regarding **Synopsys'** knowledge, or lack thereof.  Indeed, he only designation regarding his personal knowledge is a Synopsys counter-designation. *See* Tr. at 117:08-117:10. As Synopsys has previously argued, Rule 30(b)(6) testimony is admissible for any purpose. To be clear, Real Intent has no intention of raising any discovery dispute through these designations. It simply intends to show that Synopsys—the plaintiff in this case—lacks evidence to support some of the assertions it has made in this trial.

Dated:  October 21, 2024	Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By:	*/s/ Krista Schwartz*

Krista S. Schwartz
Barrington Dyer
Joshua D. Anderson
Stephen Henrick
Alex Rhim
Jacob Karim
Christopher J. Lee
Shaimaa M. Hussein *(Pro Hac Vice)*
Devon W. Edwards *(Pro Hac Vice)*
Dane Sowers *(Pro Hac Vice)*

Attorneys for Plaintiff
SYNOPSYS, INC.

| | | |
|---|---|---|
| 1 | Dated:  October 21, 2024 | KEKER, VAN NEST & PETERS LLP |
| 2 | | By:   */s/ Elizabeth A. Heckmann* |
| 3 | | Robert A. Van Nest |
| | | Reid P. Mullen |
| 4 | | Ryan K. Wong |
| | | Cody Gray |
| 5 | | Kristin Hucek |
| | | Victor Chiu |
| 6 | | Bilal Malik |
| | | Catherine C. Porto |
| 7 | | Elizabeth A. Heckmann |
| 8 | | Attorneys for Defendant |
| | | REAL INTENT, INC. |

# ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated: October 21, 2024                              /s/ Krista Schwartz
                                                                    Krista Schwartz