KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
REID P. MULLEN - # 270671
rmullen@keker.com
RYAN K. WONG - # 267189
rwong@keker.com
CODY GRAY - # 310525
cgray@keker.com
KRISTIN HUCEK - # 321853
khucek@keker.com
THERESA M. DAWSON - *pro hac vice*
tdawson@keker.com
VICTOR CHIU - # 305404
vchiu@keker.com
BILAL MALIK - # 318767
bmalik@keker.com
CATHERINE C. PORTO - #331168
cporto@keker.com
ELIZABETH A. HECKMANN - #347059
eheckmann@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188

Attorneys for Defendant
REAL INTENT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>              Plaintiff,<br><br>       v.<br><br>REAL INTENT, INC.,<br><br>              Defendant. | Case No. 5:20-cv-02819-EJD (SvK)<br><br>**DEFENDANT REAL INTENT, INC.'S UPDATED [PROPOSED] FINAL JURY INSTRUCTIONS**<br><br>Judge:      Hon. Edward J. Davila<br><br>Date Filed: April 23, 2020<br><br>Trial Date: October 15, 2024 |

# STIPULATED FINAL INSTRUCTION NO. 1[1]

## DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

Source: 9th Circuit Model Instructions – 1.4

---

[1] For this instruction and all other instructions denoted below as "Stipulated," the parties previously agreed to them at ECF 628-12 (Joint Proposed Jury Instructions).  For certain proposed instructions, Real Intent has set forth its position on why their inclusion is appropriate.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STIPULATED FINAL INSTRUCTION NO. 2

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

      1. the sworn testimony of any witness;

      2. the exhibits that are admitted into evidence;

      3. any facts to which the lawyers have agreed; and

      4. any facts that I may instruct you to accept as proved.

Source: 9th Circuit Model Instructions – 1.9

### STIPULATED FINAL INSTRUCTION NO. 3[2]

### WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony or exhibits that are excluded or stricken, or that you are instructed to disregard, are not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)    Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Source: 9th Circuit Model Instructions – 1.10 (modified slightly to include exhibits in paragraph 3)

---

[2] As to this stipulated instruction, Synopsys has stated that it "does not see a need to modify the third paragraph to include 'testimony or exhibits' in place of 'testimony' but does not dispute if the Court sees fit to include." ECF 628-12 at 21.

## STIPULATED FINAL INSTRUCTION NO. 4

## EXPERT OPINION

You have heard testimony from expert witnesses who testified about their opinions and reasons for those opinions. This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witnesses'[3] specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

Source: 9th Circuit Model Instructions – 2.13

---

[3] Changed "witness's" to "witnesses'"

## STIPULATED FINAL INSTRUCTION NO. 5
## CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Source: 9th Circuit Model Instructions – 2.14

## STIPULATED FINAL INSTRUCTION NO. 6

## CHARTS AND SUMMARIES RECEIVED IN EVIDENCE

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Source: 9th Circuit Model Instructions – 2.15

**STIPULATED FINAL INSTRUCTION NO. 7**

**USE OF INTERROGATORIES**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

Source: 9th Circuit Model Instructions – 2.11

DEFENDANT REAL INTENT, INC.'S UPDATED [PROPOSED] FINAL JURY INSTRUCTIONS
Case No. 5:20-cv-02819-EJD (SvK)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STIPULATED FINAL INSTRUCTION NO. 8

## USE OF REQUESTS FOR ADMISSION

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

<u>Source</u>: 9th Circuit Model Instructions – 2.12

## STIPULATED FINAL INSTRUCTION NO. 9

## BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.  You should base your decision on all of the evidence, regardless of which party presented it.

