KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
REID P. MULLEN - # 270671
rmullen@keker.com
RYAN K. WONG - # 267189
rwong@keker.com
CODY GRAY - # 310525
cgray@keker.com
KRISTIN HUCEK - # 321853
khucek@keker.com
THERESA M. DAWSON - *pro hac vice*
tdawson@keker.com
VICTOR CHIU - # 305404
vchiu@keker.com
BILAL MALIK - # 318767
bmalik@keker.com
CATHERINE C. PORTO - #331168
cporto@keker.com
ELIZABETH A. HECKMANN - #347059
eheckmann@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188

Attorneys for Defendant
REAL INTENT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SYNOPSYS, INC., | Case No. 5:20-cv-02819-EJD (SvK) |
| Plaintiff, | **REAL INTENT, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW** |
| v. | Judge:    Hon. Edward J. Davila |
| REAL INTENT, INC., | Date Filed:  April 23, 2020 |
| Defendant. | Trial Date:  October 15, 2024 |

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   LEGAL STANDARD .............................................................................................1

III.  ARGUMENT ..........................................................................................................2

      A.    Synopsys failed to present sufficient evidence at trial to properly apportion the lost profits it seeks for its command-copying breach-of-contract claim............2

      B.    Synopsys has failed to establish causation for its "lost profits" damages claim...........................................................................................................5

      C.    Synopsys' claimed lost profits were not foreseeable as a matter of law. ...............7

      D.    Synopsys' claimed lost-profits damages are unreasonable....................................10

      E.    The Copyright Act preempts the breach-of-contract claim Synopsys has elected to try.....................................................................................................11

      F.    Synopsys failed to prove that Real Intent copied any commands, options, or attributes with syntax from the list of disputed elements. .....................................13

      G.    Synopsys failed to prove that Real Intent saved research-and-development costs for its DesignWare claim. ..........................................................................15

      H.    Synopsys failed to mitigate its alleged damages..................................................15

      I.    Unjust enrichment is not an available remedy for Synopsys' DesignWare claim and even if it were, it is an equitable issue to be decided by the Court. ............................................................................................................17

IV.   CONCLUSION.....................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Altera Corp. v. Clear Logic, Inc.*,
    424 F.3d 1079 (9th Cir. 2005) ....................................................................................12, 13

*Best Carpet Values, Inc. v. Google, LLC*,
    90 F.4th 962 (9th Cir. 2024) ...............................................................................................11

*Doe 1 v. GitHub, Inc.*,
    2024 WL 235217 (N.D. Cal. Jan. 22, 2024) .......................................................................12

*Highware Promotions LLC v. Legend Marketing LLC*,
    2006 WL 8434705 (C.D. Cal. Apr. 3, 2006), *aff'd* 263 F. App'x 564 (9th Cir.
    2008) .....................................................................................................................................8

*IBM Corp. v. Micro Focus (US), Inc.*,
    676 F. Supp. 3d 263 (S.D.N.Y. 2023)................................................................................12

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    399 F. Supp. 2d 1064 (N.D. Cal. 2005) ...............................................................2, 3, 4, 15

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) .............................................................................................17

*Proofpoint, Inc. v. Vade Secure, Inc.*,
    2023 WL 4475587 (N.D. Cal. July 10, 2023)...............................................................2, 15

*Shum v. Intel Corp.*,
    630 F. Supp. 2d 1063 (N.D. Cal. 2009), *aff'd*, 633 F.3d 1067 (Fed. Cir. 2010)......................5

*Torres v. City of Los Angeles*,
    548 F.3d 1197 (9th Cir. 2008) .............................................................................................1

*Trackman, Inc. v. GSP Golf AB*,
    2024 WL 4276497 (S.D.N.Y. Sept. 24, 2024)...................................................................12

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.*,
    249 F.3d 958 (9th Cir. 2001) ...............................................................................................5

*Weaving v. City of Hillsboro*,
    763 F.3d 1106 (9th Cir. 2014) .............................................................................................2

**State Cases**

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ..........................................................................................17

*K & K Capital Investments v. IPC (USA), Inc.*,
    2012 WL 2525644 (Cal. Ct. App. July 2, 2012) (unpublished)...............................................10

*Lewis Jorge Const. Mgmt., Inc. v. Pomona Unified Sch. Dist.*,
    34 Cal. 4th 960 (2004) .........................................................................................................7, 8

*Postal Instant Press, Inc. v. Sealy*,
    43 Cal. App. 4th 1704 (1996) .................................................................................................10

*Royal Neckwear Co. v. Century City, Inc.*,
    205 Cal. App. 3d 1146 (1988) ................................................................................................15

*Shaffer v. Debbas*,
    17 Cal. App. 4th 33 (1993) .....................................................................................................15

*St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*,
    101 Cal App. 4th 1038 (2002) ..................................................................................................6

**Federal Statutes**

17 U.S.C. § 102.................................................................................................................................11

17 U.S.C. § 103.................................................................................................................................11

17 U.S.C. § 106.........................................................................................................................11, 12

Copyright Act.........................................................................................................................1, 11, 12

**State Statutes**

Cal. Civ. Code § 3301.........................................................................................................................5

Cal. Civ. Code § 3359.................................................................................................................10, 11

**Rules**

Fed. R. Civ. Proc. 50(a) .................................................................................................................1, 17

