KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
REID P. MULLEN - # 270671
rmullen@keker.com
RYAN K. WONG - # 267189
rwong@keker.com
CODY GRAY - # 310525
cgray@keker.com
KRISTIN HUCEK - # 321853
khucek@keker.com
THERESA M. DAWSON - *pro hac vice*
tdawson@keker.com
VICTOR CHIU - # 305404
vchiu@keker.com
BILAL MALIK - # 318767
bmalik@keker.com
CATHERINE C. PORTO - #331168
cporto@keker.com
ELIZABETH A. HECKMANN - #347059
eheckmann@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188

Attorneys for Defendant
REAL INTENT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>             Plaintiff,<br><br>      v.<br><br>REAL INTENT, INC.,<br><br>             Defendant. | Case No. 5:20-cv-02819-EJD (SvK)<br><br>**DEFENDANT REAL INTENT, INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))**<br><br>Judge:      Hon. Edward J. Davila<br><br>Date Filed:  April 23, 2020<br><br>Trial Date:  October 15, 2024 |

2829109

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   LEGAL STANDARD.............................................................................................2

III.  ARGUMENT ..........................................................................................................3

A.    The Copyright Act preempts the only Design Vision breach-of-contract claim Synopsys elected to try based on "copying of commands (with syntax)." ........................................................................................................3

1.    Synopsys' command-copying contract claim concerns the same subject matter and involves the same rights as its copyright claim. ...........4

2.    The only command-based contract theory that Synopsys elected to pursue and present to the jury was identical to its copyright claim. ...........5

3.    Synopsys' command-based breach of contract claim is like other software license claims that have been found preempted. ...........................8

4.    Synopsys' command-copying contract claim does not contain any "extra element" to distinguish it from Synopsys' copyright claim. ...........11

B.    Synopsys' claimed lost profits were not foreseeable as a matter of law. ..............13

C.    Unjust enrichment is not an available remedy for Synopsys's DesignWare-related contract claim.........................................................................................17

D.    Even if unjust enrichment is an available remedy, Synopsys failed to prove that Real Intent saved any research-and-development costs by accessing and using DesignWare models.....................................................................................17

E.    Synopsys failed to prove that Real Intent copied any of the disputed elements from Design Vision after April 2013....................................................19

IV.   CONCLUSION......................................................................................................23

DEFENDANT REAL INTENT, INC.'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))
Case No. 5:20-cv-02819-EJD (SvK)

2829109

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Altera Corp v. Clear Logic, Inc.*,
   424 F.3d 1079 ..................................................................................10, 11, 12, 13

*Arconic Corp. v. Novelis, Inc.*,
   2022 WL 17082378 (W.D. Pa. Nov. 18, 2022) ......................................18

*Best Carpet Values, Inc. v. Google, LLC*,
   90 F.4th 962 (9th Cir. 2024) ..................................................................4, 8

*Doe 1 v. GitHub, Inc.*,
   2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ......................................10, 11

*Dupree v. Younger*,
   598 U.S. 729 (2023) .................................................................................2, 4

*Escriba v. Foster Poultry Farms, Inc.*,
   743 F.3d 1236 (9th Cir. 2014) ....................................................................2

*Highware Promotions LLC v. Legend Mktg. LLC*,
   2006 WL 8434705 (C.D. Cal. Apr. 3, 2006), *aff'd* 263 F. App'x 564 (9th Cir. 2008) ........................................................................................................14

*IBM Corp. v. Micro Focus (US), Inc.*,
   676 F. Supp. 3d 263 (S.D.N.Y. 2023)...................................................9, 10

*Lakeside-Scott v. Multnomah Cty.*,
   556 F.3d 797 (9th Cir. 2009) ......................................................................2

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
   629 F.3d 928 (9th Cir. 2010) ....................................................................12

*Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc.*,
   991 F.2d 426 (8th Cir. 1993) ....................................................................12

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   399 F. Supp. 2d 1064 (N.D. Cal. 2005) ...................................................19

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ....................................................................17

*Proofpoint, Inc. v. Vade Secure, Inc.*,
   2023 WL 4475587 (N.D. Cal. July 10, 2023)..........................................19

ii

DEFENDANT REAL INTENT, INC.'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))
Case No. 5:20-cv-02819-EJD (SvK)

2829109

*Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Group, Inc.*,
68 F.4th 792 (2d Cir. 2023) ...............................................................................17, 18

*Trackman, Inc. v. GSP Golf AB*,
2024 WL 4276497 (S.D.N.Y. Sept. 24, 2024)..................................................8, 9

*Univ. Computing Co. v. Lykes-Youngstown Corp.*,
504 F.2d 518 (5th Cir. 1974) ..........................................................................18

*Weaving v. City of Hillsboro*,
763 F.3d 1106 (9th Cir. 2014) ..........................................................................2

*Wolff v. Inst. of Elec. and Elecs. Eng'rs, Inc.*,
768 F. Supp. 66 (S.D.N.Y. 1991) ...................................................................12

**State Cases**

*Ajaxo Inc. v. E\*Trade Fin. Corp.*,
187 Cal. App. 4th 1295 (2010) ......................................................................18

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ......................................................................17

*Lewis Jorge Const. Mgmt., Inc. v. Pomona Unified Sch. Dist.*,
34 Cal. 4th 960 (2004) ...............................................................13, 14, 15, 16

**Federal Statutes**

17 U.S.C. § 102.................................................................................................5

17 U.S.C. § 103.................................................................................................5

17 U.S.C. § 106........................................................................................4, 5, 8

17 U.S.C. § 301(a) ..........................................................................................4

**Rules**

Federal Rule of Civil Procedure 50(b)...................................................2, 4, 21, 23

**Other Authorities**

Restatement (Second) of Contracts § 351, Comment a ......................................16

*Unjust Enrichment*, Black's Law Dictionary (12th ed. 2024) ......................................17

iii

DEFENDANT REAL INTENT, INC.'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))
Case No. 5:20-cv-02819-EJD (SvK)

2829109

## I.    INTRODUCTION[1]

The breach of contract case that Synopsys ultimately elected to try to the jury, as it related to copying of commands from Design Vision, is preempted by the Copyright Act, and therefore judgment on that claim should be entered for Real Intent.

Prior to trial, Real Intent moved for summary judgment on Synopsys' breach of contract claim, arguing preemption. In arguing against preemption, Synopsys represented to the Court that it would try a "competitive harm" theory of breach, not simply a claim that command sets were "copied" from its software tools. The Court denied Real Intent's summary-judgment motion, concluding that Synopsys' "competitive harm" theory implicated rights beyond mere copying and thus was not preempted by the Copyright Act. But Synopsys' "competitive harm" theory did not make it to trial: in its pre-trial filings, Synopsys made the strategic decision to abandon the "competitive harm" theory of breach and, instead, pursue a claim based solely on Real Intent's "copying" of commands from Design Vision after 2013.

