UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>   Plaintiff,<br><br> v.<br><br>REAL INTENT, INC.,<br><br>   Defendant. | Case No.  20-cv-02819-EJD<br><br>**PRETRIAL ORDER**<br><br>**REDACTED PUBLIC VERSION** |

The Court held a pretrial conference on October 1, 2024. The following order summarizes rulings on the motions *in limine* ("MIL") and other issues raised at the pretrial conference. The parties also appeared before the Court regarding non-party Henry Verheyen's motion to quash (ECF No. 661) and the parties' dispute over at-issue command sets (ECF Nos. 668-1; 670-1). This order also incorporates the Court's minute entries entered on October 1, 2024 (ECF No. 645) and October 9, 2024 (ECF No. 683).

**I.  TRIAL LOGISTICS**

  1. Jury selection is scheduled to begin on Monday, October 15, 2024. Trial will start at 9:00 a.m. and run until 4:30 p.m. each day with two fifteen-minute breaks and an hour break for lunch. The parties received a copy of the trial calendar at the pretrial conference.

  2. A jury of nine persons shall be used with no alternates. Each party will have five challenges. A pass is not a strike, but two consecutive passes is a final seated jury.

  3. Each side will have equal hours of evidence time, including both direct and cross, and redirect and recross. The parties will calculate the appropriate amount of time per party and discuss with the Court.

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER

4. The parties informed the Court that trial may include the presentation of confidential source code. To minimize sealing the courtroom, the parties will display any source code or other highly confidential material only to the jury and the Court. The presentation of an exhibit will not waive the confidentiality of that exhibit. For this case, the parties are not required to comply with Local Civil Rule 5-1(g), but at the end trial, the parties shall submit a list of those exhibits they contend should remain sealed. Regarding Synopsys' request to alter the protective order's restrictions to enable source code to be presented at trial, the parties are to discuss Synopsys' proposal. Further sealing issues should be discussed among the parties and raised with the Court.

5. Counsel for Real Intent raised an issue at the pretrial conference regarding documents stamped "Attorneys' Eyes Only" and requested that those confidentiality designations be removed to avoid confusion among jurors. After considering the issue, the Court finds it would be appropriate to remove the confidentiality designations added by counsel. Doing so is only for purposes of trial and does not otherwise alter the confidentiality treatment of those documents under the protective order. Synopsys argues that the documents should retain the confidentiality designation because it would be burdensome to remove them. However, counsel for Synopsys did not articulate any legitimate burden, and in the Court's experience, the process of removing the designations can be automated. Any burden to counsel in removing the designation is outweighed by the potential risk of jurors treating the documents as confidential—particularly here, where the confidentiality of documents may bear on substantive issues at trial.

6. The Court will permit limited attorney voir dire. Counsel will provide the Court in advance with any proposed specific, additional questions counsel would like the Court to ask during the Court's voir dire.

7. Parties will provide a juror binder for each juror that includes photographs of witnesses who will testify. The photograph pages may be provided to the court room deputy each morning prior to the start of proceedings or at the end of each day for the following days testimony. This will permit the court room deputy to timely distribute them to the jury.

8. Regarding testimony presented at trial, counsel for Synopsys advised that it wished to present certain 30(b)(6) witness deposition testimony by deposition only, even if the witness was subpoenaed and available to testify live. Real Intent objected to such a use, or proposed that, should Synopsys rely on the deposition testimony in its case in chief with Real Intent's available witnesses, it should then not be permitted to cross-examine those witnesses on the same matters that they had already presented via deposition. Real Intent also expressed that it would be amenable to keeping Synopsys' case open such that the Real Intent 30(b)(6) witnesses who are available live only need to be presented once. Although Synopsys is permitted to present 30(b)(6) testimony by deposition under the Federal Rules of Civil Procedure, the Court expressed its concerns with such an approach and the effect it may have on jurors. Nevertheless, the Court will not prevent Synopsys from proceeding this way, as the Federal Rules permit. The parties shall meet and confer regarding Real Intent's proposal.

9. The Court received the parties' amended neutral statement. The parties were instructed to submit a revised neutral statement and any amended preliminary jury instructions before 12:00 p.m. on Friday, October 11, incorporating the Court's guidance at the October 9 hearing.

