UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SYNOPSYS, INC., <br>     Plaintiff, <br> v. <br> REAL INTENT, INC., <br>     Defendant. | Case No. 20-cv-02819-EJD <br><br> **ORDER REGARDING POST-TRIAL MOTIONS** <br><br> Re: ECF Nos. 843, 845, 857, 859 |

Synopsys, Inc. brought this action against Real Intent, Inc., alleging copyright infringement, breach of contract, and other claims related to Real Intent's use of Synopsys' proprietary command set elements for electronic design automation ("EDA") tools. Following trial, a jury awarded Synopsys damages for Real Intent's breach of certain contracts. Now before the Court are several post-trial motions: Synopsys' motion for a permanent injunction (ECF No. 843), Synopsys' motion for a new trial (ECF No. 857), and Real Intent's motion for judgment as a matter of law (ECF No. 859). Also before the Court is Real Intent's defense of equitable estoppel for which Real Intent has submitted proposed findings of fact and conclusions of law. ECF No. 845.

Having reviewed the trial record, the parties' submissions, and the relevant law, the Court GRANTS IN PART and DENIES IN PART Real Intent's motion for judgment as a matter of law. As a result, the Court DENIES AS MOOT Synopsys' motions for a permanent injunction and new trial, and it also finds Real Intent's equitable estoppel argument to be MOOT.[1]

---

[1] ECF Nos. 901 and 914 are likewise terminated as moot.

Case No.: 20-cv-02819-EJD
ORDER RE POST-TRIAL MOTIONS      1

## I. BACKGROUND

Synopsys and Real Intent sell software tools to integrated circuit designers in the EDA industry. Prior to this lawsuit, the parties entered into several agreements: the 2013, 2014, 2015, and 2016 in-Sync Agreements and the 2017 Synopsys Loan Agreement (the "Agreements"). Under those Agreements, Real Intent received licenses allowing it to access certain of Synopsys' products and offerings—including Design Vision, the "front end" of Synopsys' Design Compiler product—but only for limited uses. Synopsys brought this case in 2020, accusing Real Intent of infringing Synopsys' copyrights and breaching the Agreements.

On summary judgment, the Court made several rulings relevant to the present motions. *See* MSJ Order, ECF No. 513. As to breach of contract, Synopsys moved for summary judgment that Real Intent breached the Agreements in three ways: (1) by copying/incorporating commands and attributes, with syntax,[2] from Design Vision into its own products (the "Incorporation Breach"); (2) by using the products licensed under the Agreements for competitive purposes (the "Competitive Purposes Breach"); and (3) by accessing and using Synopsys' DesignWare Library, which was not licensed to Real Intent (the "DesignWare Breach"). The Court granted summary judgment in favor of Synopsys on the Incorporation and DesignWare Breaches. But disputes of material fact precluded summary judgment on the Competitive Purposes Breach. Real Intent, for its part, argued that Synopsys could not recover anything for breach of contract because the claim as a whole was preempted by the Copyright Act. The Court rejected Real Intent's preemption argument. *See infra* Section III.A.1.

Regarding Synopsys' copyright infringement claim, both parties claimed their side was entitled to summary judgment on Real Intent's fair use defense. Relying on the Supreme Court's decision in *Google LLC v. Oracle America, Inc.*, 593 U.S. 1 (2021), the Court granted Real Intent's motion on this point and held that Real Intent's use of copyrighted command sets was fair as a matter of law.

With the copyright infringement claim out of the case, Synopsys elected to proceed with a

---

[2] For ease, the Court refers to these simply as "commands."

Case No.: 20-cv-02819-EJD
ORDER RE POST-TRIAL MOTIONS        2

damages-only trial on the two breaches for which the Court granted summary judgment—the Incorporation and DesignWare Breaches—while abandoning the Competitive Purposes Breach. Synopsys sought damages in the form of (1) lost profits based on the Incorporation Breach, and (2) unjust enrichment for saved costs based on the DesignWare Breach.