Source: 9th Circuit Model Instructions – 1.6

## REAL INTENT'S PROPOSED FINAL INSTRUCTION NO. 10

## BREACH OF CONTRACT – INTRODUCTION

This is a case involving breach of contract. Synopsys asserts that it has been harmed by Real Intent's copying of certain computer commands, options and attributes, with syntax. There is no dispute that after the first contract was signed in April 2013, Real Intent copied six commands and associated options with syntax from a Synopsys product called "Design Vision" that was provided under the contracts.

The parties dispute, however, whether any other commands, options and attributes, with syntax, were copied from Design Vision after April 2013. Synopsys has the burden of proving that Real Intent copied these other commands, options, or attributes, with syntax, from Design Vision after April 2013.

Any copying prior to April 2013 (regardless of the source), and any copying from any source other than Design Vision, including from other Synopsys products (regardless of the time), does not breach the parties' contracts. Synopsys also has the burden of proving that it has been harmed by any breach of contract. Real Intent denies that it copied any additional commands, options and attributes, with syntax, from Design Vision after April 2013, and denies that Synopsys has been harmed by any breach of contract.

Real Intent further asserts as an affirmative defense that Synopsys' claims are barred because Synopsys failed to mitigate damages. Real Intent has the burden of proving the affirmative defense of mitigation.

Synopsys also asserts that it has been harmed by Real Intent's use and access of certain Synopsys software called DesignWare.  There is no dispute that Real Intent used and accessed DesignWare. Synopsys has the burden of proving damages from Real Intent's use and access of DesignWare.  Real Intent denies that there are any damages.

Source: Trial Tr. (Oct. 16, 2024) at 302:10-303:21 (Preliminary Instruction).

1

2

## REAL INTENT'S PROPOSED FINAL INSTRUCTION NO. 12

## BREACH OF CONTRACT – DAMAGES

3

4

Synopsys claims that it was harmed because:

5

6

1. Real Intent breached Section 3.2 of the in-Sync Agreements and Section 2.3 of the Synopsys Loan Agreement by copying commands, options, and attributes, with syntax, from Design Vision into its own products.

7

8

9

2. Real Intent breached Section 5.1 of the in-Sync Agreements and the Synopsys Loan Agreement by accessing and using the DesignWare Library.

10

If you find that these breaches caused harm to Synopsys, you must decide how much money, if any, will reasonably compensate Synopsys for the harm caused by the breach of contract.  This compensation is called "damages."

11

12

13

The purpose of damages is to put Synopsys in as good a position as it would have been if Real Intent had performed as promised. To recover damages for any harm, Synopsys must prove that when the contract was made, both parties knew or could reasonably have foreseen that the claimed harm was likely to occur in the ordinary course of events as a result of the breach of the contract.

14

15

16

17

Synopsys also must prove the amount of its damages according to the following instructions. Synopsys claims damages in the form of lost profits for breaches of Section 3.2 of the in-Sync Agreements and Section 2.3 of the Synopsys Loan Agreement. To recover for this harm, Synopsys must prove that when the parties made the contract, Real Intent knew or reasonably should have known of the special circumstances leading to the harm.[4]

18

19

20

21

22

In addition, to recover damages for lost profits, Synopsys must prove that it is reasonably certain that Synopsys would have earned profits but for Real Intent's breach of the contract. To decide the amount of damages for lost profits, if any, you must determine the gross, or total, amount Synopsys would have received if the contract had been performed and then subtract from

23

24

25

26

27

28

---

[4] This paragraph comes directly from Judicial Council of California Civil Jury Instructions, CACI No. 351 (2024).  It may also be given as a standalone instruction after this instruction.

that amount the costs Synopsys would have had if the contract had been performed. You do not have to calculate the amount of the lost profits with mathematical precision, but there must be a reasonable basis for computing the loss.[5]

Synopsys does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages. If you decide that Synopsys has not proven that any breach of contract caused harm to Synopsys, you should award no damages.