**Other Authorities**

Restatement (Second) of Contracts § 351........................................................................................8

**I.     INTRODUCTION**[1]

Real Intent respectfully moves for judgment as matter of law as to the following issues:

1.  Synopsys failed to apportion damages in several critical respects and the jury is therefore left without a reasonable basis to assess damages;

2.  No reasonable juror would find that Synopsys met its burden of proving that Real Intent's support of a limited set of Design Vision commands resulted in over $40 million in lost profits;

3.  Synopsys' lost-profits claim based on breach of contract was not foreseeable at the time of contracting;

4.  Synopsys' damages request is unreasonable as a matter of law;

5.  The Copyright Act preempts the command-copying breach-of-contract claim that Synopsys has elected to try;

6.  Synopsys failed to prove copying from the disputed list of command elements;

7.  Synopsys failed to prove that Real Intent saved any research-and-development costs by accessing and using the DesignWare models;

8.  In view of the trial evidence, the only reasonable conclusion is that Synopsys failed to mitigate its purported harm; and

9.  Unjust enrichment is not an available remedy for Synopsys' breach claim, and even if it were, it is an issue that should be decided by the Court.

For the reasons set forth below, the Court should grant judgment in Real Intent's favor.

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 50(a) authorizes the Court to enter judgment as a matter of law on any claim or defense once "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). The Court should grant a Rule 50(a) motion "when the evidence presented at trial permits only one reasonable conclusion." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008). "It is error to deny a judgment [as a matter of law] when it is clear that the evidence and its inferences cannot reasonably support a

---

[1] In all quotations appearing herein, all internal quotation marks, citations, and alterations have been removed, and all emphases added, unless otherwise noted.

2815491

judgment in favor of the opposing party." *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014).

### III.    ARGUMENT

**A.    Synopsys failed to present sufficient evidence at trial to properly apportion the lost profits it seeks for its command-copying breach-of-contract claim.**[2]

Real Intent is entitled to judgment as a matter of law on Synopsys' command-copying breach-of-contract claim because Synopsys failed to present sufficient evidence at trial to properly apportion its damages request of over $41 million in alleged lost profits. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1076-177 (N.D. Cal. 2005) (judgment as a matter of law on unjust enrichment claim was appropriate where plaintiff failed to offer evidence that could have "provide[d] a reasonable basis for the jury to apportion" amount of benefit attributable to misappropriation); *see also Proofpoint, Inc. v. Vade Secure, Inc.*, 2023 WL 4475587, at *4 (N.D. Cal. July 10, 2023) (judgment as a matter of law appropriate where plaintiff failed to adduce "evidence from which an apportionment could be made"). Synopsys' damages expert, Mr. Brian Napper, did not present ***any*** alternative damages figure for the jury to consider, and further testified—contrary to the opinions offered in his expert report—that Synopsys is entitled to the full $41 million in lost profits based ***solely*** on alleged lost sales of Synopsys' VC SpyGlass products, and regardless of how many command-option pairings or object-attribute

---

[2] Real Intent understands that the Court found at summary judgment that it breached certain provisions of the in-Sync Agreements and Synopsys Loan Agreement but respectfully disagrees with that finding for the reasons set forth in its summary judgment briefing, *see* ECF 322, and further because the trial record showed that Real Intent already had knowledge and possession of the undisputed commands (with syntax) before it received Design Vision in April 2013. *See, e.g.*, TX2201 (2012 Command Spreadsheet); TX2202 (JIRA Ticket).

pairings were actually copied from Design Vision after April 2013.[3] Mr. Napper's all-or-nothing approach warrants judgment as matter of law for three independent reasons.

**First**, Synopsys' own experts offered completely contradictory testimony that makes it impossible to furnish a reasonable basis for the jury to assess damages. On the one hand, Mr. Napper conceded on the stand that his "lost profits damages opinion is the same **regardless** of the number of command that Real Intent is said to have copied." Trial Tr. (Oct. 22, 2024) at 1111:6-11. Mr. Napper testified that if "Real Intent copied only the undisputed commands/options and attributes, [his] opinion is that Synopsys lost $41 million in profits." *Id.* at 1111:18-22. On the other hand, Synopsys' technical expert, Dr. Edwards, provided the opposite opinion. Dr. Edwards testified that "if it were just the undisputed commands, it's not clear to me what benefits." Trial Tr. (Oct. 18, 2024) at 787:17-18. Dr. Edwards added: "If customers had written scripts that happened to restrict themselves to just the undisputed commands, **maybe it would be okay**." Trial Tr. (Oct. 18, 2024) at 787:19-21.

These opinions from Synopsys' expert witnesses offered at trial cannot be reconciled. Simply put, while Synopsys' damages expert told the jury that copying just six commands (the "undisputed" ones) is enough to award Synopsys $41 million in damages, Synopsys' technical expert testified that copying these six commands would provide no clear benefits to Real Intent's accused products. In view of this conflicting testimony from both of Synopsys' experts, the jury has no reasonable basis to apportion damages for Synopsys' $41 million claim of lost profits if it concludes that Real Intent copied none or even some of the disputed commands. Judgment as a matter of law on Synopsys' command-copying breach-of-contract claim should be granted for this reason alone. *See O2 Micro*, 399 F. Supp. 2d at 1077 ("After the jury concluded that [defendant] did not misappropriate all of O2 Micro's trade secrets, Mr. Meyer's expert testimony regarding damages for misappropriation of all trade secret was useless to the jury. The jury was

---

[3] By contrast, Mr. Napper's expert report based the alleged $41 million in lost sales on SpyGlass **and** VC SpyGlass products (which are two different product lines), and for a far greater number of disputed command sets underlying Synopsys' failed copyright claim.

then left without sufficient evidence, or a reasonable basis, to determine the unjust enrichment damages.").