Therefore, the ***only*** command-related claim that Synopsys asked the jury to decide at trial was: "What amount of lost profits, if any, has Synopsys proven by a preponderance of the evidence that Synopsys would have earned but for Real Intent's ***copying*** of commands/options and attributes, with syntax, from Design Vision after April 2013." ECF 800 (Verdict Form). That claim is preempted by the Copyright Act. As Synopsys itself represented to the Court at trial, this claim is identical to the copyright claim that the Court resolved in Real Intent's favor at summary judgment. *See* Tr. at 1627:11–15 (the command-copying contract claim involves "all the same conduct" that was "alleged for copyright . . . . the copying of the commands"). Synopsys' tactical decision to proceed solely on a claim for copying has consequences: the claim that Synopsys elected to try is unquestionably preempted by the Copyright Act because it lacks any "extra element" beyond copying that would save it from preemption, and therefore, the verdict should be set aside and judgment entered for Real Intent.

---

[1] Throughout this brief, unless otherwise indicated, emphases were added to quotations, while internal citations, footnotes, brackets, ellipses, and the like were omitted from them.

2829109

Real Intent also respectfully moves for judgment as a matter of law for the following additional reasons:

- Synopsys' claimed lost profits were not foreseeable as a matter of law;
- Unjust enrichment is not an available remedy for Synopsys' DesignWare-related contract claim;
- Even if unjust enrichment was an available remedy, Synopsys failed to prove that Real Intent saved any research and developments costs by accessing and using DesignWare models in breach of the contract.

Further, while the general jury verdict did ***not*** resolve whether Real Intent copied any of the "disputed" commands at issue for trial, Real Intent moves for judgment as a matter of law on that issue in an abundance of caution and to preserve this issue for any appeal, if necessary. For these reasons and as explained below, the Court should grant Real Intent's motion.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 50(b) authorizes the Court to enter judgment as a matter of law on a renewed motion "if the evidence presented, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014). In considering a renewed motion for judgment as a matter of law, though the Court must draw all reasonable inferences in favor of the non-moving party, "a reasonable inference cannot be supported by only threadbare conclusory statements instead of significant probative evidence." *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802 (9th Cir. 2009). "It is error to deny a judgment [as a matter of law] when it is clear that the evidence and its inferences cannot reasonably support a judgment in favor of the opposing party." *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014). Parties may also raise "purely legal issues" in a Rule 50 motion, even though "nothing in the Rule requires [them] to do so." *Dupree v. Younger*, 598 U.S. 729, 737 (2023) (emphasis omitted).

2829109

### III.    ARGUMENT

#### A.    The Copyright Act preempts the only Design Vision breach-of-contract claim Synopsys elected to try based on "copying of commands (with syntax)."

Synopsys brought both copyright and breach of contract claims based on the same underlying factual allegation—that Real Intent copied commands from Synopsys' Design Vision product, the front-end of its copyrighted Design Compiler product. *See* ECF 145 (Second Amended Complaint) at ¶¶ 58–80; ECF 270-2 at 28–29. Indeed, in the operative complaint, Synopsys' breach of contract claim relies on *all* the same factual allegations as its copyright claim and simply tacks on a few boilerplate allegations reciting the basic elements of a breach of contract claim. *See* ECF 145 at ¶¶ 72–80. And Synopsys claimed the exact same "lost-profits" damages for the command-copying breach of contract claim as it did for the copyright claim. *See* ECF 270-2 at 11 (Real Intent Motion for Partial Summary Judgment); ECF 270-8, Ex. 40 at ¶ 13, Fig. 11 (Synopsys' damages expert opining that the claimed "lost profit" damages for the contract claim are the same for the contract claim), ECF 270-8, Ex. 41 at 285:15–21, 286:1–5, 288:19–23 (same).

Before trial, Real Intent moved for summary judgment on the grounds that Synopsys' breach of contract claim was preempted by the Copyright Act. *See* ECF 270-2 at 28–30. Although the Court found that Real Intent's copying of Synopsys commands was a fair use as a matter of law, it denied Real Intent's preemption argument at that time. ECF 513 at 26, 47. In doing so, the Court observed that Synopsys had claimed that Real Intent breached the agreements at issue in three different ways: (1) by copying certain Synopsys Design Vision material into Real Intent's products, (2) by using Design Vision for "competitive purposes," and (3) by accessing and using the unlicensed DesignWare library. ECF 513 at 24–25. The Court held that Synopsys' Design Vision-based contract claim was not preempted because, *at that time*, it alleged that "Real Intent used Design Vision to understand and model the behavior in Real Intent's tools," which implicated "rights outside the scope of the Copyright Act." *Id.* at 25.

For its part, Synopsys' cross-moved for summary judgment on liability for breach of contract. *See* ECF 272-4 at 7–13. In resolving Synopsys' motion, the Court found that Real Intent had breached the contracts at issue by copying commands from DesignVision and by accessing

2829109

and using DesignWare. It denied Synopsys' motion as to the "competitive purpose" theory of breach, finding that there were material factual disputes for trial. ECF 513 at 32.[2]

After the Court's summary judgment ruling, Synopsys made the strategic decision to abandon the "competitive purposes" theory of breach and proceeded at trial on only *two* theories of breach: one based on the copying of command set elements (with syntax) from Design Vision, and the other based on access and use of Synopsys DesignWare files. *See* ECF 628 at 3; *see also* ECF 707 at 1–2 (confirming that, per the parties' joint pretrial conference statement, Synopsys was only presenting a damages case to the jury as to the breach of the agreements by copying commands and attributes, with syntax, from Design Vision). Synopsys proffered separate damages claims for theses breaches and assented to a general verdict form with two separate damages questions: one for lost profits from "Real Intent's copying of commands/options and attributes, with syntax, from Design Vision after April 2013," and another for unjust enrichment for Real Intent's "use and access of DesignWare" files. ECF 800 at 2. For the reasons articulated below, the command-copying claim that Synopsys pursued at trial is preempted by the Copyright Act.[3]

### 1.    Synopsys' command-copying contract claim concerns the same subject matter and involves the same rights as its copyright claim.

When Congress enacted the Copyright Act, it expressly provided that the Copyright Act exclusively governed "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(a). The Ninth Circuit has a "two-part test to determine whether a state law claim is preempted by the [Copyright] Act." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 971 (9th Cir. 2024).

---

[2] At trial, Synopsys witnesses admitted that the entire purpose of the contracts was to allow Real Intent to use Design Vision to understand the commands' behavior to ensure compatibility. *See id.* at 694:13-16 (Synopsys employee Sandra Ma confirming that Synopsys "license[s] Design Vision to our competitors as a way for them to verify that their output works with our tools[.]").

[3] Real Intent maintains its summary-judgment argument that the DesignWare-related claim is also preempted and preserves that argument for appeal. *See Dupree*, 598 U.S. at 731 (legal questions decided on summary judgment are preserved for appeal without filing a Rule 50 motion).