## II. MOTIONS *IN LIMINE*

Rulings on the motions *in limine* and other issues discussed at the pretrial conference are summarized below. Rulings on other evidentiary objections will be addressed in turn as the parties seek to introduce evidence at trial.

### A. Joint Motion *in Limine*

The Court adopts its tentative order as to the parties' joint MIL as final. ECF No. 644 ("Tentative Order") at 1.

### B. Synopsys' Motions *in Limine*

MIL No. 2 (Unrelated Litigations Involving Synopsys or Its Predecessors-in-Interest). The Court adopts its tentative order as to Synopsys' MIL No. 2 as final. *See* Tentative Order at 1–2.

MIL No. 5 (References to Synopsys or Its Predecessors in Pejorative Terms). The Court

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER
3

adopts its tentative order as to Synopsys' MIL No. 5 as final.  *See* Tentative Order at 2.

MIL No. 7 (Suggestions that Synopsys Failed to Call Any Witness).  For the reasons explained at the pretrial conference, the Court finds that it is appropriate for a party to argue to the jury that the other side has not met their burden of proof, but neither party may suggest the other side is hiding witnesses or evidence unless that becomes an issue, and it is discussed with the court.  Further objections to specific testimony or argument can be addressed at trial.

MIL No. 8 (Party Size or Revenue).  Synopsys seeks to preclude Real Intent from presenting evidence regarding either party's size or revenue.  Counsel for Real Intent confirmed it will not argue that Real Intent employees will lose jobs as a result of any damages award.  The Court will permit both sides to factually introduce their respective companies to the jurors, including statements that both companies consider themselves "leaders in the industry."  Real Intent's counsel confirmed it will not argue that it must be a better, more innovative company because of its size.  Further objections to specific statements or evidence will be addressed during trial.

MIL No. 9 (Synopsys' Reasons or Motivations for Not Bringing Lawsuit Earlier)[1].  Synopsys argues that reasons why Synopsys brought the litigation, along with the timing, are not relevant to the issues that remain: damages for breach of contract and its patent infringement case.  Synopsys further argues that Real Intent's attempt to connect Synopsys' motivations for not bringing suit to damages is "very attenuated."  Real Intent will argue that Synopsys failed to mitigate damages by delaying in filing suit despite knowing years earlier about Real Intent's use of the disputed command sets.  Similarly, Synopsys' delay in filing suit is relevant to Real Intent's foreseeability argument because Real Intent will argue it was not foreseeable it would be liable for damages Synopsys now seeks because Synopsys knew of Real Intent's use yet failure to take action.

Although the Court agrees in certain respects that Real Intent's theory on foreseeability

---

[1] The Court received supplemental briefing from the parties on Synopsys' MIL No. 9 and No 12.  ECF Nos. 652-2, 655-1.

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER
4

and mitigation of damages requires some foundational steps, Real Intent is still entitled to make that argument to the jury. Synopsys' MIL No. 9 is **DENIED IN PART**. The Court declines to broadly exclude all evidence or argument regarding the timing that Synopsys filed suit. That said, Real Intent may not argue that the reason Synopsys filed the lawsuit was to drive out competition and should use caution when referring to the timing of Synopsys' lawsuit. Further rulings on this issue may be appropriate as the evidence comes in.

MIL No. 12 (Attempts to Impute Knowledge or Conduct of Synopsys Subsidiaries and Affiliates onto Synopsys). Synopsys seeks to preclude Real Intent from raising, discussing, arguing, mentioning, or otherwise making any reference to evidence attempting to impute knowledge or conduct of other Synopsys subsidiaries or affiliates, or otherwise conflating Synopsys, Inc. with any of its subsidiaries or affiliates. With this MIL, Synopsys seeks to limit what the Court understands is, one of Real Intent's primary arguments: ▇▇▇▇

▇▇▇▇ is relevant to whether Synopsys failed to mitigate the breach-of-contract damages and also whether the damages were foreseeable because at no point did ▇▇▇▇ ▇▇▇▇. Synopsys contends that Real Intent should be precluded from raising this argument because ▇▇▇▇ ▇▇▇▇. The Court declines to exclude this evidence. Synopsys can present at trial its evidence and argument that ▇▇▇▇ ▇▇▇▇. Synopsys failed to distinguish between Synopsys and ▇▇▇▇ despite several apparent opportunities to do so. Thus, the Court **DENIES** Synopsys' MIL No. 12.