During pre-trial proceedings, a dispute emerged over the scope of the Incorporation Breach. When granting summary judgment, the Court discussed only six commands that the undisputed evidence showed Real Intent had incorporated into its own products. The Court did not discuss whether the record showed the same for the remainder of Synopsys' relevant commands. This mattered because the number of commands copied were important to the parties' trial arguments about whether the incorporation of commands caused Synopsys to lose profits. That is, the more commands that Real Intent copied, the stronger Synopsys' argument that the copying caused Synopsys to lose sales and profits to Real Intent. And conversely, the fewer commands that Real Intent copied, the stronger Real Intent's defense that other product features rather than the copied commands were the reason it won sales from Synopsys.

After hearing from the parties on this issue, the Court observed that "a damages-only trial [was] no longer tenable." ECF No. 707. Given the open factual dispute as to the scope of the Incorporation Breach, the parties presented arguments and evidence at trial regarding whether or not Real Intent copied commands beyond the six identified in the Court's summary judgment order. Ultimately, the jury was asked to answer the following question about the Incorporation Breach: "What amount of lost profits, if any, has Synopsys proven by a preponderance of the evidence that Synopsys would have earned but for Real Intent's copying of commands/options and attributes, with syntax, from Design Vision after April 2013?" ECF No. 800.

The jury returned a verdict for Synopsys in the amount of $248,776 in lost profits and $297,500 for unjust enrichment. *Id.* The present motions followed.

For the reasons explained below, the Court finds that the Copyright Act preempts the Incorporation Breach but that there is no basis for disturbing the jury's verdict on the DesignWare Breach. The Court therefore vacates the jury's lost profits award without disturbing the jury's award of unjust enrichment on the DesignWare Breach.

## II. LEGAL STANDARD

A court may grant a motion for judgment as a matter of law ("JMOL") against a party on a claim or issue where the party has been "fully heard on [that] issue during a jury trial," and the court finds that a "reasonable jury would not have a legally sufficient evidentiary basis" to find for that party. Fed. R. Civ. P. 50(a). Judgment as a matter of law is appropriate where "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury." *White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002); *see also Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 803 (9th Cir. 2009) ("JMOL is appropriate when the jury could have relied only on speculation to reach its verdict."). "A jury's verdict must be upheld if it is supported by substantial evidence. Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (citation omitted).

A motion for judgment as a matter of law made under Rule 50(a) may be renewed after the jury returns a verdict against the moving party. Fed. R. Civ. P. 50(b). A "proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion," and "a party cannot properly 'raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion.'" *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)).

## III. DISCUSSION

Real Intent moves for judgment as a matter of law that (1) the Copyright Act preempts the Incorporation Breach; (2) Synopsys' lost profits were not foreseeable as a matter of law; (3) unjust enrichment is not an available remedy for the DesignWare Breach, and Synopsys failed to prove the damages the jury awarded for the claim; and (4) Synopsys failed to prove that Real Intent copied any of the disputed elements from Design Vision after April 2013.

### A. Preemption

Real Intent argues the Copyright Act preempts the Incorporation Breach because that

Case No.: 20-cv-02819-EJD
ORDER RE POST-TRIAL MOTIONS          4

breach was based solely on the copying of Synopsys' copyrighted commands. Synopsys contends that Real Intent's preemption argument is both procedurally improper and fails on the merits.

### 1. Procedure

The threshold issue is whether the Court can hear Real Intent's preemption arguments at this stage—post-summary judgment and post-trial—when the Court considered, and rejected, a version of Real Intent's arguments on this issue raised previously. Although procedurally atypical, the Court can properly consider Real Intent's argument.

In its motion for summary judgment, Real Intent argued it was "entitled to summary judgment on Synopsys' breach of contract claim because it is preempted by the Copyright Act." Real Intent MSJ 28, ECF No. 298-2. Although it briefly addressed the three separate theories of breach Synopsys was pursuing at the time, Real Intent argued in seeking summary judgment that "[t]he gravamen underlying the breach-of-contract allegations," as a whole, "is copying and the creation of derivative works, which are squarely preempted by the Copyright Act." *Id.* at 29. In other words, Real Intent sought a ruling that Synopsys' entire "contract claim" was preempted rather than arguing for preemption on a breach-by-breach basis. *Id.* Synopsys opposed Real Intent's motion and argued that the Agreements "implicate[d] rights that are not equivalent to rights under [the] Copyright Act." In doing so, Synopsys reiterated its separate theories of breach at that time. Synopsys Opp. to Real Intent MSJ 28, ECF No. 325-4.