For the breach of Section 5.1 of the in-Sync Agreements and the Synopsys Loan Agreement, Synopsys seeks only nominal damages.[6]

Source: Judicial Council of California Civil Jury Instructions, CACI No. 350 (2024) (modified in view of MSJ Order, and combined with CACI No. 351 and 352)

---

[5] This paragraph comes directly from Judicial Council of California Civil Jury Instructions, CACI No. 352 (2024). It may also be given as a standalone instruction after this instruction.

[6] If the Court allows the jury to decide the amount of unjust enrichment (if any) based on Real Intent's use of the DesignWare product, Real Intent proposes the following alternative instruction: "For the breach of Section 5.1 of the in-Sync Agreements and the Synopsys Loan Agreement, Synopsys seeks unjust enrichment based on Real Intent's use of the DesignWare product."

## REAL INTENT'S PROPOSED FINAL INSTRUCTION NO. 13

## BREACH OF CONTRACT – COMMAND SETS NOT IN DISPUTE

In determining whether Synopsys was harmed by any breach of contract caused by the copying of commands, options, and attributes with syntax from Synopsys, you may only consider commands, options, and attributes with syntax that were copied from Design Vision after April 10, 2013 and that are identified in two lists that you will be given.

The first list is the undisputed commands and options which lists six commands and associated options, with syntax. As to this list, there is no dispute that Real Intent copied the commands and options from Design Vision product after the first in-Sync Agreement was signed in April 2013.

The second list is the disputed commands, options, and attributes. These are commands, options, and attributes, with syntax, about which the parties dispute whether Real Intent copied them from Design Vision after April 2013.

In determining whether Synopsys was harmed by any breach of contract, you may not consider any commands, options, and attributes, with syntax, outside of these two lists. You may not consider commands, options, or attributes with syntax that were copied or incorporated from sources other than Design Vision (regardless of the time) or commands, options, or attributes with syntax that were copied or incorporated before April 2013 (regardless of the source). Examples of commands, options, and attributes with syntax that may not be considered to determine Synopsys' alleged harm include those that:

1. Were already incorporated into Real Intent's software before the first agreement was signed in April 2013;

2. Were copied from any source other than Design Vision, including Synopsys' PrimeTime product, earlier versions of Real Intent products, public sources, or any source other than Design Vision; or

3. Are part of what Synopsys calls "open source" Synopsys Design Constraints or "SDC."

Source: Trial Tr. (Oct. 16, 2024) at 313:21-314:25 (Preliminary Instruction) (modified to account

for PrimeTime, earlier versions of Real Intent products, public sources, and Synopsys Design Constraints); Trial Tr. (Oct. 18, 2024) at 738:13-15 (Sandra Ma confirming that "SDC commands are made free to use under an open source license"); Further Order Regarding Command Dispute (ECF 707) at 4 ("[I]f Real Intent is able to show that the disputed commands were copied from *other sources*, that would show the commands are ***not*** within the scope of Real Intent's breach."); Pretrial Order (ECF 687) at 14-15 (Synopsys' breach claim does "not apply to . . . Real Intent's copying/incorporation of commands from Design Vision that occurred prior to the effective date of the first agreement in 2013").

1

2

<u>**REAL INTENT'S PROPOSED FINAL INSTRUCTION NO. 14**</u>

<u>**BREACH OF CONTRACT – USE OF DESIGN VISION NOT IN DISPUTE**</u>

3

4

5

Real Intent's use of Design Vision for any purpose other than copying or incorporating commands, options, and attributes with syntax from Design Vision is not prohibited by the in-Sync Agreements and Synopsys Loan Agreement.

6

7

8

9

10

11

12

13

14

<u>Source</u>: ECF 707 (Further Order Regarding Command Dispute) ("From the Court's view, which appears to mirror that of Synopsys, this issue is straightforward. The relevant contract provision prohibits Real Intent from 'modify[ing], incorporat[ing] into or with other software, or creat[ing] a derivative work of any part of the Synopsys Licensed Product. The only relevant licensed product here is Design Vision." (internal citation omitted)); Trial Tr. (Oct. 18, 2024) at 694:9-12 (Sandra Ma: "We license Design Vision to the competitors as a way for them to verify that their output works with our tools, so they can use it as a checker to make sure there's no bugs or inconsistencies.").