**Second**, Synopsys' damages expert failed to apportion damages in his testimony before the jury between alleged lost sales of its SpyGlass and VC SpyGlass products. Throughout this litigation, and etched in stone in Mr. Napper's expert report, Synopsys claimed that it lost sales of **both** its SpyGlass product and VC SpyGlass product due to Real Intent's copying. After realizing while preparing for trial that its own internal documents revealed extensive customer criticisms of the SpyGlass product that undermined its damages theory, Synopsys executed an about-face and claimed for the first time at trial that it is **only** seeking damages for lost sales of VC SpyGlass. Trial Tr. (Oct. 16, 2024) at 322:22-23 ("So while SpyGlass and VC SpyGlass are still used by different customers, only VC SpyGlass is at issue in this case."); *Id.* at 579:23-24 (Swami Venkat) (testifying that "the product at issue in this case is VC SpyGlass"). As the Court asked days ago, "[D]oes [Mr. Napper] parse out, can he parse out and separate SpyGlass from VC?" Trial Tr. (Oct. 18, 2024) at 642:1-2. The answer is no.

There is no dispute in the trial record that Mr. Napper's lost-profits analysis encompassed "all VC SpyGlass products, RDC, CDC, and lint, **as well as the original SpyGlass RDC, CDC, and lint**." Trial Tr. (Oct. 22, 2024) at 1093:1-5; *see also id.* at 1095:11-18 (relying on Namit Gupta's claim that "Synopsys lost sales to ███ as a customer for SpyGlass CDC, SpyGlass RDC, VC SpyGlass CDC, and VC SpyGlass RDC"). There is also no dispute that Mr. Napper's "lost profits" damages analysis begins with alleged lost sales in January 2017, which is almost a full year **before** VC SpyGlass was released for sale to the public in December 2017. *Id.* at 1101:6-14. And Synopsys witness Namit Gupta similarly testified at trial that Synopsys lost sales for its SpyGlass product for many of the customers at issue in this case, and the VC SpyGlass product was not ready for sale. *E.g.*, Trial Tr. (Oct. 22, 2024) at 991:6-15 (confirming that Synopsys claimed damages for both the "SpyGlass products and the VC SpyGlass products"); *id.* at 991:25-992:3 (claiming that Synopsys' alleged losses for ███ "started specifically with the SpyGlass RDC product"); *id.* at 992:13-16 (claiming that Synopsys' alleged losses for ███ started with "the original SpyGlass CDC product").

In short, Synopsys' VC-SpyGlass-only damages theory at trial is flatly at odds with the analysis that Mr. Napper advanced in his expert report. Mr. Napper claimed that Synopsys lost $41 million in profits for **both** SpyGlass and VC SpyGlass, but he does not and cannot parse out the alleged lost sales of SpyGlass and the alleged lost sales of VC SpyGlass from this overall sum. As Mr. Napper put it, he "didn't have any insight into the sales of SpyGlass products and VC SpyGlass products separately from Synopsys. That's not the way [he] did [his] lost profits analysis." Trial Tr. at 1095:5-7. Accordingly, the jury has no reasonable basis to award $41 million based on alleged lost profits for solely the VC SpyGlass product.

**Third**, Synopsys failed to present any evidence at trial for a jury to reasonably and properly apportion damages among the five separate contractual agreements at issue in this case. As discussed below, Synopsys' request for lost-profits damages is unforeseeable as a matter of law for each of the five contracts in dispute. But even if the Court finds that the alleged lost profits would not have been foreseeable as a matter of law for a subset of contracts (*e.g.*, the agreements predating Synopsys' purchase of Atrenta, which is when Synopsys did not own the SpyGlass and VC SpyGlass product line), Mr. Napper failed to apportion his lost-profits figure among **each** of the five contracts.

Because of these fatal apportionment flaws in the damages theory Synopsys presented to the jury, judgment as a matter of law is warranted.

### B.    Synopsys has failed to establish causation for its "lost profits" damages claim.

No reasonable jury could conclude that the breach of contract caused Synopsys to lose any profits. *See Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1077 (N.D. Cal. 2009), *aff'd*, 633 F.3d 1067 (Fed. Cir. 2010) (granting JMOL where plaintiff had failed to "provide any basis for the jury to conclude that he is not already in the same financial position he would have been in had the alleged breach never occurred"). Synopsys bears the burden of proving with "reasonable certainty" that "its lost profits would have been earned but for" Real Intent's breach. *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001). Synopsys must therefore show that its alleged damages are not "speculative." *Id.*; Cal. Civ. Code § 3301 ("No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and

origin."). It is "essential" that the plaintiff "establish a causal connection between the breach and the damages sought." *St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*, 101 Cal App. 4th 1038, 1061 (2002).