4
DEFENDANT REAL INTENT, INC.'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))
Case No. 5:20-cv-02819-EJD (SvK)

2829109

The first step asks "whether the subject matter of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." ECF 513 at 24. The second step evaluates "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id.*

There is no dispute that the first step of the preemption test is met here "because the subject matter of the breach of contract claim involves Synopsys' copyrighted works," ECF 513 at 25, which are Synopsys' Design Vision/Design Compiler software products. *Id.* (citing Synopsys' summary judgment motion alleging that Real Intent breached the agreement by using Design Vision, the front end of Design Compiler, a copyrighted work); *see also* ECF 145 (Second Amended Complaint) at ¶¶ 24–25 (alleging that Design Compiler software and user documentation are copyrighted), ¶ 35 (alleging that Design Compiler commands were accessible through license to Design Vision). Therefore, the only question that remains for preemption purposes is whether the second step is met for Synopsys' command-copying claim related to Design Vision. As explained below, the answer is yes. The Design Vision-related contract claim that Synopsys presented at trial is nothing more than a copyright claim masquerading as a contract claim, as confirmed by Synopsys' own statements to the jury and the Court.

### 2. The only command-based contract theory that Synopsys elected to pursue and present to the jury was identical to its copyright claim.

At trial, Synopsys pursued damages for only one contract theory related to its Design Vision product: that Real Intent allegedly "copied" certain of Synopsys' command set elements and Synopsys was harmed as a result. *See* ECF 800 at 2 (jury asked on verdict form "[w]hat amount of lost profits, if any, has Synopsys proven by a preponderance of the evidence that [it] would have earned but for Real Intent's ***copying*** of commands/options and attributes, with syntax, from Design Vision after April 2013"); *see also* Tr. at 1695:14–16 (Synopsys closing argument) ("[N]either party disagrees that these contracts were breached. Real Intent ***copied*** commands, options, and attributes and that breached the contract."); *id.* at 1788:1–3 (Final Jury Instruction No. 11); *id.* at 1789:13–17 (Final Jury Instruction No. 12) ("Synopsys claims that it was harmed because Real Intent breached Section 3.2 of the in-Sync Agreements and Section 2.3 of the

1   Synopsys Loan Agreement by ***copying*** commands/options, and attributes, with syntax, from

2   Design Vision . . . .”); *id.* at 1790:20–22 (Final Jury Instruction No. 13, Breach of Contract—

3   Copying) (“Your determination of the harm resulting from Real Intent’s breach should be limited

4   to commands/options, and attributes, with syntax, ***copied*** from Design Vision after April 2013.”);

5   *id.* at 1790:23–1791:2 (Final Jury Instruction No. 14) (“In determining whether Synopsys was

6   harmed by any breach of contract caused by the ***copying*** of commands/options and attributes, with

7   syntax from Synopsys, you may only consider commands/options and attributes, with syntax that

8   were copied from Design Vision after April 10, 2013.”); *id.* at 1792:2–6 (Final Jury Instruction

9   No. 15) (“Real Intent’s use of Design Vision for purposes other than ***copying*** commands/options

10   and attributes, with syntax, is not prohibited by the provisions of the in-Sync Agreements and the

11   Synopsys Loan Agreement at issue and is not a basis[,] standing alone[,] to find harm.”).

12        Synopsys repeatedly told the jury that the breach at issue for trial was all about copying.

13   As Synopsys’ corporate representative (Swami Venkat) put it when describing the parties’ dispute

14   to the jury, this “case” is “about the copying of the Synopsys commands.” Tr. at 498:1–4

15   (interpreting language from section 3.2 of the in-Sync Agreement that prohibited Real Intent from

16   “modify[ing], incorporat[ing] into, or with other software, or creat[ing] [a] derivative work”); *see*

17   *also id.* at 526:16–20 (interpreting similar language from section 2.3 of the Synopsys Loan

18   Agreement as prohibiting Synopsys commands from being copied). Synopsys’ counsel reiterated

19   this theory in closing argument, referring to Real Intent’s “copying” or having “copied” commands

20   ***forty-eight*** different times. *See* Tr. at 1695:3–1724:10, 1762:22–1773:20.

21        Synopsys made similar representations to the Court outside the presence of the jury. For

22   example, Synopsys’ counsel stated that the command-related contract theory Synopsys presented

23   at trial involved “all the same conduct” as was “alleged for copyright . . . . the copying of the

24   commands.”  Tr. at 1627:11–15 (arguing to the Court that Synopsys should be able to cross

25   examine Real Intent’s damages expert using statements from the copyright section of her report).

26   Synopsys confirmed this point, in no uncertain terms, representing to the Court that, “[t]he

27   copyright claim was that [Real Intent] copied certain commands and the breach of contract [is] that

28   [Real Intent] copied certain commands.” *Id.* at 1627:25–1628:3.

6

DEFENDANT REAL INTENT, INC.’S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))
Case No. 5:20-cv-02819-EJD (SvK)

2829109

Synopsys' technical expert, Dr. Stephen Edwards, further confirmed this at trial. He testified that he was tasked with analyzing "which commands, options, and attributes [] Real Intent *cop[ied]* from Design Vision." *See* Tr. at 757:24–25. And he did this through the preparation of three trial exhibits, TX 339, 341, and 344, which had originally been exhibits to his opening expert report on copyright infringement. *See* Tr. 769:24–770:1; TX 339 at 1 (Exhibit F-1 to Opening Report); TX 341 at 1 (Exhibit F-3 to Opening Report); and TX 344 at 1 (Exhibit H to Opening Report). Indeed, Dr. Edwards's copyright infringement analysis relied on these exact same exhibits as his contract analysis. *See* ECF 318-5 at ¶¶ 150–53 (Exhibit F prepared to show that the amount of copying by Real Intent purportedly was "substantial" and rose to the level of copyright infringement); ¶ 155 (Exhibits F and H used to show purported "substantial similarity" between copyrighted and accused works for purposes of copyright infringement). And in his expert report, Dr. Edwards made clear that his opinion with respect to command copying overlapped completely with his opinion with respect to copyright infringement. *See id.* at ¶ 194. In fact, his opinion on Synopsys' command-copying contract claim is limited to just two sentences. *See id.* ("As set out above, it is my opinion that Real Intent copied a significant amount from the command sets of Synopsys' products, including Design Compiler. Real Intent had access to the command set of Design Compiler through its front-end, called Design Vision, one of the licensed products. (*See* Section III.B above).").

Synopsys' damages expert, Brian Napper, similarly offered an opinion for a breach due to "*copying* and incorporating certain Design Compiler command sets." Tr. at 1060:23–24. Mr. Napper opined that Synopsys was entitled to lost profits from 2017 through July 2024 in the amount of $41 million. *Id.* at 1061:20–25. Mr. Napper's lost profits analysis was exactly the same for Synopsys' command-copying theory of breach as it was for its copyright infringement claim. *See* ECF 606-3 at ¶¶ 135–36 (explaining that Synopsys' damages as a result of copying Design Compiler commands "would take the form of lost sales and profits to at least the same 6 customers identified [in the copyright infringement section of his report]" in an identical amount).