MIL No. 13 (Real Intent's Patents). Following the parties' discussion with the Court on

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER
5

October 7, 2024, the Court understands this MIL is now moot.

MIL No. 16 (Suggestions of Breach of Contract or IP Infringement Committed by Synopsys). At the pretrial conference, counsel for Real Intent confirmed that it would not argue that Synopsys breached any contract that it had with Real Intent. Based on this representation, Synopsys' MIL No. 16 is **DENIED AS MOOT**.

MIL No. 19 (Prior Rulings by the Court). The Court adopts its tentative order as to Synopsys' MIL No. 19 as final with certain modifications. *See* Tentative Order at 3. Synopsys sought clarity regarding how the Court intends to instruct the jurors that a breach was found. The Court instructed counsel that it intends to find a neutral statement to communicate this to the jury with counsel's input.

MIL No. 20 (Synopsys' Infringement Contentions). Following the parties' discussion with the Court on October 7, 2024, the Court understands this MIL is now moot.

MIL No. 22 (Real Intent's Equitable Affirmative Defenses). The Court adopts its tentative order as to Synopsys' MIL No. 22 as final with the modification below. At the pretrial conference, counsel for Real Intent confirmed it is also maintaining its affirmative defense of equitable estoppel. The Court finds that, as with Real Intent's mitigation of damages affirmative defense, the equitable estoppel defense overlaps sufficiently with issues that Synopsys will present and Real Intent's rebuttal to those issues such that bifurcation would not be appropriate. Accordingly, Synopsys' MIL No. 22 is **DENIED**.

MIL No. 24 (Potential Impact of Damages Award). The Court adopts its tentative order as to Synopsys' MIL No. 24 as final. *See* Tentative Order at 4–5.

MIL No. 25 (Third-Party Copying of Synopsys' Command Sets). Synopsys seeks to exclude all evidence of third-party copying of Synopsys' command sets as irrelevant. At the pretrial conference, Synopsys' counsel argued that Real Intent only has evidence of purported copying by third parties of tools or commands not at issue in this case. Or, rather, trying to prove or disprove that the third-party copying was of the same commands and syntax would amount to a "sideshow" and with the potential of "grave danger of prejudice" to Synopsys.

Real Intent responds that it is not arguing that Synopsys was aware of third-party copying, that Synopsys should have sued any third party, or that Synopsys ignored any copying. Instead, Real Intent seeks to introduce evidence that the disputed command sets were ubiquitous. This evidence is relevant to damages, according to Real Intent, because Real Intent could use it to rebut Synopsys' argument that its commands are unique and allowed it to win sales. In other words, because others in the industry broadly use Synopsys' commands, they are not product differentiators. Synopsys further argues that, if Real Intent is permitted to introduce evidence of third-party copying to argue that it was unforeseeable Real Intent could be liable for the specific amount of damages, Synopsys should be able to rebut that with evidence of the *ATopTech* verdict amount.

Synopsys' MIL No. 25 is **DENIED IN PART**. To the extent that Synopsys argues that its command sets broadly are unique and Synopsys protects them, the Court finds it would be appropriate for Real Intent to rebut that argument with evidence that the commands are not unique, and Synopsys does not protect them because third parties broadly copy the command sets.[2] Synopsys will be permitted to present argument that Real Intent lacks evidence that Real Intent knew of the third-party copying. Synopsys may also challenge Real Intent's argument with respect to the third-party copying as it applies specifically to the licensed product—Design Vision. Further objections to specific evidence and argument can be addressed at trial.

MIL No. 29 (Duplicative Expert Testimony). Counsel for Synopsys confirmed this MIL is moot because Real Intent no longer intends to call one of the experts at trial. Accordingly, this MIL is **DENIED AS MOOT**.