Starting with the Competitive Purposes Breach, which involved "Real Intent's prohibited use of the licensed products for competitive purposes," Synopsys argued that the breach had "nothing to do with reproduction, performance, distribution, or display." *Id.* Synopsys explained that Real Intent "used Design Vision in order to understand its behavior, and then tested and modified the behavior of Real Intent's own products so they would return the same output and exhibit the same behavior as Synopsys' tools." *Id.* According to Synopsys, the contractual prohibition on this use supplied the necessary "extra element outside the scope of copyright protection" to avoid preemption. *Id.*; *see also Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (holding that presence of an "extra element" avoids copyright preemption).

Second, Synopsys argued that the DesignWare Breach was also beyond the scope of the Copyright

1  Act because it required the extra element of "unauthorized accessing of Synopsys' DesignWare
2  Library." Synopsys Opp. to Real Intent MSJ 28. Third, as to the Incorporation Breach, Synopsys
3  argued that, too, was not "equivalent" to the rights under the Copyright Act because it was
4  "significantly more restrictive." *Id.* at 29.

5  In declining to apply preemption, the Court observed that Synopsys' breach of contract
6  claim was based on the above three, separate theories of breach. MSJ Order 24–25. Consistent
7  with party presentation principles, though, the Court resolved only Real Intent's argument that
8  Synopsys' contract claims were altogether preempted by copyright. *See United States v.*
9  *Sineneng-Smith*, 590 U.S. 371, 375 (2020); *see also Walker v. City of Riverside*, 859 F. App'x
10  126, 128 (9th Cir. 2021) ("We do not decide issues that the parties have not presented."). Because
11  at least one of Synopsys' theories of breach included an extra element—namely that "Real Intent
12  used Design Vision to understand and model the behavior in Real Intent's tools"—the Court
13  concluded that Synopsys's contract claims were not preempted as a whole. MSJ Order 25–26.

14  Now, in opposing Real Intent's motion for judgment as a matter of law, Synopsys argues
15  the Court cannot revisit the preemption issue because it was resolved at summary judgment. But
16  as noted above, preemption was framed as an all-or-nothing matter on summary judgment. Unlike
17  the substantive breach of contract claim that Synopsys teed up for the Court to make separate
18  findings based on separate breaches, Real Intent's preemption argument provided no occasion for
19  the Court to parse preemption on a breach-by-breach basis; all of the breaches at issue
20  (Incorporation, Competitive Purposes, and DesignWare) either rose or fell together.

21  To illustrate, consider how Synopsys argued that Real Intent breached the Agreements in
22  "at least three ways" when moving for summary judgment. Synopsys MSJ 9, ECF No. 360-4.
23  This framing allowed the Court to analyze each breach individually when determining whether
24  Synopsys met its burden. Indeed, the Court granted Synopsys' motion for summary judgment of
25  breach of contract based the Incorporation and DesignWare Breaches but denied summary
26  judgment as to the third, the Competitive Purposes Breach. MSJ Order 28–31. By contrast, Real
27  Intent did not expressly request or otherwise suggest that the Court should make separate rulings
28  on preemption for each theory of breach. Real Intent did not argue that the Court should, at a

Case No.: 20-cv-02819-EJD
ORDER RE POST-TRIAL MOTIONS         6

minimum, apply preemption to the Incorporation Breach even if preemption did not apply to other breaches. Nor did Real Intent attempt to press a breach-by-breach analysis of preemption through any motion for reconsideration or clarification following the Court's order. And neither did Synopsys defend against preemption by arguing that the Court could find one theory of breach preempted but not others. Synopsys Opp. to Real Intent MSJ 27–29. So, the parties never placed before the Court at summary judgment the specific preemption issue that Real Intent now raises post-trial—whether the Copyright Act preempts the Incorporation Breach—and the Court did not resolve that issue at summary judgment.

Even if the issue had been resolved, district courts may reevaluate arguments raised on summary judgment after trial. Unlike a pre-trial motion for summary judgment, a post-trial motion for judgment as a matter of law follows "a full presentation of the evidence" that can offer "new insights into the legal sufficiency of the evidence." *Gray v. Hudson*, 28 F.4th 87, 102–03 (9th Cir. 2022); *see also id.* at 103 ("While JMOL and summary judgment are procedurally similar, there is no rule preventing a trial judge from reconsidering her views on a case's merits."); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) (en banc).