15

**<u>Real Intent's Position</u>**

16

17

18

19

20

21

22

23

24

25

26

27

28

Real Intent submits that this instruction is necessary to avoid juror confusion and undue prejudice against Real Intent. Synopsys' only theory of contractual breach is that Real Intent copied certain commands, options, and attributes with syntax from the Design Vision product after April 2013. With respect to Design Vision, Synopsys has no other claim that Real Intent's use of Design Vision constitutes a contractual breach. Indeed, Synopsys' own witness, Sandra Ma, confirmed that competitors may use Design Vision to "verify that their output works with [Synopsys'] tools." Trial Tr. (Oct. 18, 2024) at 694:9-12. Despite this, Synopsys has suggested throughout this trial that checking the output of a tool or verifying the results is a breach of the agreements. *E.g.*, Trial Tr. (Oct. 18, 2024) at 793:10-11 (Dr. Stephen Edwards: "If you want to mimic the behavior of something, a program that embodies that behavior is a much more useful thing to gather information from than a printed document written by a human being, right?"); *id.* at 793:21-22 (Dr. Stephen Edwards: "A running tool that you can experiment with and compare with, that's a lot more useful."). This instruction provides clarity to the jury about what type of

conduct can be considered within the scope of the breach.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## REAL INTENT'S PROPOSED FINAL INSTRUCTION NO. 15

## LOST PROFITS – NO PROFITS EARNED

To recover damages for lost profits, Synopsys must prove that it is reasonably certain it would have earned profits but for Real Intent's breach of the contract. Synopsys' request for damages for lost profits is based on alleged lost sales for two Synopsys products: SpyGlass and VC SpyGlass.

To decide the amount of damages for lost profits, you must determine the gross, or total, amount Synopsys would have received if the contracts had been performed and then subtract from that amount the costs Synopsys would have had if the contract had been performed.

You do not have to calculate the amount of the lost profits with mathematical precision, but there must be a reasonable basis for computing the loss.

Source: Judicial Council of Calif., Civil Jury Instr. No. 352 (2024); Expert Report of Brian Napper at 56 ¶ 99 ("The Spyglass products included in this analysis are all VC Spyglass products (RDC, CDC, and Lint) *as well as* the original Spyglass products (RDC, CDC, and Lint)." (emphasis added)).

**Real Intent's Position**

Synopsys' own damages expert, Brian Napper, confirmed that his opinion on lost profits accounted for allegedly lost sales for both SpyGlass and VC SpyGlass. Expert Report of Brian Napper at 56 ¶ 99. Synopsys witness Namit Gupta similarly testified that Synopsys was trying to sell its SpyGlass products to several of the six customers at issue in this case. *E.g.*, Trial Tr. (Oct. 22, 2024) at 991:6-15 (confirming that Synopsys claimed damages for both the "SpyGlass products and the VC SpyGlass products"); *id.* at 991:25-992:3 (claiming that Synopsys' alleged losses for SK Hynix "started specifically with the SpyGlass RDC product"); *id.* at 992:14-16 (claiming that Synopsys' alleged losses for Samsung started with "the original SpyGlass CDC product").

Despite this, other Synopsys witnesses—including corporate representative Swami

17

Venkat—testified that Spyglass is ***not*** at issue in this case. Trial Tr. (Oct. 17, 2024) at 579:25 ("The product at issue in this case is VC SpyGlass."). To avoid confusion, the jury should be instructed that ***both*** products are at issue and that Synopsys seeks lost profits for ***both*** products. Synopsys should not be heard to claim that it only seeks lost profits for its VC SpyGlass product and avoid the various customer criticisms for its SpyGlass products—all of which undermine its argument that Real Intent's support of certain Design Vision commands caused it to lose sales.