To start, Synopsys' technical expert, Dr. Edwards, already conceded that "it's not clear . . . what benefits" Real Intent would enjoy if it copied the six "undisputed commands" from Design Vision. Trial Tr. (Oct. 18, 2024) at 787:17-18. That admission alone is enough for the Court to rule, as a matter of law, that Synopsys cannot establish that it suffered over $40 million in lost profits as a result of Real Intent copying the undisputed commands.

In any event, testimony from the parties' experts confirms that no reasonable juror could conclude that Real Intent's copying of either the disputed or undisputed commands caused Synopsys' alleged lost profits. Dr. Edwards confirmed that "first and foremost, the quality of results tend to be what customers care most about." Trial Tr. at 888:14-17. And quality of results "comes from [Real Intent's] algorithms and source code," not commands. Trial Tr. at 1474:4 (Rajiv Kumar). Synopsys' other expert, Mr. Napper, did not speak to anyone from any of the companies for which Synopsys contends it lost sales and therefore could not confirm what drove their purchasing decisions. *See* Trial Tr. at 1118:9-11. Mr. Napper also conceded that Real Intent made sales to the customers in dispute before ***any*** of the in-Sync Agreements existed, so the commands could not have been the reason Real Intent made sales. Trial Tr. at 1119:2-17; TX463 (spreadsheet documenting Real Intent's sales from 2010 to 2016). Moreover, the commands in dispute represent less than 2% of the commands in Real Intent's products, which only underscore that they do not drive purchasing decisions. *See* TX344 (summary chart of all command-option pairings in Real Intent's Meridian and Ascent products); Tr. at 1578:18-1579:1.

Ms. Bennis also confirmed that Synopsys' damages theory that Synopsys and Real Intent were the ***only*** two competitors in the CDC verification space was flawed. *See* Tr. 1581:14-1582:2. "There were other competitors . . . that were in this market with capable tools and accomplishing sales to the same customers" in dispute. *Id.* at 1581:24-1582:2.

Lastly, ***none*** of the six customers at issue in this case testified, much less testified that they would have purchased SpyGlass or VC SpyGlass if Real Intent's products did not support

1   the disputed and undisputed commands.

2       Given the foregoing, no reasonable juror would find that it was reasonably certain that

3   Real Intent's copying of a limited set of commands from Design Vision resulted in over $40

4   million in lost profits for Synopsys. Thus, the Court should grant judgment as a matter of law for

5   this additional reason.

6       **C.    Synopsys' claimed lost profits were not foreseeable as a matter of law.**

7       California law recognizes lost profits as special (rather than general) damages for breach-

8   of-contract claims. *Lewis Jorge Const. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960,

9   975 (2004) ("Lost profits, if recoverable, are more commonly special rather than general damages

10  . . . and subject to various limitations."). "Special damages for breach of contract are limited to

11  losses that were either actually foreseen . . . or were 'reasonably foreseeable' when the contract

12  was formed." *Id.* at 970. For at least four reasons, no reasonable juror could conclude that

13  Synopsys' claim for over $41 million—based on purported lost sales of SpyGlass and VC

14  SpyGlass—was foreseeable at the time of contracting.

15      ***First***, it is undisputed that Synopsys did ***not own*** the SpyGlass product when the first

16  three in-Sync Agreements were signed in April 2013, April 2014, and March 2015. *See* ECF 628

17  (Joint Pre-Trial Conference Statement) at 14 (Undisputed Fact: "On August 3, 2015, Synopsys,

18  Inc. completed its acquisition of Atrenta."). And ***all*** of the contracts in dispute were signed before

19  Synopsys released VC SpyGlass to the public in late 2017. *See id.* (Undisputed Fact: "On

20  December 4, 2017, Synopsys, Inc. first published VC SpyGlass."); Trial Tr. at 984:22-24 (Namit

21  Gupta testifying that VC SpyGlass was "roll[ed] out" to customers in "December of 2017").

22  Accordingly, Real Intent could not have actually or reasonably foreseen that copying a limited set

23  of commands from Design Vision would result in the "unusual losses" that Synopsys asserts (*i.e.*,

24  purported lost profits for a product that Synopsys did not even own at the time of contracting).

25  *Lewis*, 34 Cal.4th at 970. Indeed, there is no evidence in the trial record that Synopsys "told" Real

26  Intent "at the time the contract [was] made, of any special harm likely result from a breach." *Id.*

27      Nor can Synopsys argue that it is entitled to lost profits simply because of the Court's

28  breach finding. "Special damages will not be presumed from the mere breach[.]" *Id.* at 969. The

7

"mere circumstance that some loss was foreseeable, or even that some loss of the same general kind was foreseeable, will not suffice if the loss that **actually occurred** was not foreseeable." Restatement (Second) of Contracts § 351, cmt a. Synopsys therefore cannot claim that Real Intent should have foreseen some general type of competitive harm from copying. Because the actual alleged loss that Synopsys claims was not—and could not have been—foreseeable at the time of contracting, judgment as a matter of law is appropriate.

  *Second*, the vast disparity between the contract price (a few thousand dollars) and Synopsys' claim for lost profits (over $40 million) confirms that Synopsys' purported losses are unforeseeable as a matter of law. For instance, the 2014 in-Sync Agreement charged Real Intent ███████████████████████████████████████████, including Design Vision. TX79 at 18; *see also* TX80 (2013 in-Sync Agreement) at 18 (charging Real Intent ██████████████████████████████). Real Intent could not have reasonably foreseen that an agreement to pay this limited amount would subject it to "the risk of liability for unusual losses" based on tens of millions of dollars of alleged lost sales. *Lewis*, 34 Cal.4th at 970.