Because the command-related contract claim that Synopsys elected to pursue at trial is the same as Synopsys' copyright claim, it is preempted by the Copyright Act, and the Court should

2829109

grant Real Intent judgment as a matter of law as to that portion of the jury's verdict.  In short, Synopsys proceeded to trial on a theory that Real Intent had harmed Synopsys solely by copying commands from Design Vision in breach of the parties' contracts. That purported right—the right to prohibit Real Intent from copying commands—clearly is "equivalent to the rights contained in 17 U.S.C. § 106" and is therefore preempted. *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 971 (9th Cir. 2024); *see also* 17 U.S.C. § 106 (subject to certain statutory exceptions, the owner of a copyright has the "exclusive rights to do and to authorize . . . reproduc[tion of] the copyrighted work in copies[,]" "prepar[ation of] derivative works based upon the copyrighted work[,]" and "distribut[ion of] copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending").

### 3.    Synopsys' command-based breach of contract claim is like other software license claims that have been found preempted.

Other courts that have confronted similar contract claims involving allegations of illicit reproduction or copying of computer software have held that those claims are preempted. For example, *Trackman, Inc. v. GSP Golf AB* is directly on point. 2024 WL 4276497 (S.D.N.Y. Sept. 24, 2024). There, the plaintiff sued the defendant for "cop[ying] key components of plaintiffs' copyrighted software and, without permission, incorporat[ing] them into their own product." *Id.* at *1. Plaintiff also alleged that defendant breached a software licensing agreement by "studying and analyzing [plaintiff's] software as part of its efforts to develop its own competing golf simulator software." *Id.* at *10. Plaintiff asserted several causes of action against defendant, including copyright infringement and breach of contract. *Id.* at *1. Plaintiff's breach of contract claim was based on a provision in the parties' licensing agreement, which prohibited defendant from "reverse engineer[ing], or otherwise attempt[ing] to derive the source code, underlying ideas, or algorithms of the Software." *Id.* at *10 (emphasis in original).

Defendant moved to dismiss plaintiff's contract claim on the grounds that it was expressly and impliedly preempted by the Copyright Act. *Id.* at 4. In analyzing defendant's express preemption argument, the district court applied the Second Circuit's two-part test, which is identical to the Ninth Circuit's two-part test as articulated in *Best Carpet Values, Inc.*, 90 F.4th at

2829109

971. The district court found that the first part of the test was satisfied because the underlying work at issue, a software product, "falls squarely within the subject matter of copyright." *Trackman*, 2024 WL 4276497 at *11. As to the second prong of the test and whether any "extra element" was present to make the contract claim qualitatively different than the copyright claim, the court noted that its analysis required a "holistic evaluation" that involved consideration of "whether a claim is qualitatively different," such as "what the plaintiff seeks to protect, the theories in which the matter is thought to be protected[,] and the rights sought to be enforced." *Id.* at *11. The Court explained that, to escape preemption, plaintiff's contract claim must include a "sufficiently significant extra element that qualitatively distinguishes [it] from claims for copyright infringement." *Id.* The "fundamental question" is "whether the rights that plaintiff seeks to protect through its breach of contract claim are coextensive with the exclusive rights protected by the Copyright Act." *Id.* at *13.

The *Trackman* court closely examined the breach of contract allegations in plaintiff's complaint and found that plaintiff's contract claim was "effectively the same as alleging that defendants reproduced, prepared a derivative work based upon, and distributed copies of plaintiff's software in violation of the Copyright Act." *Id.* at *13. Further, the court noted that "the fact that plaintiff's contract allegations are almost substantively identical to those underlying plaintiff's copyright infringement claims [] demonstrates that the rights plaintiff seeks to protect in its contract claim are indeed coextensive with those already safeguarded by the Copyright Act." *Id.* Based on this analysis, the *Trackman* court held that plaintiff's breach-of-contract claim was preempted. *Id.* at *14.

Similarly, plaintiff's contract claim in *IBM Corp. v. Micro Focus (US), Inc.*, 676 F. Supp. 3d 263, 278 (S.D.N.Y. 2023), was preempted because the "gravamen of each contract provision [plaintiff] alleges [defendant] breached was to prohibit [defendant] from infringing [plaintiff's] exclusive rights to copy and distribute its software." *Id.* at 278 (noting that the contract prohibited defendant from using or reverse compiling, assembling, or engineering any of the licensed material). Because plaintiff's contract claim was "simply a restatement" of its copyright claims for unlawful copying and distribution, its contract claim was not "qualitatively different" from a

9

---

DEFENDANT REAL INTENT, INC.'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))
Case No. 5:20-cv-02819-EJD (SvK)

2829109

copyright infringement claim and was thus preempted. *Id.*

Just as in *Trackman* and *IBM*, Synopsys' contract claim based on the alleged copying of commands from Synopsys' Design Vision software product "is nothing more than a thinly veiled attempt to cloak what is, at bottom, a claim for copyright infringement." *Id.* at *13. The contracts at issue provide that Real Intent shall not "modify, incorporate into or with other software, or create a derivative work of any part of the Synopsys Licensed Products." TX79, TX80, TX81, TX83 at § 3.2 (in-Sync Agreements); TX82 at § 2.3 (Synopsys Loan Agreement). Synopsys asserts that Real Intent breached those provisions by copying commands from Design Vision into Real Intent's software tools and that Synopsys was harmed as a result. At trial, Synopsys' witnesses confirmed that the Design Vision contract claim Synopsys elected to pursue was only "about the copying of the Synopsys commands." Tr. at 498:3–4; *see also id.* at 526:16–20; 757:23–25. And, as noted above, Synopsys' counsel confirmed that the contract claim involved "all the same conduct" as was "alleged for copyright," *i.e.*, "the copying of the commands," Tr. at 1627:11–15. In fact, per Synopsys, the two claims are exactly the same. *Id.* at 1627: 25–1628: 3 ("The copyright claim was that [Real Intent] copied certain commands and the breach of contract [is] that [Real Intent] copied certain commands."). In short, there is no qualitative difference between Synopsys' contract and copyright claims.

Other courts in this district have reached the same conclusion as the *Trackman* and *IBM* courts when presented with similar facts. For example, in *Doe 1 v. GitHub, Inc.*, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024), the court dismissed plaintiffs' state law tort claims as preempted by the Copyright Act. *Id.* at *5–8. Previously, the court had dismissed on preemption grounds the plaintiffs' unjust enrichment claim, "which alleged that Defendants unlawfully reproduced Plaintiffs' code [] and prepared derivative works." *Id.* at *7. Plaintiffs then filed an amended complaint, modifying their unjust enrichment claim to assert that defendants used plaintiffs' licensed materials to "train [defendants' models] without following the licenses," attempting to analogize their claim to the claim that was not preempted in *Altera Corp v. Clear Logic, Inc.*, 424 F.3d 1079. *Doe 1*, 2024 WL 235217, at *7. As discussed further in section III.A.4 below, the *Doe 1* court distinguished the amended unjust enrichment claim from the claim in *Altera* because "the

*Altera* dispute concerned the 'unauthorized **use** of the software's end-product," but plaintiffs' "claims principally concerned the unauthorized **reproduction** of their code to prepare derivative works". *Id.* at *7 (emphasis added). The court went on to analyze plaintiff's other tort claims, finding them all similarly directed to the "essential allegation" of unlawful copying, and therefore preempted. *See id.* at *7–8. So too is Synopsys' command-based contract claim directed solely to illicit copying—allegations that are coextensive with Synopsys' copyright allegations.