MIL No. 31 (Potential Business Transactions). Synopsys moves to exclude all testimony, evidence, or argument referencing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ unrelated to this litigation. Synopsys argues such evidence is irrelevant and may give rise to an unwarranted and prejudicial inference that Synopsys has some ulterior motive

---

[2] The Court cautions that argument that Synopsys does not protect its command sets may open the door to evidence regarding *ATopTech*.

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER

1  for bringing this lawsuit.  According to Real Intent, ███████████████████████
2  ███████████████████████████████████, and this is relevant to rebut
3  Synopsys' primary trial theme that Real Intent just copied because they could not innovate on their
4  own.  Evidence that ███████████████████████████████████████████████████████
5  ████████████████ is also relevant because it supports Real Intent's defense that Synopsys knew
6  that Real Intent's products already supported the majority of the disputed command set elements
7  and were actively being used by Synopsys engineers.

8      The Court finds that evidence of ████████████████████████████████████████
9  ████████████████████████ such that it would have known of Real Intent's use of the
10 commands is relevant to Real Intent's defenses.  While Real Intent can reference the underlying
11 documents or discussions, it may not specifically reference ███████████████████████
12 ████.  The Court finds that any potential prejudice to Synopsys that the jury may assume any
13 ulterior motive can be avoided without discussing the specifics of ████████████████████
14 ███████████████████████████████████████████.  Accordingly, this
15 MIL is **GRANTED IN IN PART AND DENIED IN PART**.

16     **C.**    **Real Intent's Motions *in Limine***

17     <u>MIL No. 1 (Twiki Page)</u>.  Real Intent seeks to exclude evidence or argument regarding the
18 temporary deletion of Twiki pages.  Synopsys argues evidence of the deletion rebuts Real Intent's
19 foreseeability argument.  That is, Real Intent intends to argue that it was not foreseeable it would
20 be liable for the amount of damages Synopsys seeks for several reasons, including because it
21 believed it was permitted to act as it did.  Synopsys intends to rebut that expected defense by
22 pointing Mr. Kumar's temporary deletion of documents, which suggests Real Intent knew it was
23 doing something improper.  The Court agrees that the deletion of documents does not make the
24 issue of breach more or less likely because breach has already been resolved.  But if Real Intent
25 intends to argue that it was not foreseeable that it would be liable for its actions because it
26 understood that what it was doing was permitted, then evidence about Mr. Kumar's reaction and
27 the deletion of documents appears to directly rebut that position.  Accordingly, the Court
28 Case No.: 20-cv-02819-EJD
   PRETRIAL ORDER
   8

**DEFERS** ruling on this motion until trial.

<u>MIL No. 2 (*ATopTech* Result)</u>.  The Court adopts its tentative order as to Real Intent's MIL No. 2 as final.  *See* Tentative Order at 5.  The tentative order excluded reference to the verdict amount in *ATopTech*.  At the pretrial conference, Synopsys raised the concern that if Real Intent argues that the amount of damages Synopsys seeks here ▮▮▮▮▮▮ was not foreseeable, Synopsys should be permitted to introduce evidence showing that Real Intent was aware that Synopsys was awarded $30 million as damages in that litigation.  The Court declines to do so.  The probative value of introducing the amount awarded in an unrelated case involving different claims is outweighed by the prejudice to Real Intent of the jury crediting that jury verdict.

<u>MIL No. 3 (Information Not Produced in Discovery)</u>.  The Court issued a tentative ruling on this MIL.  Counsel for Real Intent requested clarification at the pretrial conference.  Specifically, Real Intent explained that it seeks to preclude Synopsys from arguing that they competed with Real Intent before they acquired Atrenta in 2015.  In its order on the parties' competing summary judgment motions, the Court found that "[t]he record supports finding, there is no *genuine* dispute that, at the time Real Intent began using the disputed command sets in 2010, Synopsys did not have a product that directly competed with Real Intent."  ECF No. 513 at 38.  Synopsys may not contradict that finding in its arguments to the jury.  That said, the Court will permit Synopsys to discuss "at a very high level" "what the product landscape was and how it evolved."  This type of discussion regarding products Synopsys owned in the past does not necessarily conflict with the Court's finding.  The Court will address further objections to specific statements or evidence at trial.