After the Court's summary judgment ruling, the scope of the case changed, and Synopsys refined its theories of breach. At the time the Court first considered preemption, the Competitive Purposes Breach was still a live theory Synopsys was pursuing. And Synopsys relied on that theory to oppose preemption, arguing that "prohibited use of the licensed products for competitive purposes" implicates rights outside the scope of the Copyright Act because those uses "have nothing to do with reproduction, performance, distribution, or display." Synopsys Opp. to Real Intent MSJ 28. From Synopsys' perspective, the prohibition on competitive use of Design Vision "for purposes of modeling the behavior in Real Intent's tools" was an "extra element" sufficient to avoid preemption. *Id.* The Court agreed with and relied on argument when it found that there was no preemption at summary judgment.

At trial, though, Synopsys elected to proceed only on the Incorporation and DesignWare Breaches for which the Court had already found summary judgment in Synopsys' favor. Synopsys chose not to try its Competitive Purposes Breach. Accordingly, trial focused solely on

Case No.: 20-cv-02819-EJD
ORDER RE POST-TRIAL MOTIONS          7

three issues: the scope of the Incorporation Breach, lost profits for the Incorporation Breach, and unjust enrichment in the form of saved costs for the DesignWare Breach. During trial, Synopsys put on evidence supporting its theory of damages as to both breaches in addition to the scope of the Incorporation Breach. The presented evidence and arguments clarified and further developed Synopsys' legal theories. For example, prior to trial, Synopsys argued that Real Intent's use of Design Vision in testing and modifying Real Intent's products for purposes of modeling the behavior in Real Intent's tools would be a breach of the Agreements from which Synopsys would be entitled to damages. During trial, Synopsys made no such argument. Instead, it argued that copying from Design Vision, *and copying alone*, was a breach of the Agreements from which Synopsys should be awarded lost profits.

Put simply, Synopsys' breach of contract theory took shape at trial. Synopsys' theories of breach were fully developed at trial, and the Court now has the benefit of a more fulsome understanding of those theories than it did at summary judgment. Because, at summary judgment, Real Intent did not present the preemption argument it now puts forward, and because the evidence and testimony at trial presents a different record than the one at summary judgment, it is appropriate for the Court to consider Real Intent's post-trial preemption argument.[3]

### 2. Merits

The Court turns next to the merits of preemption. Real Intent argues that the Incorporation Breach is preempted by copyright because the sole legal basis for that breach was the "copying" of Design Vision, something that is obviously within the scope of the Copyright Act.

The Copyright Act specifically preempts "all legal or equitable rights that are equivalent to

---

[3] At hearing, counsel for Synopsys argued for the first time that Real Intent forfeited its ability to argue preemption at this stage because it never raised the preemption issue during the pre-trial proceedings. The Court declines to find forfeiture in this instance. *See Acasio v. Lucy*, No. 14-CV-04689-JSC, 2017 WL 1316537, at *10 (N.D. Cal. Apr. 10, 2017) (finding it "unfair and prejudicial to raise new arguments and authorities for the first time at oral argument"). Even if the forfeiture issue was fully briefed, the Court is not convinced it applies here. Synopsys has not stated if or how it would have changed course had Real Intent raised its preemption arguments in pre-trial proceedings. Moreover, Real Intent relies heavily on testimony and evidence presented at trial to support its preemption argument, so it is unclear if Real Intent would have had a basis for relief at the pre-trial stage.

Case No.: 20-cv-02819-EJD
ORDER RE POST-TRIAL MOTIONS       8

any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a). The Ninth Circuit has "adopted a two-part test to determine whether a state law claim is preempted by the Act." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 971 (9th Cir. 2024) (quoting *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006)). First, courts decide whether the subject matter of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. *Id.* (quotations omitted). Second, assuming it does, courts determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders. *Id.* "If a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act." *Altera Corp.*, 424 F.3d at 1089.