## REAL INTENT'S PROPOSED FINAL INSTRUCTION NO. 16
## UNJUST ENRICHMENT/DISGORGEMENT

**Defendant's Position:**

Real Intent objects to any instruction on unjust enrichment because unjust enrichment is not an available remedy for breach of contract under California law and, even if it were, Synopsys does not have a Seventh Amendment right for a jury to decide the amount (if any) of unjust enrichment. *See* ECF 628-12 at 81 (identifying authorities which hold that unjust enrichment is not an available remedy for breach of contract); ECF 741 (identifying authorities which hold that the amount of unjust enrichment, if any, is an equitable issue to be decided by the Court); ECF 751 (same).

If the Court rules that the jury may decide the issue of unjust enrichment, Real Intent proposes the instruction below.

**Defendant's proposed instruction (if any is to be given):**

Synopsys seeks to recover from Real Intent an amount of money representative of Real Intent's research-and-development costs allegedly saved as a result of Real Intent's access and use of DesignWare models. Synopsys has the burden of proving the amount, if any, that Real Intent saved by accessing and using the DesignWare models.

To decide the amount of any unjust enrichment, if any, first determine the value of Real Intent's benefit that it would not have obtained except for its access and use of DesignWare models. Then subtract from that the reasonable expenses, including the value of Real Intent's labor or materials.

You may not include in your calculation any amount you took into account in determining Synopsys's claim for lost profits.

Source: CACI 4410 (unjust enrichment instruction for trade secret misappropriation claim adapted for use in this case).

## REAL INTENT'S PROPOSED FINAL INSTRUCTION NO. 17

## BREACH OF CONTRACT – CAUSATION

Synopsys must prove that the damages it seeks were caused by Real Intent's breach. Specifically, Synopsys must prove both of the following:

1. Synopsys's damages were proximately caused by Real Intent's breach, and

2. It was reasonably certain at the time the parties entered into the contract that Real Intent's breach would result in Synopsys's claimed damages.

A "proximate cause" is something that is a substantial factor in bringing about that damage.

Source: *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1352 (2009) ("Implicit in the element of damage is that the defendant's breach caused the plaintiff's damage."); *Vu v. California Commerce Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997) ("Causation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain."); *U.S. Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887, 909 (2005) ("A proximate cause of loss or damage is something that is a substantial factor in bringing about that loss or damage.") (internal citations omitted); *Bruckman v. Parliament Escrow Corp.*, 190 Cal. App. 3d 1051, 1063 (1987) (In order to establish liability [in contract actions] the plaintiff must show that the defendant's breach was a 'substantial factor' in causing the injury.") (internal quotations omitted).

## REAL INTENT'S PROPOSED FINAL INSTRUCTION NO. 18
## BREACH OF CONTRACT – FORESEEABILITY OF HARM

Synopsys must prove that the damages it seeks were contemplated by the parties, or at least reasonably foreseeable by the parties, when they signed the contracts. In other words, when the parties signed the contracts Real Intent breached, both Synopsys and Real Intent must have anticipated, or could have reasonably anticipated, that a breach would result in the specific type of damages Synopsys seeks.

Source:  *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 969 (2004) ("Contract damages, unlike damages in tort (Civ. Code, § 3333), do not permit recovery for unanticipated injury . . . Special damages for breach of contract are limited to losses that were either actually foreseen (citations omitted)); *Erlich v. Menezes*, 21 Cal.4th 543, 550  (1999) ("Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time; consequential damages beyond the expectation of the parties are not recoverable.") (citations omitted); *Wallis v. Farmers* Group, Inc. 220 Cal.App.3d 718, 737 (1990) ("The detriment that is 'likely to result therefrom' is that which is foreseeable to the breaching party at the time the contract is entered into.")