  The trial court's decision in *Highware Promotions* is instructive. *See Highware Promotions LLC v. Legend Marketing LLC*, 2006 WL 8434705 (C.D. Cal. Apr. 3, 2006), *aff'd* 263 F. App'x 564 (9th Cir. 2008). There, the plaintiff contracted with Sony to provide customized hats and subcontracted with the defendant to manufacture these hats. The plaintiff paid the defendant about $12,000, but the defendant failed to timely deliver the hats. Sony then terminated its business relations with the plaintiff, and the plaintiff sued the defendant for breach of contract and millions of dollars for loss of goodwill as consequential damages. At summary judgment, the trial court found that the plaintiff "failed to present any evidence that . . . [defendant] had reason to foresee such far-reaching consequences from its alleged breach." *Id.* at *3. "[N]one of the information [p]laintiff did provide was sufficient to allow [defendant] to foresee that a breach of a contract for $11,900 could result in the loss of a multi-million dollar, long-term relationship." *Id.* So too here. There is no trial record evidence that Synopsys ever told Real Intent that a breach of the in-Sync Agreements—each of which had a contract price of ██████████████—could result in tens of millions of dollars in lost profits for sales of SpyGlass and VC SpyGlass to

████████████████████████████████████████ *See* Trial Tr. at 1404:6-9

(Graham Bell) (Q: "At any point in any of the processes of renewing the in-Sync Agreement,

were you made aware of any problems or issues with Real Intent's continued participation?" A:

"No."). Indeed, no Synopsys witness had ***any*** percipient knowledge about negotiations with Real

Intent over the in-Sync Agreements.

   ***Third***, the plain terms of the contracts confirm that neither party foresaw or had reason to

foresee that copying a limited set of commands from Design Vision could cause competitive

harm to two other Synopsys products, SpyGlass and VC SpyGlass. To begin with, none of the

contracts mention SpyGlass. TX79-TX83; TX88. The only competitive harm that the contracts

contemplate are directed at "Licensed Products," which include Design Vision but not SpyGlass.

*E.g.*, TX79 at 18 (Exhibit A). Under Section 9.7 of the in-Sync Agreements, Real Intent was

required to ██████████████████████████████████████████████

████████████████████████████████████" TX79 at 12. Because the contracts only

addressed competitive harm to Synopsys Licensed Products—as opposed to "***any*** Synopsys

product"—Synopsys' claimed losses for a product it acquired years after the fact and never

mentioned in the contracts were not foreseeable as a matter of law.

   ***Finally***, Synopsys' claim for lost-profits damages was unforeseeable given its extensive

promotion of open-source Synopsys Design Constraints or "SDC commands and options," which

form the basis of several of the "disputed" commands asserted by Synopsys and are virtually

indistinguishable from the asserted command-option pairings. As Synopsys witness Sandra Ma

confirmed, these SDC commands and options are "free to use." Trial Tr. (Oct. 18, 2024) at

738:13-15. Examples of SDC commands include get_cells, get_clocks, get_lib_cells,

get_lib_pins, get_libs, get_nets, get_pins, and get_ports. TX104 (SDC Application Note) at 19-

20. These ***same*** "get" commands are part of the command-option pairs that Synopsys has accused

Real Intent of copying and form the basis of Synopsys' claim for lost profits. As another example,

the create_generated_clock command with the -invert option is deemed open-source SDC

according to Synopsys, but Synopsys claims in this litigation that █████████████ with the

███████ option is not. Trial Tr. (Oct. 18, 2024) at 741:23-742:3. Indeed, Synopsys' own

1    engineers who build DesignWare models do not know what commands are open-source "SDC."

2    Trial Tr. (Oct. 24, 2024) at 1661:10-1662:7. Given that Real Intent was a participant of the open-

3    source SDC program since 2008, Trial Tr. at 1484:6-15, it would not have foreseeable that

4    Synopsys would claim over $40 million in lost profits based on command-option pairings that

5    substantially overlap with command-option pairings that it gives away for free.

6              **D.     Synopsys' claimed lost-profits damages are unreasonable.**

7              No reasonable juror could find that Synopsys' demand for over $41 million in lost profits

8    is reasonable. "Damages must, in all cases, be reasonable, and where an obligation of any kind

9    appears to create a right to unconscionable and grossly oppressive damages, contrary to

10   substantial justice, no more than reasonable damages can be recovered." Cal. Civ. Code § 3359.