Based on Real Intent's review of the Court's summary judgment order, the reason the Court reached a different result when analyzing Real Intent's preemption argument at summary judgment was because, ***at that time***, Synopsys was asserting two command-based theories of breach: the illicit copying theory, and the "competitive purposes" theory. *See* ECF 513 at 24–25 (concluding that Synopsys' "competitive purposes" claim for breach "implicate[d] rights outside of the scope of the Copyright Act). And while the Court ruled that there was no dispute of material fact as to whether Real Intent breached the contracts by copying commands, it found that there was a dispute of material fact over whether Real Intent breached the contracts by using Design Vision for a "competitive purpose." *Id.* at 32. Rather than try to prove that breach at trial, Synopsys abandoned the "competitive purpose" claim and proceeded to a damages-only trial that only addressed the illicit copying claim. *See* ECF 707 (Further Order Regarding Command Dispute) at 2. Thus, the contract claim that Synopsys ultimately at trial is materially different than the contract claim it relied on to evade summary judgment on preemption.

### 4. Synopsys' command-copying contract claim does not contain any "extra element" to distinguish it from Synopsys' copyright claim.

As Synopsys admitted repeatedly during trial, its command-copying contract claim and its copyright claim are one and the same. *See* Tr. at 1627:25–1628:3, 1627:11–15. The command-copying contract claim therefore involves no "extra elements" that could protect it from preemption. *See Altera Corp v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (stating that a state law claim is not preempted by the Copyright Act if it includes an "extra element" that "makes the right asserted qualitatively different from those protected under the Copyright Act").

To show that a contract claim "possesses the extra element necessary to remove it from

2829109

the ambit of the Copyright Act's express preemption provision," ECF 513 at 24 (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 761 (9th Cir. 2015)), the breach allegations **must** involve something more than just "reproduction" of the copyrighted information, such as unauthorized use. *See Altera*, 424 F.3d at 1089 (holding that "[a] state law tort claim concerning the unauthorized use of the software's end-product is not within the rights protected by the federal Copyright Act"); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 957 (9th Cir. 2010) (holding no preemption of tortious interference claim where license agreement prohibited users from "using" robots or bots). A breach-of-contract claim premised only on "copying" from a copyrightable work, however, falls within the Copyright Act's preemption provisions. *See Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc.*, 991 F.2d 426, 432-33 (8th Cir. 1993); *Wolff v. Inst. of Elec. and Elecs. Eng'rs, Inc.*, 768 F. Supp. 66, 69 (S.D.N.Y. 1991) (claim that defendant breached its contract with plaintiffs by infringing plaintiffs' copyright was preempted).

    With the benefit of Synopsys' trial presentation, it is clear that the only right implicated by Synopsys' command-based breach-of-contract claim is the "reproduction of the [Design Vision commands]." *Altera*, 424 F.3d at 1089. Synopsys did not argue to the jury that Real Intent's "use" of Design Vision commands breached any contracts, nor could it, as the jury was instructed that the claim at issue was only for "copying" commands. *See* ECF 800 at 2 (verdict form asking jury to calculate amount of lost profits due as a result of "Real Intent's copying"); *see also* Tr. at 1788:1–18 (final instructions read to the jury describing what can constitute a breach of the parties' contracts); *id.* at 1792:2–6 (Final Jury Instruction No. 15) ("Real Intent's use of Design Vision for purposes **other than copying** commands/options and attributes, with syntax, is **not** prohibited by the provisions of the in-Sync Agreements and the Synopsys Loan Agreement at issue and is **not** a basis[,] standing alone[,] to find harm."). In this way, Synopsys' breach of contract based on Design Vision copying is readily distinguishable from the tort claim in *Altera* that the Ninth Circuit concluded was not preempted by the Copyright Act. *Altera* analyzed state law intentional interference claims concerning a license agreement prohibiting customers from using plaintiff's information in a certain manner. *Id.* In so doing, the Ninth Circuit concluded that defendant caused plaintiff's customers to *use* plaintiff's software in a way that violated its

12

DEFENDANT REAL INTENT, INC.'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))
Case No. 5:20-cv-02819-EJD (SvK)

2829109

software licensing agreement and that this **use** was not "within the rights protected by the federal Copyright Act." *Id.* at 1089–90.

Contrary to the plaintiff in *Altera*, Synopsys did not argue at trial that Real Intent's access or use of the Design Vision product was unauthorized under the contracts. *See* Tr. at 327:12–15 (describing the in-Sync Program as "allow[ing] other EDA companies to get access to some of Synopsys's products so that they can make sure that their products work together if customers need them to"); *id.* at 328:1–4 ("Synopsys let Real Intent have access to Design Compiler," specifically "the user interface . . . known as Design Vision."); *id.* at 694:13-16 (describing the in-Sync Program as "licens[ing] Design Vision to our competitors as a way for them to verify that their output works with our tools[.]"). In fact, the jury instructions made clear that "Real Intent's *use of Design Vision for purposes other than copying . . . is not prohibited*." Tr. at 1792:2–6.

In short, Synopsys' trial presentation—and the final jury instructions—made clear that the only way Real Intent was alleged to have breached the contracts with respect to Design Vision was by breaching its promise not to "take any part of Design Vision and put it into Real Intent's products." *Id.* at 329:11–13; *see also id.* at 330:7–8 ("they were able to copy the Design Compiler commands and attributes by copying Design Vision); *id.* at 330:24–25 ("[T]here is no question that Real Intent breached this contract. The only question is how many things it took, not whether it did."); *id.* at 484:14–16 (Real Intent's "copying from [] Design Vision" is "the basis of [Synopsys'] case"); 1792:2–6 (Final Jury Instruction No. 15). That is a claim for copying. As such, Synopsys's command-based breach-of-contract claim is preempted by the Copyright Act.

## B.    Synopsys' claimed lost profits were not foreseeable as a matter of law.

Under well-settled California law, lost profits are special (rather than general) damages. *Lewis Jorge Const. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 975 (2004) ("Lost profits, if recoverable, are more commonly special rather than general damages[.]"). "Special damages for breach of contract are limited to losses that were either actually foreseen . . . or were 'reasonably foreseeable' when the contract was formed." *Id.* at 970. Here, Synopsys failed to offer sufficient evidence to prove that its lost profits claim—based on purported lost sales of SpyGlass and VC SpyGlass—was foreseeable at the time of contracting.

1    **First**, the vast disparity between the contract price ███████████ and the jury's

2    verdict ($248,776) confirms that Synopsys' purported losses were unforeseeable as a matter of

3    law. (Indeed, Synopsys' damages claim at trial was for over $40 million in lost profits, even more

4    disproportionate to the cost of the license). The 2014 in-Sync Agreement, for instance, charged

5    Real Intent ████████████████████████████████████████

6    including Design Vision. TX79 at 18; *see also* TX80 (2013 in-Sync Agreement) at 18 (charging

7    Real Intent ████████████████████████████. Real Intent could not have reasonably

8    foreseen that an agreement to pay this limited amount would subject it to a "risk of liability for

9    unusual losses" in the range of hundreds of thousands. *Lewis*, 34 Cal.4th at 970.