<u>MIL No. 7 (Theories of Contractual Breach Not Disclosed in Discovery)</u>.  The Court adopts its tentative order as to Synopsys' MIL No. 7 as final.  *See* Tentative Order at 4.  At the pretrial conference, counsel for Real Intent requested clarification that Synopsys will not be permitted to present evidence or allude to breaches of other contracts.  Counsel for Synopsys confirmed it would not.

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER

1  MIL No. 8 (Lost Profits Damages and Opinions). Real Intent's MIL No. 8 seeks to
2  exclude "evidence and argument regarding lost profits damages and opinions." ECF No. 573-3.
3  Initially, the Court observes that Real Intent does not cite any Federal Rule of Evidence, but
4  instead argues that Synopsys should be precluded from presenting its damages theory because "it
5  fails under California law." Real Intent also requests that Mr. Napper's lost profits opinions
6  should be excluded because it is "inherently flawed" and "can only mislead the jury." Real
7  Intent's MIL No. 8, which takes aim at Synopsys' damages theory altogether, appears to seek a
8  dispositive ruling. The Court may deny Real Intent's MIL for this reason. The Court does,
9  however, recognize that the summary judgment ruling did change the landscape of the case, and
10 Real Intent's arguments regarding Synopsys' alleged flawed damages opinion would not have
11 necessarily been ripe during the timeframe for Real Intent to file a motion for summary judgment
12 or *Daubert* motion. That said, Real Intent could have sought leave to file an additional, limited
13 summary judgment motion or otherwise sought some relief from the Court given the unique
14 procedural posture following the summary judgment order.
15 Turning the merits of the motion, Real Intent argues Synopsys cannot recover the lost
16 special damages it seeks because they were not reasonably foreseeable under California law.
17 "Special damages are recoverable if the special or particular circumstances from which they arise
18 were actually communicated to or known by the breaching party (a subjective test) or were matters
19 of which the breaching party should have been aware at the time of contracting (an objective
20 test)." *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968–69
21 (2004). Even if Real Intent has established that the particular circumstances from which the
22 special damages arise were never "actually communicated to" or "known by" Real Intent because
23 PrimeTime VC, at least, was not developed at the time the parties entered into even the latest
24 agreement in 2017, Real Intent has not met the objective test. In other words, Synopsys presents
25 evidence, and is permitted to argue to the jury, that Real Intent "should have been aware at the
26 time of contracting" of the special or particular circumstances from which the ▇▇▇▇ lost
27 profits arise. The Court cannot conclude as a matter of law whether or not Real Intent should have

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER
10

been aware that it could be liable for ▮▮▮▮▮▮▮ For example, a reasonable juror may determine that Real Intent should have been aware at the time of contracting, including at least post-2015, when Synopsys acquired Atrenta, that Real Intent would be liable for lost profits of SpyGlass. Thus, the Court declines to exclude Synopsys' lost profits damages theory for being unforeseeable as a matter of law.

As to Real Intent's second argument that Mr. Napper's methodology is fundamentally unsound for being untethered to the copying of only Design Vision, the Court expressed at the pretrial conference some skepticism with Mr. Napper's opinion based on his apparent failure to apportion. Mr. Napper appeared to have used the same lost profits analysis for both the copyright and contract claims, but the copyright claim was based on copying of products no longer at issue in this case, whereas the contract claim was based on copying of only Design Vision. In response, Synopsys concedes that Mr. Napper's analysis for the breach of contract is the same as the analysis for the copyright claim. Mr. Napper did not need to apportion on a command-by-command basis, according to Synopsys, because customers do not place emphasis on certain commands over others.

The Court declines to exclude Mr. Napper's damages opinion. Real Intent's criticism regarding Mr. Napper's analysis is related to his choice of data. These data choices are understandable, so a jury could readily evaluate whether those choices add to or detract from Mr. Napper's persuasiveness. Real Intent's arguments about Mr. Napper's inclusion of certain products go to weight, not admissibility, and they are better directed to the jury as factfinder, not to the Court as gatekeeper. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir. 1997) (when a jury is able to assess purported deficiencies in an expert's methodology, it is appropriate for juries to do so rather than the Court). The Court reminds the parties that it intends to instruct the jury on which product(s) and which command sets remain at issue in the case. The Court addresses the related discovery dispute below.