Here, both parties agree the first step is satisfied because the subject matter of the breach involves Synopsys' copyrighted works. *See* Synopsys Opp. 7–11, ECF No. 893-3 (arguing only the second step). As to the second step, the Ninth Circuit has "long recognized that a contractually-based claim generally possesses the extra element necessary to remove it from the ambit of the Copyright Act's express preemption provision." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 761 (9th Cir. 2015). That said, the Ninth Circuit has not held that contract claims are categorically excluded from Copyright Act preemption. *See MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 957 (9th Cir. 2010), *as amended on denial of reh'g*, 2011 WL 538748 (9th Cir. Feb. 17, 2011) (acknowledging that "the Copyright Act's preemption clause *usually* does not affect private contracts") (emphasis added).

Two cases guide the Court's decision here: *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, and *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928.

In *Altera*, the Ninth Circuit observed that "[m]ost courts have held that the Copyright Act does *not* preempt the enforcement of contractual rights." *Altera Corp.*, 424 F.3d at 1089 (emphasis in original). There, Altera filed suit against Clear Logic based on a permitted use provision in its software licensing agreement. The provision stated that customers may "use the Licensed Programs for the sole purpose of programming logic devices manufactured by Altera and

Case No.: 20-cv-02819-EJD
ORDER RE POST-TRIAL MOTIONS        9

sold by Altera or its authorized distributors." *Id.* at 1082. Altera asserted a tortious interference with contract claim because Clear Logic allegedly caused Altera customers to use software to create a bitstream and provide it to Clear Logic in violation of the use provision. The Ninth Circuit concluded that preemption did not apply to the tortious interference claim because "[t]he right at issue [was] not the reproduction of the software as Clear Logic argues, but is more appropriately characterized as the use of the bitstream." *Id.* at 1089. The Ninth Circuit found compelling other Circuits' decisions declining to preempt breach of contract claims where the license agreement restricted use of the copyrighted work. *See id.* (citing *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir.1996)).

After *Altera*, the Ninth Circuit again considered Copyright Act preemption of tortious inference with contract claims in *MDY*. The license provisions at issue there (the "anti-bot provisions") stated: "You agree that you will not . . . (ii) create or use cheats, bots, 'mods,' and/or hacks, or any other third-party software designed to modify the [video game] experience; or (iii) use any third-party software that intercepts, 'mines,' or otherwise collects information from or through the Program or Service." *MDY*, 629 F.3d at 938. Blizzard brought counterclaims against MDY for copyright infringement and tortious interference with contract based on the anti-bot provisions. The Ninth Circuit again declined to apply preemption to the tortious interference claims after evaluating the contractual rights at issue in *MDY*. The court reasoned that the specific anti-bot provisions Blizzard sought to enforce were "not equivalent to any of its exclusive rights of copyright" and therefore not preempted. *Id.* at 957. That is because a player who violates the anti-bot provision "does not thereby commit copyright infringement" since the player's use in creating a bot for cheating "does not alter or copy [the gaming] software." *Id.* at 941.

Although *MDY* did not find copyright preemption, it endorsed the type of provision-by-provision analysis of preemption that the Court is asked to engage in here, explaining that as part of a preemption analysis, courts should identify those provisions that "are grounded in [the] exclusive rights of copyright" and those "that are not." *Id.* at 940. Following its own direction, the *MDY* court considered the right implicated in each of the relevant license agreement's individual provisions rather than the agreement as a whole. It observed that one provision,

Case No.: 20-cv-02819-EJD
ORDER RE POST-TRIAL MOTIONS            10

1  unasserted by Blizzard, "forb[ade] creation of derivative works based on [the video game] without
2  Blizzard's consent." *Id.* A violation of that prohibition, the court explained, "would exceed the
3  scope of [the] license and violate one of Blizzard's exclusive rights under the Copyright Act." *Id.*
4  at 940–41. But *MDY* held that a violation of the asserted anti-bot provision would not "commit
5  copyright infringement" because the use governed by the anti-bot provision "d[id] not alter or
6  copy [the video game] software." *Id.* at 941.

7  With this guidance in mind, the question before the Court is whether Synopsys, in seeking
8  lost profits at trial, sought to enforce contractual rights that are—or are not—equivalent to any of
9  its exclusive rights of copyright. Put differently, the question is whether the Incorporation Breach
10 possessed an extra element necessary to remove it from the coverage of the Copyright Act.