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## REAL INTENT'S PROPOSED FINAL INSTRUCTION NO. 19

## BREACH OF CONTRACT – MITIGATION OF DAMAGES

Synopsys is not entitled to recover damages for harm that Real Intent proves Synopsys could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of Synopsys' efforts in light of the circumstances facing it at the time, including Synopsys' ability to make the efforts or expenditures without undue risk or hardship.

Source: Judicial Council of California Civil Jury Instructions, CACI No. 358 (2024) (modified based on facts of the case); *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 41 (1993) ("A plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## REAL INTENT'S PROPOSED FINAL INSTRUCTION NO. 20

## BREACH OF CONTRACT – NOMINAL DAMAGES

The law that applies to this case authorizes an award of nominal damages.  If you find that Synopsys has failed to prove lost profits with reasonable certainty as explained in these instructions, you must award nominal damages.  Nominal damages may not exceed one dollar.

Source: 9th Circuit Model Instructions – 5.6 (modified per MSJ order); *Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 29 Cal. App. 5th 1, 11 (2018) ("The plaintiff in a breach of contract action has the burden of proving nonspeculative damages with reasonable certainty.").

1

2

## REAL INTENT'S PROPOSED FINAL INSTRUCTION NO. 21

## BREACH OF CONTRACT – ANY DAMAGES MUST BE REASONABLE

3

4

5

6

7

8

9

      If you decide that a breach of contract by Real Intent caused harm to Synopsys, any amount of damages you award to Synopsys must be reasonable. A damages award cannot be grossly oppressive to Real Intent or disproportionate to the harm any breach caused Synopsys.

<u>Source</u>: Cal. Civ. Code § 3359 ("Damages must, in all cases, be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered.").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## STIPULATED FINAL INSTRUCTION NO. 22

2

## DUTY TO DELIBERATE

3    Before you begin your deliberations, elect one member of the jury as your presiding juror.

4  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in

5  court.

6    You shall diligently strive to reach agreement with all of the other jurors if you can do so.

7  Your verdict must be unanimous.

8    Each of you must decide the case for yourself, but you should do so only after you have

9  considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

10    It is important that you attempt to reach a unanimous verdict but, of course, only if each of

11  you can do so after having made your own conscientious decision. Do not be unwilling to change

12  your opinion if the discussion persuades you that you should. But do not come to a decision simply

13  because other jurors think it is right or change an honest belief about the weight and effect of the

14  evidence simply to reach a verdict.

15

16  Source: 9th Circuit Model Instructions – 3.1

17

18

19

20

21

22

23

24

25

26

27

28

## STIPULATED[7] COURT'S INSTRUCTION NO. 23

## CONSIDERATION OF EVIDENCE -- CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations.

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet

---

[7] Real Intent fixed some typographical errors (extra spaces) in this instruction. Additionally, Real Intent does not believe the optional statement in the final paragraph regarding "a mistrial" should be provided, as it may discourage jurors from reporting violations.  Real Intent believes the final paragraph should instead be: "A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately."

programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

Source: 9th Circuit Model Instructions – 3.2

## STIPULATED FINAL INSTRUCTION NO. 24

## COMMUNICATIONS WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

Source: 9th Circuit Model Instructions – 3.3

# STIPULATED COURT'S INSTRUCTION NO. 25

# RETURN OF VERDICT

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

Source: 9th Circuit Model Instructions – 3.5

Dated:  October 22, 2024                          KEKER, VAN NEST & PETERS LLP

                                          By:   /s/ *Victor Chiu*
                                                ROBERT A. VAN NEST
                                                REID P. MULLEN
                                                RYAN K. WONG
                                                CODY GRAY
                                                KRISTIN HUCEK
                                                THERESA M. DAWSON
                                                VICTOR CHIU
                                                BILAL MALIK
                                                CATHERINE C. PORTO
                                                ELIZABETH A. HECKMANN

                                                Attorneys for Defendant
                                                REAL INTENT, INC.