11             In *Postal Instant Press, Inc. v. Sealy*, 43 Cal. App. 4th 1704 (1996), the plaintiff

12   franchisor terminated the franchise of the defendants for failure to pay royalties and sought lost

13   future profits arising out of the termination of the contract. The trial court allowed those damages,

14   but the Court of Appeal reversed that decision. It ruled that the damages award violated Section

15   3359, which requires that damages must be reasonable. *See id.* at 1714. Far from reasonable, the

16   claim for lost future profits "would place a bludgeon in the hands of franchisors" and would have

17   provided the plaintiff "with 'disproportionate compensation' which is 'unreasonable' and an

18   'unconscionable' and 'grossly oppressive' imposition on its franchisee." *Id.* at 1715. Synopsys'

19   lost profits damages theory, based on hindsight and unforeseeable events (*e.g.*, lost sales of

20   products that Synopsys never had when the contracts were signed), is similarly unreasonable as a

21   matter of law. It seeks to impose tens of millions of dollars of liability in supposed lost profits in

22   relation to a contract that was valued at just ████████████ when it was entered into. *See*

23   *K & K Capital Investments v. IPC (USA), Inc.*, 2012 WL 2525644, at *2–4 (Cal. Ct. App. July 2,

24   2012) (unpublished) (affirming grant of new trial where jury award of $1.3 million in lost profits

25   was "obviously excessive" when compared to the limited nature of the breach). And those ███

26   ████████ were to obtain licenses to Synopsys software products that Real Intent—based

27   on the undisputed trial evidence—never competed against, but instead needed to work with as

28   part of a design flow. Thus, Synopsys' demand for over $41 million should be rejected as

---

10

2815491

1    unreasonable as a matter of law under California Civil Code § 3359.

2        **E.    The Copyright Act preempts the breach-of-contract claim Synopsys has
              elected to try.**

3

4        In denying Real Intent's motion for summary judgment on copyright preemption grounds,

5    the Court found that Synopsys had sufficiently "*alleged* breaches of the Agreements that are

6    outside the scope of the Copyright Act." ECF 513 at 26. In particular, the summary-judgment

7    order noted that Synopsys had alleged that "us[ing] Design Vision to understand and model the

8    behavior in Real Intent's tools," which was a breach of the agreements between the parties that

9    "implicates rights outside the scope of the Copyright Act." *Id.* at 25.

10        On the eve of trial, however, Synopsys, abandoned the theory of breach that shielded its

11    contract claim from preemption, and elected to proceed at trial on only two theories of breach: the

12    copying of commands (with syntax) from Design Vision, and the access and use of DesignWare

13    files. *See* ECF 628 at 3. And the command-related claim that Synopsys presented to the jury—the

14    copying of commands, options, and attributes with syntax from Design Vision after April 2013—

15    falls squarely within the Copyright Act's ambit. As Synopsys' counsel put it during trial: "It's all

16    the same conduct. The conduct that is alleged for copyright is the same conduct that is alleged for

17    breach of contract. It's the copying of the commands." Trial Tr. (Oct. 24, 2024) at 1627:12-15.

18    And were there any doubt remaining, Synopsys' counsel doubled down: "The copyright claim

19    was that [Real Intent] copied certain commands and the breach of contract [is] that [Real Intent]

20    copied certain commands." *Id.* at 1627:1-3.

21        The Ninth Circuit has a "two-part test to determine whether a state law claim is preempted

22    by the [Copyright] Act." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 971 (9th Cir.

23    2024). The first step asks "whether the subject matter of the state law claim falls within the

24    subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." ECF 513 at 24. The

25    second step evaluates "whether the rights asserted under state law are equivalent to the rights

26    contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id.*

27    There is no dispute that the first step is met here "because the subject matter of the breach of

28    contract claim involves Synopsys' copyrighted works," *id.* at 25, which are Synopsys' Design

11

2815491

1    Vision products. The only question that remains is whether the second step is met for Synopsys'

2    command-copying claim. As explained below, the answer is yes.

3           As to Design Vision, Synopsys' **only** claim is that Real Intent breached the contract "by

4    copying commands and attributes, with syntax . . . into its own products." ECF 707 (Further

5    Order Re Command Dispute) at 1. As Synopsys' counsel confirmed at trial, Synopsys' theory

6    plainly seeks to invoke the Copyright Act's exclusive right to "reproduce the copyrighted work,"

7    17 U.S.C. § 106, and is therefore preempted. *Trackman, Inc. v. GSP Golf AB* is directly on point.

8    2024 WL 4276497 (S.D.N.Y. Sept. 24, 2024). There, the plaintiff sued the defendant for

9    breaching a software licensing agreement by "studying and analyzing [plaintiff's] software as part

10   of its efforts to develop its own competing golf simulator software." *Id.* at *10. As the *Trackman*

11   court observed, the plaintiff's claim was "effectively the same as alleging that defendants

12   reproduced, prepared a derivative work based upon, and distributed copies of plaintiff's software

13   in violation of the Copyright Act." *Id.* at *13. Thus, the *Trackman* court held that plaintiff's

14   breach-of-contract claim was preempted. *Id.* at *14. Likewise, Synopsys' "contract claim is

15   nothing more than a thinly veiled attempt to cloak what is, at bottom, a claim for copyright

16   infringement." *Id.* at *13. As Synopsys' corporate representative (Swami Venkat) put it, this

17   "case" is "about the copying of the Synopsys commands." Trial Tr. at 498:3-4.