10       The trial court's decision in *Highware Promotions* is instructive. *See Highware*

11   *Promotions LLC v. Legend Mktg. LLC*, 2006 WL 8434705 (C.D. Cal. Apr. 3, 2006), *aff'd* 263 F.

12   App'x 564 (9th Cir. 2008). There, the plaintiff contracted with Sony to provide customized hats

13   and subcontracted with the defendant to manufacture the hats. The plaintiff paid the defendant

14   about $12,000 under the subcontract, but the defendant failed to timely deliver the hats. Sony then

15   terminated its business relations with the plaintiff, and the plaintiff sued the defendant for breach

16   of contract and millions of dollars for loss of goodwill as consequential damages. At summary

17   judgment, the trial court found that the plaintiff "failed to present any evidence that . . .

18   [defendant] had reason to foresee such far-reaching consequences from its alleged breach." *Id.* at

19   *3. "[N]one of the information [p]laintiff did provide was sufficient to allow [defendant] to

20   foresee that a breach of a contract for $11,900 could result in the loss of a multi-million dollar,

21   long-term relationship." *Id.* So too here. There is no evidence that Synopsys ever told Real Intent

22   that a breach of the in-Sync Agreements—each of which had a contract price of ███████

23   █████—could result in hundreds of thousands in lost profits for sales of SpyGlass and VC

24   SpyGlass to six different customers. *See* Tr. at 1404:6–9 (Graham Bell) (Q: "At any point in any

25   of the processes of renewing the in-Sync Agreement, were you made aware of any problems or

26   issues with Real Intent's continued participation?" A: "No."). Indeed, no Synopsys witness had

27   ***any*** percipient knowledge about negotiations with Real Intent over the in-Sync Agreements.

28       **Second**, it is undisputed that Synopsys did ***not own*** any SpyGlass products when the first

14
DEFENDANT REAL INTENT, INC.'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))
Case No. 5:20-cv-02819-EJD (SvK)

2829109

three in-Sync Agreements were signed in April 2013, April 2014, and March 2015. *See* ECF 628 (Joint Pre-Trial Conference Statement) at 14 (Undisputed Fact: "On August 3, 2015, Synopsys, Inc. completed its acquisition of Atrenta."). And ***all*** the contracts in dispute were signed before Synopsys released VC SpyGlass in late 2017. *See id.* (Undisputed Fact: "On December 4, 2017, Synopsys, Inc. first published VC SpyGlass."); Tr. at 984:22–24 (Namit Gupta testifying that VC SpyGlass was "roll[ed] out" to customers in "December of 2017"). Accordingly, Real Intent could not have actually or reasonably foreseen that copying a limited set of commands from Design Vision would result in the "unusual losses" that Synopsys claimed at trial; namely, purported lost profits for a product that Synopsys did not even own at the time of contracting. *Lewis*, 34 Cal.4th at 970. Indeed, there is no evidence in the trial record that Synopsys "told" Real Intent "at the time the contract [was] made, of any special harm likely to result from a breach." *Id.*

   ***Third***, the plain terms of the contracts confirm that neither party foresaw or had reason to foresee that copying a limited set of commands from Design Vision could cause competitive harm to the SpyGlass or VC SpyGlass products. None of the contracts mentions SpyGlass or VC SpyGlass at all. TX79–TX83; TX82. And importantly, the ***only*** possible "competitive harm" the contracts contemplate is harm to the "Licensed Products" that Real Intent was given access to under the contracts, which do ***not*** include SpyGlass or VC SpyGlass. *E.g.*, TX79 at 18 (Exhibit A). Specifically, under Section 9.7 of all the in-Sync Agreements, Real Intent was required to

███████████████████████████████████████████████████████████████████

███████████████████████████████ *E.g.*, TX79 at 12. The 2017 SLA includes a similar provision as well. *See* TX82 at Section 2.3(vi). The contracts, therefore, only contemplated competitive harm to the Synopsys Licensed Products (here, Design Vision)—not competitive harm to "***any*** Synopsys product." Other trial evidence confirms that the only competition the contracts were concerned about was competition with Licensed Products. *See* TX201 at 3 (Synopsys denied Real Intent access to PrimeTime under the in-Sync program due to competitive concerns of overlapping functionality between Meridian Constraints and PrimeTime). Synopsys' claimed losses for a product it acquired years after the fact and never mentioned in the contracts were not foreseeable as a matter of law.

15
DEFENDANT REAL INTENT, INC.'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))
Case No. 5:20-cv-02819-EJD (SvK)

2829109

*Fourth*, Synopsys' claim for lost-profits damages was unforeseeable given its extensive promotion of open-source Synopsys Design Constraints or "SDC commands and options," which form the basis of several of the "disputed" commands and are virtually indistinguishable from the asserted command-option pairings. As Synopsys witness Sandra Ma confirmed at trial, these SDC commands and options are "free to use" by other companies. Tr. at 738:13–15. Examples of SDC commands include get_cells, get_clocks, get_lib_cells, get_lib_pins, get_libs, get_nets, get_pins, and get_ports. TX104 (SDC Application Note) at 19–20. These *same* "get" commands are part of the "proprietary" command-option pairs that form the basis of Synopsys' claim for lost profits. For instance, the create_generated_clock command with the *-invert* option is deemed open-source according to Synopsys, but the ███████████ command with the █████ option supposedly is not. Tr. at 741:23–742:3. Moreover, the trial evidence established that Synopsys' own engineers do not even know what commands are open-source "SDC." *Id.* at 1661:10–1662:7. Given that Real Intent was a participant of the open-source SDC program since 2008, *id.* at 1484:6–15, it would not have been foreseeable to Real Intent as a matter of law that Synopsys could claim hundreds of thousands in lost profits based on alleged copying of command-option pairings that substantially overlap with command-option pairings that it gives away for free.

*Finally*, Synopsys cannot argue that its claimed lost profits were foreseeable based solely on the Court's breach finding. "Special damages will not be presumed from [a] mere breach[.]" *Lewis*, 34 Cal.4th at 969. Nor can Synopsys rescue its lost profits claim by insisting that Real Intent should have, or could have, foreseen some general type of competitive harm from copying. When it comes to special damages, the "mere circumstance that some loss was foreseeable, or even that some loss of the same general kind was foreseeable, will not suffice if the loss that *actually occurred* was not foreseeable." Restatement (Second) of Contracts § 351, cmt a. That is the case here. The actual loss Synopsys claimed—based on a product it released after every contract was signed—was not, and could not have been, foreseeable to Real Intent at the time of contracting. Judgment as a matter of law on Synopsys' damages claim is therefore appropriate.