MIL No. 9. (Patent Infringement Cause of Action); MIL No. 10 (Pre-suit Patent Damages– Marking); MIL No. 11 (Pre-suit Patent Willfulness). Following the parties' discussion with the

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER
11

Court on October 7, 2024, the Court understands MIL Nos. 9–11 are now moot.

## III. DISCOVERY DISPUTE

On September 12, 2024, the parties submitted a joint statement seeking resolution of a discovery dispute over Real Intent's production of financial information. ECF No. 620-2 ("Joint Statement"). On August 5, 2024, Synopsys requested that Real Intent produce updated sales data so that its damages expert, Mr. Napper, could update his lost profits calculation to account for lost profits that occurred after March 2023—the latest date Real Intent had produced such financial information. Synopsys contends Mr. Napper "will not change any of his opinions or utilize any novel calculations based on this dated data, but rather update his previous calculation." Joint Statement 2. Real Intent declined to produce customer-specific data for new sales and now urges the Court to deny Synopsys' request because (1) the request was untimely as it came more than a year after the close of fact discovery, and (2) the request will unfairly prejudice Real Intent because it would permit Synopsys to add new and untested sales to its lost-profits figure while denying Real Intent the ability the develop evidence showing that Synopsys would not have made those new sales.

The Court appreciates Real Intent's concern that allowing this new sales data would hinder its defense with respect to the new sales because it does not allow Real Intent the opportunity to explore the facts surrounding these new sales. But the lack of discovery into the additional sales seems to cut both ways. Synopsys, the party bearing the burden to prove but-for lost profits, may seemingly be at a greater disadvantage from lack of discovery into these new sales. Synopsys will presumably need to establish that it lost each new sale *because of* Real Intent's use of the limited command sets still at issue. If, as Real Intent represents, each sale is different with unique circumstances, Synopsys may have greater difficulty meeting its burden without the benefit of additional context surrounding these sales. Real Intent may raise all appropriate evidentiary objections at trial.

Real Intent is therefore ordered to produce the requested financial data by October 11, 2024.

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER
12

## IV. PRELIMINARY JURY INSTRUCTIONS

The parties submitted joint proposed preliminary and final jury instructions. *See* ECF 628-12. As the Court explained during the pretrial conference, issues concerning final jury instructions will be addressed during a charging conference that will be set at a later date. The Court addresses the disputed preliminary jury instructions below.

Instruction No. 2 (Claims and Defenses). Following the parties' discussion with the Court on October 7, 2024, the Court understands the disputes over the patent-related aspects of this instruction are now moot.

The Court declines to instruct the jury that "*I* have already found that Real Intent breached certain provisions" or otherwise include any language that places unnecessary emphasis on "the Court" in discussing the contract breach.

Instruction No. 3 (Outline of Trial). The Court adopts Real Intent's proposed Preliminary Instruction No. 2.

Instruction No. 19 (Breach of Contract – Introduction). The Court adopts Real Intent's proposed Preliminary Instruction No. 19. As noted above, the Court declines to instruct the jury that "*I* have already found that Real Intent breached."

Instruction No. 20 (Breach of Contract – Command Sets Not In Dispute). The Court is inclined to include some version of Instruction No. 20 that instructs the jury regarding what command sets are in dispute. The parties shall submit a revised version of Instruction No. 20 following the parties' meet and confer and pursuant to the Court's guidance at the pretrial conference and the October 9 hearing.

Instruction Nos. 21–24. Following the parties' discussion with the Court on October 7, 2024, the Court understands the parties' disputes over these patent-related instructions are now moot.

## V. MOTION TO QUASH

Non-party Henry Verheyen moves to quash Synopsys' trial subpoena because he has pre-existing travel to Netherlands scheduled during the trial. As explained during the October 9

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER
13

hearing, the Court will not require Mr. Verheyen to miss his travel plans. Counsel for Synopsys expressed willingness to cover the costs of Mr. Verheyen's travel to permit him to return to the Bay Area to testify at trial. The Court also suggested that Synopsys could conduct a virtual deposition of Mr. Verheyen before Monday, October 14, limited to the topics that were not already covered in his original deposition and play that at trial.