11 In presenting its Incorporation Breach to the jury, Synopsys focused on the contractual
12 provision precluding Real Intent from "modify[ing], incorporat[ing] into or with other software, or
13 creat[ing] a derivative work of any part of" Design Vision. TX-079-5. The contractual right
14 embodied by that provision is equivalent to Synopsys' exclusive rights of copyright and is
15 therefore preempted by the Copyright Act. *See* 17 U.S.C. § 106 (exclusive rights under the
16 Copyright Act include the rights to reproduction, distribution, public display, public performance,
17 and creation of derivative works). Although other provisions of the parties' Agreements
18 implicated rights outside the scope of the Copyright Act (for instance, Real Intent does not try to
19 argue that copyright preempts the DesignWare Breach), it became clear during trial that the same
20 could not be said for the Incorporation Breach. Synopsys' own trial arguments, the jury
21 instructions, and the verdict form confirm that the basis for Synopsys' lost profits argument on the
22 Incorporation Breach was its claim that Real Intent copied Synopsys' commands.

23 During trial, Synopsys argued that the Incorporation Breach occurred when Real Intent
24 copied commands. Trial Tr. at 1695:3–1724:10, 1762:22–1773:20. Counsel for Synopsys
25 confirmed during arguments to the jury and to the Court that the damages it was seeking from the
26 Incorporation Breach centered on Real Intent's copying and covered "all the same conduct" as was
27 "alleged for copyright . . . the copying of the commands." *Id.* at 1627:11–15; 1695:3–1724:10,
28 1762:22–1773:20; *see also id.* at 1627:25–1628:3 (counsel for Synopsys stating that "[t]he

Case No.: 20-cv-02819-EJD
ORDER RE POST-TRIAL MOTIONS   11

copyright claim was that [Real Intent] copied certain commands and the breach of contract [is] that [Real Intent] copied certain commands"). In addition to attorney argument, Synopsys' witnesses confirmed that the Incorporation Breach concerned copying and copying alone. *See id.* at 498:1–4 (Synopsys representative explaining that this "case" is "about the copying of the Synopsys commands"). Dr. Stephen Edwards, Synopsys' technical expert, opined on the "commands, options, and attributes [] Real Intent cop[ied] from Design Vision" using trial exhibits showing the extent of copying. *Id.* at 757:24–25; *see also* TX339, TX341, and TX344. And Mr. Brian Napper, Synopsys' damages expert, offered an opinion regarding Synopsys' claim for lost profits from Real Intent's "copying and incorporating" of Synopsys command sets in breach of the Agreements. Trial Tr. 1060:23–24. For this, Mr. Napper relied on the same analysis prepared for his opinion regarding copyright infringement. ECF No. 606-3 at ¶¶ 135–36.

Additionally, the verdict form asked the jury to decide: "What amount of lost profits, if any, has Synopsys proven by a preponderance of the evidence that Synopsys would have earned but for *Real Intent's copying* of commands/options and attributes, with syntax, from Design Vision after April 2013." Verdict Form, ECF No. 800 (emphasis added). And the jury was instructed that Synopsys was seeking damages based on harm from Real Intent's *copying* of the commands. *See* Final Jury Instruction No. 12 ("Synopsys claims that it was harmed because Real Intent breached Section 3.2 of the in-Sync Agreements and Section 2.3 of the Synopsys Loan Agreement *by copying* commands/options, and attributes, with syntax, from Design Vision.") (emphasis added); Final Jury Instruction No. 13 ("Your determination of the harm resulting from Real Intent's breach should be limited to commands/options, and attributes, with syntax, *copied from Design Vision* after April 2013.") (emphasis added); Final Jury Instruction No. 14 ("In determining whether Synopsys was harmed by any breach of contract *caused by the copying* of commands/options and attributes, with syntax from Synopsys, you may only consider commands/options and attributes, with syntax that were *copied* from Design Vision after April 10, 2013.") (emphasis added).