18          Finally, given Synopsys' abandonment of its "use" theory of contractual breach for

19   Design Vision, *see* ECF 628 at 3, *Altera Corp. v. Clear Logic, Inc.* does not apply. 424 F.3d 1079

20   (9th Cir. 2005). The "right at issue" in *Altera* was "not the reproduction of the software . . . but

21   [wa]s more appropriately characterized as the use of the [software]." *Id.* at 1089. At trial,

22   Synopsys did not assert that the improper use of Design Vision to understand its behavior

23   breached any of the agreements in dispute. Instead, it has argued time and again before the jury

24   that Real Intent **copied** commands from its software, which is a theory squarely preempted by the

25   Copyright Act. *See Trackman*, 2024 WL 4276497 at *14; *IBM Corp. v. Micro Focus (US), Inc.*,

26   676 F. Supp. 3d 263, 278 (S.D.N.Y. 2023) (plaintiff's breach of software license claim was

27   preempted because the contract "prohibit[ed] [defendant] from infringing IBM's exclusive rights

28   to copy and distribute its software"); *see also Doe 1 v. GitHub, Inc.*, 2024 WL 235217, at *7

                                                        12

2815491

(N.D. Cal. Jan. 22, 2024) (preempting unjust enrichment claim and distinguishing *Altera* because "the *Altera* dispute concerned the 'unauthorized use of the software's end-product," but plaintiffs "claims principally concerned the unauthorized reproduction of their code to prepare derivative works"). For these reasons, the Court should find that Synopsys' command-copying theory of breach is preempted as a matter of law.

**F.    Synopsys failed to prove that Real Intent copied any commands, options, or attributes with syntax from the list of disputed elements.**

No reasonable juror, in view of the trial record, could find that Synopsys proved that Real Intent copied any of the disputed elements from Design Vision after April 2013.

***First***, Synopsys failed to prove that Real Intent copied the disputed commands, options, and attributes, with syntax, from Design Vision as opposed to another source. Synopsys' expert, Dr. Edwards, claims to have conducted a "filtering" analysis to determine the overlap between the commands in Real Intent's products and in Design Vision. *See* Trial Tr. at 779:25–786:1. But Dr. Edwards admitted that he did not consider a Real Intent PureTime product manual from 2009 (TX2198), which establishes that many of the disputed commands and options were in Real Intent's products well before 2013. Testimony from Real Intent Chief Technology Officer, Mr. Rajiv Kumar, confirmed that the presence of these command set elements in PureTime meant that they were likewise already in the Meridian and Ascent products in 2009, and that those commands were available for use in those products. Other evidence also establishes that the disputed commands were in Real Intent's products before 2013 or did not come from Design Vision, including (1) Real Intent engineer Vikas Sachdeva's testimony that he added several disputed commands on his own based on his memory and without consulting any Design Vision resources, *see, e.g.*, Trial Tr. at 1371:17–1374:21; (2) former Real Intent engineer Sarath Kirihennedige's Excel chart demonstrating that Real Intent had knowledge of many of the disputed commands and options in 2012, *see* TX2201; and (3) two Meridian manuals from before April 2013 (TX1184 and TX1224) (Meridian 4.0 and 4.1) demonstrating that many of the disputed commands and options were in Real Intent's products before 2013.

Dr. Edwards also confirmed that nearly all of the same disputed commands and options

were in a different Synopsys product called "PrimeTime." Trial Tr. at 882:3–888:4. Both parties agree that any copying from PrimeTime is not prohibited by the contracts. (Indeed, the Court has already ruled that it is a fair use.) Dr. Edwards failed to explain how Real Intent could have specifically copied from Design Vision after April 2013, even after he admitted (and explicitly so in his expert report) that these same "copied" commands and options were also in PrimeTime.

**Second**, Synopsys failed to prove that Real Intent copied any commands from Design Vision when using it. Dr. Edwards relied on isolated references to Design Vision being the "gold standard" to suggest that Real Intent copied commands from Design Vision. But Real Intent engineers explained that they used Design Vision for permissible purposes under the contract that did not involve copying any commands, options, or attributes, with syntax. For instance, Real Intent engineer Vikas Sachdeva testified that he used Design Vision to modify the **output** of a command. Trial Tr. at 1360:10–12. He further testified that commands, options, and attributes are **not** outputs from a tool because they are **inputs** to a tool. *Id.* at 1362:25–1363:1. Mr. Sachdeva testified that modifying the behavior, or output, of a tool does not require adding a command. In fact, to modify the output, the command must already be in the product and therefore could not have been copied from Design Vision. *Id.* at 1368:7–13. The record evidence, including JIRA tickets, emails, and deposition testimony, likewise confirmed that "gold standard" referred to behavior (*e.g.*, the outputs of Design Vision)—not to copying any command set elements.

The testimony adduced at trial demonstrates—at most—that Real Intent engineers used Design Vision to verify the outputs of Real Intent's products. That does not prove copying, nor does it even make copying more likely to have occurred, as verifying the output of a command means that the command at issue is already present in Real Intent's tools.  Verifying the output of products to ensure the output is consistent with Design Vision is permitted by the contracts at issue, as Synopsys employee Sandra Ma confirmed, and as the contracts themselves confirm. *See id.* at 694:9-12 ("We license Design Vision to our competitors as a way for them to verify that their output works with our tools[.]").

**Third**, Synopsys adduced **no** evidence of Real Intent copying attributes with objects or any data types. Synopsys showed a list of command-option pairings and another list of attributes

(with objects and types), but never adduced any evidence that Real Intent copied "syntax." Similarly, Synopsys adduced no evidence that any of the disputed attributes were copied from Design Vision into Real Intent's products.

In sum, Synopsys failed to prove that Real Intent copied any commands from the disputed list of elements. And because Dr. Edwards testified that copying only the six undisputed commands would not have given Real Intent any "benefits," Synopsys cannot as a matter of law recover over $40 million in alleged lost profits based on Real Intent's copying of just the six commands. *See* Trial Tr. (Oct. 18, 2024) at 787:17-18.