2829109

1

**C.    Unjust enrichment is not an available remedy for Synopsys's DesignWare-related contract claim.**

2

3    Real Intent acknowledges that the Court has previously ruled that Synopsys could pursue

4    a theory of unjust enrichment based on its breach-of-contract claim. *See* ECF 687 (Pretrial Order)

5    at 17. That said, Real Intent maintains that, under California law, Synopsys is not entitled to

6    unjust enrichment (based on saved research and development costs) for breach of the in-Sync

7    Agreements and Synopsys Loan Agreement. *See Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96

8    F.3d 1151, 1167 (9th Cir. 1996) ("unjust enrichment is an action in quasi-contract, which does not

9    lie when an enforceable, binding agreement exists defining the rights of the parties"); *Durell v.*

10    *Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("An unjust enrichment theory is

11    inapplicable because [plaintiff] alleges the parties entered into express contracts."); *see also*

12    *Unjust Enrichment*, Black's Law Dictionary (12th ed. 2024) ("Instances of unjust enrichment

13    typically arise . . . when a benefit is conferred deliberately but without a contract, and the court

14    concludes that the absence of a contract is excusable . . . ."). Real Intent also maintains that the

15    amount of unjust enrichment (if any) is an issue to be decided by the Court, not by a jury, because

16    unjust enrichment is an equitable remedy. *See* ECF 741.

17    **D.    Even if unjust enrichment is an available remedy, Synopsys failed to prove that Real Intent saved any research-and-development costs by accessing and using DesignWare models.**

18

19    At trial, Synopsys failed to "present evidence to support a finding that Real Intent avoided

20    the large amount of research and development costs" that Real Intent purportedly saved 'as a

21    result of' Real Intent's "access of Synopsys' DesignWare Library." ECF 687 (Pretrial Order) at

22    17. Synopsys provided no trial evidence to support its assertion that Real Intent was unjustly

23    enriched ***as a result of*** the limited breach related to the DesignWare Library.

24    "Unjust enrichment is a basis of civil liability . . . that sometimes also goes by the name

25    *restitution*." *Unjust enrichment*, Black's Law Dictionary (12th ed. 2024).  For its part,

26    "[r]estitution may consist of a return or restoration of what the defendant has gained in a

27    transaction, which may be a return of a specific thing or . . . a money substitute for that thing."

28    *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Group, Inc.*, 68 F.4th 792, 810 (2d Cir.

17

DEFENDANT REAL INTENT, INC.'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))
Case No. 5:20-cv-02819-EJD (SvK)

2829109

2023). Restitution can sometimes require more than the return of plaintiff's property, such as when defendant profits from its use or when defendant achieves cost savings through the use of plaintiff's property in defendant's business. *Id.* But an award of profits from sales made possible by the appropriation or costs avoided due to the appropriation, instead of just the return of plaintiff's property, "risks producing an unjust windfall" if a proper appraisal of "the nature and extent of the appropriation" and "the relative adequacy to the plaintiff of other remedies" is not done. *Id.*; *see also Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1311–13 (2010) ("We conclude that where a defendant has not realized a profit or other calculable benefit as a result of his or her misappropriation of a trade secret, unjust enrichment is not provable. . . ."); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536 (5th Cir. 1974) (measure of damages for trade secret misappropriation in the form of value to the defendant only appropriate "where the secret has not been destroyed and where the plaintiff is unable to prove specific injury"); *Arconic Corp. v. Novelis, Inc.*, 2022 WL 17082378, at *9 (W.D. Pa. Nov. 18, 2022) (restitution would be "unfair windfall" where plaintiff "suffered no actual damages" and "is still capable of manufacturing and profiting from the product").

Therefore, where a plaintiff has "retained the profitable use of its [intellectual property]," and where a defendant has been prevented from further using the plaintiff's intellectual property and the defendant's use did not diminish the continued value of the intellectual property to the plaintiff, the award of avoided costs is ***not*** appropriate. *Syntel*, 68 F.4th at 811. The award of avoided costs is typically only appropriate in situations where a plaintiff has lost value in the misappropriated intellectual property. *See id.* at 812.

Here, it is undisputed that Synopsys "retained the profitable use of its [intellectual property]," and there was no evidence at trial that Real Intent unjustly profited from accessing and using DesignWare models. *Id*. To the contrary, the trial record reflects that Real Intent did not develop or sell a competing DesignWare product. *See* Tr. at 660:24–25 (testimony of Henry Verheyen by video deposition) (testifying at line 203:4–9 and 203:11 that Real Intent never attempted to build a product that competed with DesignWare); *Syntel*, 68 F.4th at 812. And the fact that Synopsys did not seek lost profits damages as a result of Real Intent's access or use of

18

2829109

DesignWare supports the conclusion that Real Intent was not unjustly enriched. Further, there is no evidence that the research and development costs that Synopsys claims it is entitled to were saved by Real Intent "as a result of" its access to DesignWare since there is no evidence that Real Intent intended to develop a competing DesignWare product. *See Proofpoint, Inc. v. Vade Secure, Inc.*, 2023 WL 4475587, at *4 (N.D. Cal. July 10, 2023) (granting renewed JMOL after concluding that plaintiffs pointed to no evidence to support a finding that defendants incurred costs "as a result of" the breach); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1076–77 (N.D. Cal. 2005) (expert's testimony as to the "importance" of the misappropriated technology did not provide "a reasonable basis for the jury to apportion damages"). Accordingly, judgment as a matter of law in Real Intent's favor on the DesignWare-related damages claim is appropriate.

### E.   Synopsys failed to prove that Real Intent copied any of the disputed elements from Design Vision after April 2013.[4]

The Court's finding of breach at summary judgment was limited to six commands referenced in the summary judgment order. *See* ECF 687 (Pretrial Order) at 14. Those six commands were referred to at trial as the "undisputed" commands. ECF 690-2 (Joint List). Synopsys also claimed at trial that Real Intent copied 52 additional "disputed" commands in breach of the contracts. *See id.* The Court, however, confirmed in a pretrial order that whether those disputed commands were within the scope of the breach (*i.e.*, copied from Design Vision after April 2013) was an "open factual issue." ECF 707 (Further Order re Command Dispute) at 3. Despite the Court's suggestion that the jury should be asked to resolve that open factual issue by making findings as to which (if any) disputed commands were part of the breach, *see* H'rg Tr. (Oct. 11, 2024) at 6:17-18, Synopsys never sought—and the jury never made—any such finding.

---

[4] Real Intent understands that the Court found at summary judgment that it breached certain provisions of the in-Sync Agreements and Synopsys Loan Agreement and copied certain command-set elements from Design Vision after April 2013, *see* ECF 513, but respectfully disagrees with those findings and reserves the right to challenge them on appeal.

19

DEFENDANT REAL INTENT, INC.'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))
Case No. 5:20-cv-02819-EJD (SvK)

2829109

*See* ECF 780 (Synopsys' Proposed Form of Verdict); ECF 758 (Real Intent's Proposed Form of Verdict); ECF 800 (Verdict Form).

In fact, Synopsys argued repeatedly to the jury that breach was already decided and that the jury need ***not*** find any additional disputed commands to have been copied in order to award damages to Synopsys in the full amount that it sought. Tr. at 1702:12–14 (arguing that the jury didn't "even need to resolve the disputed commands, whether they came from Design Vision" because Real Intent was found to have copied the six undisputed commands); Tr. 1112:19–25 (opining that Synopsys lost $41 million in profits even if Real Intent copied only the undisputed commands); *id.* at 1112:8–16 (opining that Synopsys lost $41 million in profits even if Real Intent copied only some of the disputed commands).