The parties were instructed to meet and confer on this issue.

## VI.  OTHER ISSUES

Commands at issue. At the pretrial conference and in pretrial statements, Synopsys appeared to concede that it does not intend to argue that any Real Intent (1) copying predating the 2013 agreement constituted a breach of that contract or any subsequent one, or (2) copying from non-licensed products breach any agreement. Joint Statement 27. Related to these representations, counsel for Synopsys agreed to prepare a final list of command sets at issue consistent with its statements above. The Court agreed that a list specifically identifying the command sets at issue will be helpful for the jury. Following receipt of that list, Real Intent raised a dispute regarding which commands remain at issue following the Court's summary judgment order.

The Court received the parties' briefs and heard argument at the October 9 hearing. The Court clarifies its ruling as to this issue as follows. In its summary judgment order, the Court found that Real Intent breached Section 3.2 of the in-Sync Agreements and Section 2.3 of the 2017 Synopsys Loan Agreement by copying commands and attributes, with syntax, from Design Vision into its own products. The parties did not frame, and the Court did not understand, the dispute over breach to require a command-by-command determination. Indeed, Synopsys argued in its summary judgment reply brief that Real Intent's admission regarding the six commands "alone is enough to establish the first breach." ECF No. 360-4 at 2. Thus, the summary judgment order did not resolve the precise scope of that breach beyond the six identified commands. The order and ruling on breach does not apply to (1) Real Intent's copying/incorporation of commands (and corresponding options, attributes, and syntax) from products other than Design Vision, or

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER
14

(2) Real Intent's copying/incorporation of commands from Design Vision that occurred prior to the effective date of the first agreement in 2013.  Real Intent argues that some of the commands/options in Synopsys' proposed list were copied from sources other than Design Vision.  Any such commands should be removed from the list and cannot form the basis of the Synopsys' damages case because the summary judgment order did not find breach as to those commands.  The parties shall meet and confer with the above guidance to prepare a joint list identifying the remaining commands (and corresponding options, attributes, and syntax) at issue.  To the extent there remain factual disputes over any commands, the parties may ask the jury to resolve factual disputes over the scope of the breach to address damages.  The parties will meet with the Court to discuss details, if necessary.

Unjust enrichment.  For its breach of contract claim, Synopsys seeks (1) actual damages in the form of lost revenue, (2) unjust enrichment from costs avoided, and (3) attorneys' fees and costs.  Joint Statement 8.  Real Intent contends that the "unjust enrichment from costs avoided" that Synopsys seeks for its breach of contract claim is legally improper because "unjust enrichment" is not compensatory damages, does not reflect any harm to Synopsys, and is unavailable for the claimed breaches.  Joint Statement 12.  Synopsys responds that under California law, a defendant's unjust enrichment can satisfy the "damages" element of a breach of contract claim, such that disgorgement is a proper remedy.  *Id.* at 9 (citing *Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 F. App'x 665, 669 (9th Cir. 2010)).

Synopsys appears to acknowledge that unjust enrichment claims cannot proceed when there is a written contract covering the issue, but nevertheless argues that its claimed *remedy* for unjust enrichment is appropriate despite the express contracts at issue here.  Joint Statement 9.  The Court understands Synopsys' damages theory to be that it can seek lost profits for sales Synopsys purportedly lost because of Real Intent's breach *in addition to* unjust enrichment based on costs Real Intent avoided by breaching and gaining an unfair advantage.

An unjust enrichment claim is "grounded in equitable principles of restitution," rather than "breach of a legal duty."  *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 743 (9th Cir. 2024)