As demonstrated by counsel's arguments, witness testimony, the jury instructions, and the verdict form, Synopsys sought lost profits based exclusively on a breach of contract grounded in

the *copying* of commands. The gravamen of the Incorporation Breach, as pursued at trial, was that Real Intent breached the Agreements by copying and distributing Synopsys' command sets. That is a violation of Synopsys' exclusive rights of copyright, meaning that the Incorporation Breach was substantively identical to Synopsys' rejected claim for copyright infringement. That being so, the Copyright Act preempts the Incorporation Breach.

Synopsys argues that preemption does not apply because the *use* of Design Vision, rather than the reproduction of the software, was an element of the parties' agreements, and this *use* is the "extra element" required to avoid preemption. Synopsys Opp. 8–9. Specifically, Synopsys contends that "[i]n order to incorporate Synopsys' commands, options, and attributes into [Real Intent's own products], Real Intent needed to test the commands and syntax in Design Vision, and model the behavior of those commands in their own products." *Id.* at 8. While it is true that courts have found certain contractual restrictions on use of software can supply the necessary "extra element" to avoid preemption, no such restrictions on use appear here. The jury was specifically instructed that testing and modeling behavior was *not* a basis for awarding damages: "Real Intent's use of Design Vision *for purposes other than copying* commands/options and attributes, with syntax, is *not prohibited* by the provisions of the [Agreements] at issue and is not a basis[,] standing alone[,] to find harm." Final Jury Instruction No. 15 (emphasis added). Thus, it cannot be that the use of Synopsys commands through testing those commands and modeling the behavior of those commands supplied the extra element—the jury was instructed to carve out that use (or any use other than copying) when awarding lost profits.

Although the Court reaches a different outcome on preemption than *Altera* and *MDY*, the preemption finding here aligns with the Ninth Circuit's analysis in those cases. In *Altera*, the Ninth Circuit explained that the "right at issue" underlying Altera's interference with contract claim was "not the reproduction of the software," but was "more appropriately characterized as the use of the bitstream." *Altera*, 424 F.3d at 1089. The "extra element" in that case that made the contract claim qualitatively different than the copyright infringement claim was the use of software by Altera's customers to create a bitstream and the providing of that resulting information to Clear Logic. Conversely, the "right at issue" in Synopsys' request for lost profits

based on the Incorporation Breach *was* the reproduction—the copying—of Synopsys' copyrighted commands into Real Intent's tools. Similarly, *MDY* found that there was no preemption when the contractual provision at issue "d[id] not alter or copy [the relevant] software," 629 F.3d at 941, unlike the provision underlying the Incorporation Breach here.

At hearing, counsel for Synopsys argued that "copying is the evidence of use" and that, when the parties referred to "copying" at trial, it was "shorthand for [] adopting behaviors of the tools at issue here." Hr'g Tr. 77:9–18, ECF No. 963. In Synopsys' view, "copying the behavior as part of incorporating the commands" is not "prohibited by copyright." *Id.* at 78:9–11. To the extent Synopsys means to argue that "incorporation" is an extra element of use that takes the Incorporation Breach outside the scope of the Copyright Act, the Court disagrees. There is little to no daylight between "incorporating" Synopsys' commands into Real Intent's products and "copying" those commands into the products. Put differently, the right as asserted during trial was not "qualitatively different from [one] protected under the Copyright Act." *Altera*, 424 F.3d at 1089. And copyright preemption is not so toothless that it can be avoided by simply using a synonym for copying. Fundamentally, Synopsys sought to protect its right to control copying of its copyrighted command sets. This right is coextensive with the exclusive right to control copying under the Copyright Act.

The trial record compels the conclusion that the sole legal basis for Synopsys' request for damages based on the Incorporation Breach was copying of commands. The Copyright Act preempts that theory. Accordingly, the jury's award of lost profits to Synopsys based on copying of Design Vision is hereby vacated, and the Court GRANTS Real Intent's JMOL on this issue.

### B. Foreseeability

Real Intent also asks the Court to find that Synopsys' claimed lost profits were not foreseeable as a matter of law. Because the Court vacates the jury's award of lost profits on preemption grounds, it does not reach Real Intent's arguments on foreseeability.

### C. Unjust Enrichment

Finally, Real Intent argues that (1) unjust enrichment is not an available remedy for Synopsys' DesignWare Breach; and (2) even if it were, Synopsys failed to prove that Real Intent

saved any research and development costs by accessing and using the DesignWare library. The Court disagrees on both grounds.