### G.    Synopsys failed to prove that Real Intent saved research-and-development costs for its DesignWare claim.

At trial, Synopsys failed to "present evidence to support a finding that Real Intent avoided the large amount of research and development costs" that Real Intent purportedly saved 'as a result of' Real Intent's "access of Synopsys' DesignWare Library." Pretrial Order at 17. Synopsys provided no trial evidence to support that Real Intent was unjustly enriched as a result of the breach related to the DesignWare Library and even if it did, it failed to provide any reasonable basis for the jury to apportion the amount of any "benefit" attributable to the breach. *See Proofpoint*, 2023 WL 4475587, at *4; *O2 Micro*, 399 F. Supp. 2d at 1076-77.

### H.    Synopsys failed to mitigate its alleged damages.

Any reasonable juror would find that Synopsys failed to mitigate its purported damages based on Real Intent's use of the disputed commands. California law imposes a duty to mitigate damages on parties to a contract. "A plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been avoided." *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 41 (1993); *see also Royal Neckwear Co. v. Century City, Inc.*, 205 Cal. App. 3d 1146, 1154 (1988) ("It is well established that a party injured by breach of contract is required to mitigate his or her damages. Accordingly, that person cannot recover damages for detriment which he or she could have avoided by reasonable effort."). The evidence adduced at trial showed that the only reasonable conclusion to be drawn is that Synopsys had every opportunity to

1    minimize its alleged damages by timely informing Real Intent that it objected to its support of the

2    disputed commands, reporting Real Intent's conduct to the in-Sync Program, and/or withholding

3    its annual recommendation for Real Intent to participate in the in-Sync Program. Synopsys failed

4    to undertake any of these reasonable efforts.

5        Synopsys used Real Intent's products for years, yet chose to claim years later that Real

6    Intent's support of certain commands constituted a breach of contract. Synopsys engineer Peter

7    Gillen testified (by video deposition) that he and "20-plus" engineers used Real Intent's Meridian

8    CDC and Ascent Lint tools between 2012 and 2015, and that he personally used the products and

9    their manuals (which list out the tool's supported commands and options in detail). Transcript of

10   Video Testimony of Peter Gillen at 37:04-37:22 (access to Meridian and Ascent); 38:19-38:25 (at

11   least 20 engineers used Real Intent's tools); 40:08-40:13 (received Real Intent tools reference and

12   user manuals).

13       Synopsys had access to Real Intent's Meridian 4.1 and 5.0 manuals which included a

14   complete list of commands and options, many of which are accused in this case. *See id.* at 225:03-

15   225:09 (access to Meridian 5.0 manual); TX1558 (email from Gillen to Krishnan stating Gillen is

16   using "Meridian 4.1"); TX134 (Meridian 5.0 manual produced from Synopsys' files). Mr. Gillen

17   also used the Meridian CDC command line interface, which would reveal the commands, options,

18   and attributes with syntax the Meridian tool supported. *Id.* at 207:07-207:12. And Mr. Gillen

19   worked directly with Real Intent employees who themselves showed Mr. Gillen which commands

20   the Meridian and Ascent tools supported. *See* Trial Tr. (Oct. 24, 2024) at 1657:17-21.

21       Mr. Gillen was also in direct contact with Ibna Faruque, the director of the in-Sync

22   Program under which Real Intent received access to the Design Vision product. For multiple

23   successive years, ████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   ██████████████████████████████████████████████████

26   ███████████████████████████████████████████████████

27   ██████████████████████████████████████████

28       In view of all this evidence, the only reasonable conclusion is that Synopsys failed to

2815491

mitigate its alleged harm for years based on Real Intent's use of certain Design Vision commands. Accordingly, the Court should reduce Synopsys' lost-profits request to $1.

**I.      Unjust enrichment is not an available remedy for Synopsys' DesignWare claim and even if it were, it is an equitable issue to be decided by the Court.**

Real Intent understands that the Court has previously ruled that Synopsys can pursue a theory of unjust enrichment based on its breach-of-contract claims. *See* Pretrial Order at 17. That said, Real Intent maintains that, under California law, Synopsys cannot seek unjust enrichment (based on saved R&D costs) for breach of the in-Sync Agreements and Synopsys Loan Agreement. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties"); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("An unjust enrichment theory is inapplicable because [plaintiff] alleges the parties entered into express contracts."). Real Intent also maintains that the amount of unjust enrichment (if any) is an issue to be decided by the Court, not by a jury, because unjust enrichment is an equitable remedy. *See* ECF 741 (providing relevant authorities).

**IV.      CONCLUSION**

For the foregoing reasons, the Court should grant Real Intent's Rule 50(a) motion for judgment as a matter of law, on the grounds set forth herein.

Dated:  October 25, 2024                      KEKER, VAN NEST & PETERS LLP

By:   */s/ Victor Chiu*
ROBERT A. VAN NEST
REID P. MULLEN
RYAN K. WONG
CODY GRAY
KRISTIN HUCEK
THERESA M. DAWSON
VICTOR CHIU
BILAL MALIK
CATHERINE C. PORTO
ELIZABETH A. HECKMANN

Attorneys for Defendant
REAL INTENT, INC.