Because Synopsys did not ask the jury to resolve the "open factual issue" regarding the scope of the breach, let alone make any finding as to any of the "disputed" commands, there is no finding of breach for those commands. Should the Court disagree, however, the trial record does not support the conclusion that Real Intent copied any of the disputed elements from Design Vision after April 2013.

***First***, Synopsys failed to prove that Real Intent copied the disputed commands, options, and attributes, with syntax, from Design Vision as opposed to another source. Synopsys' expert, Dr. Edwards, claims to have conducted a "filtering" analysis to determine the overlap between the commands in Real Intent's products and in Design Vision. *See* Tr. at 780:2–786:4. Per Dr. Edwards, as part of this analysis, he only kept the command-set elements that overlapped between Real Intent's products and Design Vision and only those elements that first appeared in Real Intent's products after April 2013, which is when Real Intent first gained access to Design Vision. *See id.* But under cross-examination, Dr. Edwards admitted that he did not consider a Real Intent PureTime product manual from 2009 (TX2198 and TX2199), which establishes that many of the disputed commands and options were already present in Real Intent's products well before 2013, and therefore could not have been copied from Design Vision. *See* Tr. at 855:14–858:2, 863:25–869:7. Testimony from Real Intent Chief Technology Officer, Mr. Rajiv Kumar, confirmed that the presence of these command set elements in PureTime meant that they were likewise already

20

DEFENDANT REAL INTENT, INC.'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))
Case No. 5:20-cv-02819-EJD (SvK)

2829109

in the Meridian and Ascent products in 2009, and that those commands were available for use in those products. *See* Tr. at 1464:15–1466:7.

Other evidence also establishes that the disputed commands were either in Real Intent's products before April 2013 or did not come from Design Vision, including (1) Real Intent engineer Vikas Sachdeva's testimony that he added several disputed commands on his own based on his memory and experience, and without consulting any Design Vision resources, *see, e.g.*, Tr. at 1371:17–1374:23; (2) former Real Intent engineer Sarath Kirihennedige's Excel chart demonstrating that Real Intent had knowledge of many of the disputed commands and options in 2012, *see* TX2201; and (3) two Meridian manuals from before April 2013 (TX1184 and TX1224) (Meridian 4.0 and 4.1) demonstrating that many of the disputed commands and options were already in Real Intent's products before it signed the first contract and gained access to Design Vision. *See also* Tr. at 1186:20–1189:12, 1191:16–1193:10 (testimony of Ramesh Krishnan regarding presence of certain disputed command-option pairing in the Meridian 4.0 and 4.1 reference manuals).

In addition to many of the disputed command-set elements having appeared in Real Intent's products prior to April 2013, Dr. Edwards also confirmed that nearly all of the same disputed commands and options were in a different Synopsys product called "PrimeTime." Tr. at 882:7–888:8. Both parties agree that any copying by Real Intent from PrimeTime is ***not*** prohibited by the contracts, *see* Tr. at 119:24–120:2; 1791:20–1792:1, and, the Court ruled at summary judgment that any such disputed copying by Real Intent from PrimeTime is a fair use as a matter of law. Synopsys failed to show that Real Intent copied any of the disputed commands specifically from Design Vision and not from some other product (such as PrimeTime) where those same commands also appeared. *See* Tr. at 882:1–888:8 (Edwards) (conceding that, with only a few exceptions, he found matches for almost every single disputed command-option pairing in PrimeTime).

***Second***, Synopsys' suggestion at trial that Real Intent copied from Design Vision based on isolated references in Real Intent documents stating that Design Vision was the "gold standard" is insufficient under Rule 50. *See* Tr. 809:4–7, 809:15–18. Real Intent engineers

2829109

explained that references to "gold standard" in Real Intent documents referred to using Design Vision to check behavior, a permissible purpose under the contract, and did not refer to copying any commands, options, or attributes, with syntax. This testimony was unrebutted. For instance, Real Intent engineer Vikas Sachdeva testified that he used Design Vision to modify the **output** of a command. Tr. at 1360:24–1361:4. He further testified that commands, options, and attributes are **not** outputs from a tool because they are **inputs** to a tool. *Id.* at 1362:25–1363:3. Mr. Sachdeva testified that modifying the behavior, or output, of a tool does not require adding a command. In fact, to modify a command's output, the command must already be present in the product and therefore could not have been copied from Design Vision. *Id.* at 1368:6–15. The record evidence, including JIRA tickets, emails, and deposition testimony, likewise confirmed that "gold standard" referred to behavior (*e.g.*, the outputs of Design Vision)—not to copying any command set elements. *See, e.g.*, Tr. at 1364:12–22.

In short, the testimony adduced at trial demonstrates—at most—that Real Intent engineers used Design Vision to verify the outputs of Real Intent's software products. That does not prove command copying, nor does it even make copying more likely to have occurred, as verifying the output of a command means that the command at issue is **already present** in Real Intent's tools. As the contracts themselves confirm, verifying the output of products to ensure the output is consistent with Design Vision is permitted by the contracts at issue. *See* TX79, TX80, TX81, TX83 at p. 1, Exhibit D ███████████████████████████████████████████████ ███████████████████████████████; TX82 at p. 7 █████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ Synopsys employee Sandra Ma also confirmed at trial that this use of Design Vision is authorized. *See id.* at 694:13-16 ("We license Design Vision to our competitors as a way for them to verify that their output works with our tools[.]").

**Third**, Synopsys adduced **no** evidence of Real Intent copying attributes with objects or any data types. And while Synopsys showed the jury a list of command-option pairings and another list of attributes (with objects and types), it never adduced any evidence that Real Intent copied "syntax" for any of them, nor did Synopsys adduce evidence that any of the disputed

22

2829109

1  attributes were copied from Design Vision into Real Intent's products.

2        In sum, Synopsys failed to prove that Real Intent copied any commands/options, or

3  attributes, with syntax, from the disputed list of elements, and the jury made no finding of breach

4  as to any of those commands in any event.

5  **IV.     CONCLUSION**

6        For the foregoing reasons, the Court should grant Real Intent's Rule 50(b) renewed

7  motion for judgment as a matter of law, on the grounds set forth herein.

8
9  Dated:  January 10, 2025                  KEKER, VAN NEST & PETERS LLP

10                              By:   */s/ Robert A. Van Nest*

11                                   ROBERT A. VAN NEST
                                 REID P. MULLEN

12                                   RYAN K. WONG
                                 CODY GRAY

13                                   KRISTIN HUCEK
                                 THERESA M. DAWSON

14                                   VICTOR CHIU
                                 BILAL MALIK

15                                   CATHERINE C. PORTO
                                 ELIZABETH A. HECKMANN

16
17                                   Attorneys for Defendant
                                 REAL INTENT, INC.

18
19
20
21
22
23
24
25
26
27
28

DEFENDANT REAL INTENT, INC.'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW (FED. R. CIV. P. 50(B))
Case No. 5:20-cv-02819-EJD (SvK)

2829109