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER

(quoting *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708 (2003)). At common law, unjust enrichment "require[s] a party to return a benefit when the retention of such benefit would unjustly enrich the recipient." *Id.* (quoting *Munoz v. MacMillan*, 195 Cal.App.4th 648 (2011)). Unjust enrichment is a quasi-contract cause of action that "relies on the absence of such [a formal agreement]." *Id.* at 742, n. 4. In *Foster*, the Ninth Circuit evaluated the district court's award of SunTrust's profits—under a disgorgement theory—to Foster for breach of a confidentiality agreement. *Foster*, 377 F. App'x at 668. SunTrust appealed, arguing that its breach of the confidentiality agreement should have entitled Foster to, at most, only nominal damages. *Id.* The district court found that Foster had not suffered any economic harm resulting from the breach, but SunTrust's gains from the breach were "specifically quantifiable." *Id.* On review, the Ninth Circuit affirmed the award, explaining that "disgorgement of improperly obtained profits can be an appropriate remedy for breach of a contract protecting trade secrets and proprietary confidential information." *Id.* The facts here are somewhat different. In *Foster*, the district awarded "improperly obtained profits" because there was "no economic harm" to plaintiff. Here, Synopsys seeks *both* lost profits and unjust enrichment. *Foster* appears to only confirm that a defendant's unjust enrichment can satisfy the damages element of breach of contract claim, such that disgorgement is a proper remedy, particularly where the plaintiff cannot establish financial injury but rather suffered intangible harm. *Foster* does not necessarily endorse allowing a party to seek both lost profits and unjust enrichment where that party contends it *did* suffer financial injury from breach of a contract. Nor does *Ajaxo* quite fit the present facts. There, Ajaxo originally sought lost profits but later changed its damages calculation, dropped the claim for lost profits, and only sought unjust enrichment. *Ajaxo Inc. v. E*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 59. The only measure of damages presented to the jury was unjust enrichment. The court upheld an award of damages that included the saved development costs based on a theory of unjust enrichment/restitution. *Id.* at 55–57.

In *Oracle*, plaintiffs sought unjust enrichment damages based on "saved development costs" under its claims, including a claim for breach of contract and copyright infringement.

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER
16

*Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 969 (N.D. Cal. 2010). As to the non-copyright claims, the court held that plaintiffs could not recover "saved development costs" for alleged unjust enrichment because it "would not be equitable, logical, or legally permissible to award plaintiffs the full replacement value of property that they never lost or gave away." *Id.* at 970. The court distinguished *Ajaxo*, which concerned trade secret claims in which the court permitted recovery of "development costs" saved by misappropriating, rather than developing, the trade secrets at issue. Trade secret law, unlike the contract claims, "allows for recovery of saved development costs." *Id.* In *Oracle*, plaintiffs also sought to recover "saved development costs" for their copyright claims "based on the purported amount that defendants would have spent to acquire the relevant technology through their own development efforts—that is, the amount that defendants saved by infringing, rather than developing or directly purchasing, the technology." *Id.* at 971. The court held that plaintiff was not permitted to seek such damages, noting the lack of "Ninth Circuit authority for awarding research and development costs to plaintiffs as actual damages for infringement." *Id.* at 972.

Here, as in *Oracle*, Synopsys seeks to recoup the purported amount that Real Intent would have spent to acquire, or develop, the relevant command sets through its own efforts. But because *Oracle* was considered in the context of a copyright claim, and the breach of contract claim here involves use of confidential material—not dissimilar to a trade secret claim—the Court cannot say that unjust enrichment for "costs avoided" is improper as a matter of law under these circumstances. The appropriate course of action is to permit Synopsys to seek recovery in the form of "costs avoided" for breach of accessing Synopsys' DesignWare Library. That said, Synopsys will need to present evidence to support a finding that Real Intent avoided the large amount of development research and development costs Synopsys seeks "as a result of" Real Intent's access of Synopsys' DesignWare Library. *See Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-CV-04238-MMC, 2023 WL 4475587, at *4 (N.D. Cal. July 10, 2023) (granting motion for relief from judgment and renewed motion for judgment as a matter of law following jury trial where plaintiff pointed to no evidence to support finding that defendant was unjustly enriched "as

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER
17

a result of" breach of agreement governing confidentiality agreement); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1076–77 (N.D. Cal. 2005) (judgment as matter of law on unjust enrichment claim appropriate where plaintiff failed to offer evidence that could have "provide[d] a reasonable basis for the jury to apportion" amount of benefit attributable to misappropriation).

The Court intends to separate the issues of money damages and unjust enrichment (in the form of costs avoided) on the verdict form. This issue can be taken up at a later time, and the Court will invite the parties to submit proposals.

**IT IS SO ORDERED.**

Dated: October 9, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 20-cv-02819-EJD
PRETRIAL ORDER
18