### 1.   Availability of Unjust Enrichment

First, the Court previously held that Synopsys was permitted to recover "the amount that defendants saved by [breaching the contracts], rather than developing or directly purchasing[] the technology," if it presented evidence that Real Intent avoided such costs by accessing and using DesignWare. ECF No. 687 at 17 (quoting *Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 971 (N.D. Cal. 2010)). Because "the breach of contract claim here involves use of confidential material—not dissimilar to a trade secret claim," Real Intent could not establish "that unjust enrichment for 'costs avoided' is improper as a matter of law under these circumstances." *Id.* Instead, the Court explained that, "[t]he appropriate course of action is to permit Synopsys to seek recovery in the form of 'costs avoided' for breach [by] accessing Synopsys' DesignWare Library." *Id.* In another pre-trial order, the Court explained that because "both Synopsys' claim and requested remedy [are] legal in nature, Synopsys has a right to a jury trial on its theory of avoided R&D costs." ECF No. 769 at 5; *see also id.* at 6 (noting that because the "jury and non-jury issues 'arise out of one set of facts,'" and because "the question of avoided R&D costs is an archetypical fact question of the kind that courts often send to the jury," the Court "would still send Synopsys' theory of avoided R&D costs to the jury even if Synopsys did not have a formal right to jury trial on that issue").

Nothing at trial or in Real Intent's briefing before the Court warrant a different decision on this issue. The Court declines to find as a matter of law that unjust enrichment is not an available remedy for the DesignWare Breach.

### 2.   Whether Synopsys Proved Damages

Real Intent argues that Synopsys "provided no trial evidence to support its assertion that Real Intent was unjustly enriched as a result of the limited breach related to the DesignWare Library." Mot. 17, ECF No. 858-1. The Court disagrees. The jury heard evidence regarding the R&D costs Real Intent avoided by accessing and using Synopsys' DesignWare Library instead of creating its own. For example, the jury heard testimony from Dr. Alex Tenca about the effort

involved in created Synopsys' DesignWare models. *See* Trial Tr. 592:14–16, 648:10–15 (testifying that his team member took "more than a year" of full-time work to develop one DesignWare model); *see also id.* at 599:10-600:22 (testifying that a "very extensive set of tests" needs to regularly be completed for each DesignWare component). The jury also heard evidence from Synopsys' technical expert, Dr. Stephen Edwards, that Real Intent's access to and use of the DesignWare Library likely saved "years of effort" to "arrive at what they did at the end." *Id.* at 838:1–5. As to the amount saved, Synopsys' damages expert, Mr. Brian Napper, testified that Real Intent's use of the library allowed it avoid approximately $1.875 million in R&D costs. *Id.* at 1089:8–11.

The Court finds that the jury's award for saved R&D costs is supported by substantial evidence and DENIES Real Intent's motion for judgment as a matter of law on this issue.

## IV.     REMAINING MOTIONS

Synopsys' motion for a new trial and Real Intent's equitable estoppel defense both concern only the jury's lost profits award based on the Incorporation Breach. *See* ECF No. 857 (requesting order vacating jury's lost profits damages award); ECF No. 845 at 1, n.1 ("Real Intent does not assert the defense of equitable estoppel as to the jury's award of $297,500 in 'unjust enrichment' for Synopsys' DesignWare [Breach]."). And Synopsys' motion for permanent injunction seeks relief based on the Incorporation Breach as well. *See* ECF No. 843. In light of the Court's preemption finding above, these motions and issues are moot.

## V.     CONCLUSION

For the foregoing reasons, Real Intent's motion for judgment as a matter of law is GRANTED IN PART. The jury's award of lost profits based on the Incorporation Breach is vacated as preempted by the Copyright Act. Real Intent's motion for judgment as a matter of law is otherwise DENIED.

Synopsys' motion for a permanent injunction and motion for a new trial, and Real Intent's equitable estoppel defense, are DENIED AS MOOT.

1  **IT IS SO ORDERED.**

2  Dated:  March 27, 2025

3

4  EDWARD J. DAVILA
United States District Judge

Case No.: 20-cv-02819-EJD
ORDER RE POST-TRIAL MOTIONS      17