**WILLKIE FARR & GALLAGHER LLP**
Krista S. Schwartz (Bar No. 303604)
  kschwartz@willkie.com
Barrington Dyer (Bar No. 264762)
  bdyer@willkie.com
Joshua D. Anderson (Bar No. 312836)
  jdanderson@willkie.com
Stephen Henrick (Bar No. 310539)
  shenrick@willkie.com
Jacob Karim (Bar No. 340376)
  jkarim@willkie.com
Christopher J. Lee (Bar No. 342055)
  clee3@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

**WILLKIE FARR & GALLAGHER LLP**
Shaimaa M. Hussein (*Pro Hac Vice*)
  shussein@willkie.com
Devon W. Edwards *(Pro Hac Vice)*
  dedwards@willkie.com
787 Seventh Ave.
New York, NY 10019
Telephone: (212) 728-8000

**WILLKIE FARR & GALLAGHER LLP**
Dane Sowers (*Pro Hac Vice*)
  dsowers@willkie.com
1875 K Street, N.W.
Washington, DC  20006
Tel: 202-303-1000

Attorneys for Plaintiff
SYNOPSYS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC.<br><br>                          Plaintiff,<br><br>     vs.<br><br>REAL INTENT, INC.<br><br>                          Defendant. | Case No. 5:20-cv-02819-EJD (SvK)<br><br>**NOTICE OF MOTION AND MOTION TO ALTER OR AMEND THE JUDGMENT**<br><br>Complaint Filed:  4/23/2020<br>Trial Date:         10/15/2024 |

## NOTICE OF MOTION AND HEARING

PLEASE TAKE NOTICE that on July 17, 2025, at 9:00 a.m., in the courtroom of the Honorable Edward J. Davila, located in Courtroom 4, 5th Floor of the San Jose Courthouse at 280 South First Street, San Jose, CA 95113, or as soon thereafter as counsel may be heard, Plaintiff Synopsys, Inc. ("Synopsys") will and hereby does move to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). This motion is based on the Memorandum of Points and Authorities herein and exhibits attached thereto; the pleadings and papers on file in this action, including the trial transcript and admitted exhibits; and such further argument and material as the Court may consider.

## RELIEF REQUESTED

Synopsys respectfully requests an order reinstating the jury's full damages award in this case with respect to Real Intent's breach of Section 3.1 of the in-Sync Agreements and Section 2.3 of the Synopsys Loan Agreement, and resolving the parties' remaining post-trial motions that were denied as moot.

i

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................1

II.  BACKGROUND .................................................................................................2

III.  LEGAL STANDARDS ........................................................................................5

IV.  ARGUMENT......................................................................................................6

    A.  Synopsys' Contract Claim Contained an "Extra Element," Avoiding Preemption .................................................................................................6

        1.  The Copyright Act Does Not Preempt All Copying........................7

        2.  Synopsys Consistently Showed at Trial that Real Intent's "Copying" Encompassed Behavior Not Protected by Copyright.......................9

        3.  No Jury Instruction Carved Out Incorporating Command Behavior ..........................................................................................11

    B.  This Court Should Amend the Judgment and Reinstate the Jury's Verdict to Prevent Manifest Injustice .........................................................................13

        1.  Synopsys Will Suffer Significant Prejudice from the Judgment Because Real Intent Forfeited its Preemption Defense...................13

        2.  The Court Cannot Retroactively Modify the Pretrial Order ...........16

        3.  The Prior Preemption Ruling Is "Law Of The Case" Even Absent Real Intent's Forfeiture of its Preemption Defense .......................18

V.  CONCLUSION..................................................................................................22

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005) ...............................................................................................7

*Byrd v. Guess*,
137 F.3d 1126 (9th Cir. 1998) .............................................................................................15

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ..................................................................................7

*Comput. Assocs. Int'l, Inc. v. Altai, Inc.*,
775 F. Supp. 544 (E.D.N.Y. 1991) .........................................................................................8

*Contreras v. City of Los Angeles*,
603 F. App'x 530 (9th Cir. 2015). ........................................................................................15

*El-Hakem v. BJY Inc.*,
415 F.3d 1068 (9th Cir. 2005) .............................................................................................15

*G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.*,
958 F.2d 896 (9th Cir. 1992). ................................................................................................7

*Gonzalez v. Arizona*,
677 F.3d 383 (9th Cir. 2012) (en banc) ...............................................................................19

*Google LLC v. Oracle Am., Inc.*,
593 U.S. 1 (2021)....................................................................................................................7

*Gray v. Hudson*,
28 F.4th 87 (9th Cir. 2022) ..................................................................................................18

*Gray v. Perry*,
No. 15-cv-5642-CAS, ECF No. 398 (Pretrial Order) (C.D. Cal. Jul. 1, 2019).....................18

*Ivie v. AstraZeneca Pharms.,LP*,
No. 21-35978, 2023 WL 3563007 (9th Cir. May 19, 2023)......................................15, 16, 17

*Kipling v. Flex Ltd.*,
No. 18-cv-2706-LHK, 2020 WL 7261314 (N.D. Cal. Dec. 10, 2020) ..................................19

*Malley v. San Jose Midtown Dev. LLC*,
No. 20-cv-1925-EJD, 2022 WL 90842 (N.D. Cal. Jan. 6, 2022) ............................................6

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010), *as amended* (Feb. 17, 2011).......................................................7

*Opperman v. Path, Inc.*,
84 F. Supp. 3d 962 (N.D. Cal. 2015) ......................................................................................8

*Peralta v. Dillard*,
744 F.3d 1076 (9th Cir. 2014) .............................................................................................18

*SAS v. Sawabeh Info. Servs. Co*,
  No. 11-cv-4147-MMM, 2015 WL 12763541 (C.D. Cal. June 22, 2015). ...............................21

*Sony Comput. Ent., Inc. v. Connectix Corp.*,
  203 F.3d 596 (9th Cir. 2000) .................................................................................................8

*U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*,
  89 F.4th 1126 (9th Cir. 2023) ...............................................................................................12

*United States v. First Nat. Bank of Circle*,
  652 F.2d 882 (9th Cir. 1981) ....................................................................................6, 15, 17

*United States v. Gartenlaub*,
  No. 22-55799, 2024 WL 4987258 (9th Cir. Dec. 5, 2024).....................................................19

*United States v. Olano*,
  507 U.S. 725 (1993)...............................................................................................................16

*Yan Fang Du v. Allstate Ins. Co.*,
  697 F.3d 753 (9th Cir. 2012) .................................................................................................12

**Statutes**

17 U.S.C. § 102(b) .......................................................................................................................8

17 U.S.C. § 106.............................................................................................................................7

17 U.S.C. § 301(a) ........................................................................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 59(e) ..........................................................................................5

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

After a two-week trial, the Court granted Real Intent's "procedurally atypical" motion for judgment as a matter of law that the Copyright Act preempts Synopsys' breach-of-contract claim for Real Intent's "incorporation breach."  (ECF No. 970, "Post-Trial Order," at 3, 5.)  Then the Court vacated the jury's award of lost profits on that breach and entered judgment. (*Id.* at 16.)  The judgment rests on manifest errors of law and fact because the Court held that the Copyright Act preempted a contract claim that has always involved Real Intent's wrongful *use* of Design Vision to study how Synopsys' commands work and then incorporate, among other things, the non-copyrightable functionality or behavior of those commands into Real Intent's products.  That use to mimic the behavior of Synopsys' commands provides the extra element necessary to avoid preemption, and Synopsys introduced ample evidence of it at trial.  Moreover, Real Intent's motion was not just "atypical"—it was procedurally improper.  At summary judgment, the Court decided that the incorporation breach was not preempted. (ECF No. 513, "MSJ Order," at 27–31.)  Even if Real Intent's motion "provided no occasion for the Court to parse preemption on a breach-by-breach basis" (Post-Trial Order at 6), Synopsys' motion for summary judgment of liability did provide such occasion because Synopsys argued for liability on a breach-by-breach basis (ECF No. 272-4 at 9–10) and Real Intent opposed it by arguing preemption on a breach-by-breach basis (ECF No. 321-2 at 11–13).  So, when the Court granted summary judgment of liability on the incorporation breach, it necessarily considered and rejected Real Intent's separate argument that the incorporation breach was preempted. (MSJ Order at 27–28.)  Real Intent accepted this decision and did not file a motion for reconsideration, thereby waiving its preemption defense as an issue for trial.  Synopsys respectfully submits that granting JMOL on a defense that the Court considered and rejected on summary judgment, where Real Intent did not include the defense in the pretrial order or raise at any point until after Synopsys had concluded its case-in-chief, constitutes reversible error.

The Court should amend the judgment to reinstate the jury's verdict on lost profits and should then address the remaining post-trial motions that it previously denied as moot.

- 1 -

## II.    BACKGROUND

Before trial, Real Intent filed a motion for summary judgment of preemption of Synopsys' claims for breach of contract.  (ECF No. 270-2.)  In opposing this motion, Synopsys argued the issue of preemption on a breach-by-breach basis, pointing to different "extra elements" for the different claims of breach.  (ECF No. 325-4 at 27–30.)  As to the incorporation breach, Synopsys argued the extra element was that "Real Intent used Design Vision in order to understand its behavior, and then tested and modified the behavior of Real Intent's own products so they would return the same output" in response to the copied commands.  (*Id*. at 28.)  In denying Real Intent's motion, the Court reasoned as follows:

> The license agreements here involved terms that Synopsys alleged were breached beyond a mere agreement to abstain from reproducing or distributing its copyright-protected material.  For example, Synopsys alleges that Real Intent used Design Vision to understand and model the behavior in Real Intent's tools.  This allegation of breach implicates rights outside the scope of the Copyright Act.

(MSJ Order at 25.)

Synopsys also filed its own motion for summary judgment of liability for breach of contract.  (ECF No. 272-4.)  In its motion, Synopsys argued each theory of breach separately.  (ECF No. 272-4 at 9–10 (incorporation breach), 10–12 (competitive purposes breach), and 12–13 (DesignWare breach.)  On the incorporation breach, Synopsys explained that its allegations included not only Real Intent's copying of copyright protected materials like the names and syntax of commands, but also its "use [of] Design Vision to 'reconcile the command set,'" which allowed Real Intent to adapt its products to mimic the functionality of the Synopsys commands.  (*Id*. at 1, 9–10.)  In opposition, Real Intent also argued preemption on a breach-by-breach basis.  (ECF No. 321-2 at 11–13.)  Real Intent specifically urged the Court to deny summary judgment of the incorporation breach as follows:

> First, Synopsys argues that Real Intent breached its contracts by "us[ing] Design Vision ... to incorporate into its own products the same commands, with their syntax that were part of Design Vision (and were also part of Design Compiler)." ... This claim … boils down to an assertion that Real Intent copied from Design Vision....  It is therefore preempted by the Copyright Act....  This preemption is further confirmed by the fact that Synopsys' contract and

copyright claims are based on the same conduct and disputed command-set elements.

(ECF No. 321-2 at 12.)

The Court granted summary judgment of Real Intent's liability for the incorporation breach and the DesignWare breach, but found that there were disputed issues of fact as to the competitive purposes breach. (MSJ Order at 27–31.)[1] Specifically, the Court held that Real Intent breached the incorporation provision of the parties' contracts by "copying commands and attributes, with syntax, from Design Vision into its own products." (*Id*. at 28–30.) The Court's reasoning for denying Real Intent's motion for preemption, namely finding an "extra element" because "Real Intent used Design Vision to understand and model the behavior in Real Intent's tools" (MSJ Order at 25), matches Synopsys' allegation concerning breach of the incorporation provision, namely that "Real Intent used Design Vision to 'reconcile the command set'" (ECF No. 272-4 at 9) and to mimic and incorporate the functionality of the Synopsys commands (*id*. at 1).

Apart from the contract claims, the Court also addressed Synopsys' copyright claims. It held that Real Intent's use was fair as a matter of law, then denied as moot remaining issues of copyrightability. (MSJ Order at 47, 49.) And the Court denied Real Intent's motion for summary judgment on preemption grounds, holding that Synopsys presented "breaches of the Agreements that are outside the scope of the Copyright Act" because they involved contractual requirements "beyond a mere agreement to abstain from reproducing or distributing [Synopsys'] copyright-protected material." (MSJ Order at 25–26.) Heading into trial, Synopsys elected to seek damages associated with only the two breaches for which the Court found Real Intent liable, and not on the third breach theory (competitive purposes). Accordingly, the jury was asked to determine only what, if any, damages Synopsys was entitled to for those two breaches. (ECF No. 628, "Jt. Pretrial Stmt.," at 4 ("Synopsys will demonstrate the extent of its harm as a result of these breaches by Real Intent"); ECF No. 800, "Verdict Form" (asking jury to decide damages only).) In connection with the first breach—Real Intent's "copying [of] commands/options and attributes" from Design Vision—Synopsys presented evidence at trial that Real Intent used Design Vision to determine what

---

[1] The Post-Trial Order does not implicate the DesignWare breach. (Post-Trial Order at 3.)

command names, command syntax and command behavior (*i.e.*, command functionality) it should incorporate from Design Vision into its own products. (ECF No. 893-3 at 5–6; Post-Trial Order at 13.)

In the lead-up to trial, Real Intent recognized Synopsys' theory as to the incorporation breach as being premised on Real Intent's "copying" of commands. For example, Real Intent's proposed jury instructions included references to "copying of commands and syntax" and "commands and syntax that were copied." (ECF No. 628-12, Proposed Instructions, at 38.) And Real Intent's counsel repeatedly represented this understanding to the Court during various pretrial hearings. (*See*, *e.g.*, ECF No. 651, "10/1 Hrg. Tr.," at 209:20–22 ("So the only theory of breach that is live, as I understand it, is that we copied commands and put them in our products in breach of the agreement."); *id.* at 216:11–12 ("If we copied it from Design Vision, that would be grounds for breach under Your Honor's [summary judgment] order."); ECF No. 686, "10/9 Hrg. Tr.," at 7:21–24 ("just copying Design Vision … is what's at issue with damages"); *see also* 10/1 Hrg. Tr. at 155:1–3, 189:25–190:3.)

Following a series of pre-trial hearings, the Court entered an order addressing the Design Vision commands that would be in dispute at trial. (ECF No. 707.) In that order, the Court recognized that the incorporation breach was premised on Real Intent's "copying [of] commands and attributes, with syntax, from Design Vision into its own products." (*Id.* at 1.) The Court also memorialized Real Intent's understanding "that the 'only theory of breach that is live' is that Real Intent 'copied commands and put them in [Real Intent's] products in breach of the agreement.'" (*Id.* at 2 (citation omitted)). In addition, the Court explained what Synopsys needed to prove at trial in order for a disputed command to be included in its damages case: "if Synopsys is able to show that the disputed commands were copied from Design Vision post-2013, that would show the disputed commands fall within the scope of Real Intent's breach and may be considered as part of Synopsys' damage case." (*Id.* at 4.)

Although Real Intent was aware that the focus at trial for the incorporation breach would be whether commands were "copied from Design Vision," it never once indicated that it would rely on a renewed preemption defense. It did not do so in: (1) the joint pretrial statement (ECF No. 628);

- 4 -

(2) its supplemental pretrial submissions (ECF Nos. 669, 701, 716); (3) the *three* pretrial hearings (ECF Nos. 651, 686, 718), including the October 9, 2024 hearing that specifically addressed the scope of Real Intent's breach of the incorporation clause (ECF No. 686); or (4) a response to the four pretrial orders issued by the Court *before* trial (ECF Nos. 687, 696, 707, 725).

Nonetheless, Real Intent moved for JMOL on preemption grounds after trial. (ECF No. 858 at 3–13.) The Court recognized that Real Intent's motion was "procedurally atypical," but the Court concluded that it could reach the preemption issue because "preemption was framed as an all-or-nothing matter on summary judgment." (Post-Trial Order at 5–6.) There, "Real Intent did not argue that the Court should, at a minimum, apply preemption to the Incorporation Breach even if preemption did not apply to other breaches. Nor did Real Intent attempt to press a breach-by-breach analysis of preemption through any motion for reconsideration or clarification." (Post-Trial Order at 6–7.) Now, however, after "Synopsys' breach of contract theory took shape at trial," the Court deemed it appropriate to consider preemption again because "the evidence and testimony at trial present[ed] a different record than the one at summary judgment." (Post-Trial Order at 8.)

On the merits, the Court held that Synopsys' "contractual right embodied by" the prohibition against "modifying [or] incorporating into or with other software" was "equivalent to Synopsys' exclusive rights of copyright" and therefore preempted. (Post-Trial Order at 11.) In the Court's view, Synopsys' claim for the incorporation breach boiled down to "copying and copying alone," with "incorporating" amounting to nothing more than a "synonym for copying." (Post-Trial Order at 12, 14.) Moreover, the Court instructed the jury to "carve out … any use other than copying" in awarding lost profits. (Post-Trial Order at 13.) Thus, the Court vacated the award of lost profits and entered judgment for Synopsys on unjust enrichment. (Post-Trial Order at 16.)

## III.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 59(e), a party may move to amend the judgment within twenty-eight days after entry of the judgment. There are four general bases for granting a motion under Rule 59(e): "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4)

if the amendment is justified by an intervening change in controlling law." *Malley v. San Jose Midtown Dev. LLC*, No. 20-cv-1925-EJD, 2022 WL 90842, at *2 (N.D. Cal. Jan. 6, 2022) (quoting *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011)).

The pretrial order governs the scope of the trial proceedings. "[W]here … the court departs substantially from the [pretrial] order to the prejudice of a party without exercise of its discretion informed by consideration of the relevant [Rule 16] factors, the judgment must be reversed." *United States v. First Nat. Bank of Circle*, 652 F.2d 882, 886–87 (9th Cir. 1981).

## IV.    ARGUMENT

The judgment should be amended because the Court's post-trial order regarding "copying" rests on a "manifest error[] of law or fact," and amendment is "necessary to prevent manifest injustice" to Synopsys. *See Malley*, 2022 WL 90842, at *2. ***First***, the order fails to account for the "extra element" of use, sufficient to avoid preemption, that was part of Synopsys' theory of breach throughout this litigation. Properly understood, Real Intent's "incorporation" breach necessarily involves using Design Vision to incorporate the behavior or functionality of Synopsys' commands, which does not have copyright protection. ***Second***, vacating the jury's verdict based on a defense to liability that Real Intent waited until the end of a damages-only trial to raise, without giving Synopsys the opportunity to alter its trial presentation, causes Synopsys manifest injustice.

### A.    Synopsys' Contract Claim Contained an "Extra Element," Avoiding Preemption

The judgment rests on a manifest error of law and/or fact, as it is based on the faulty conclusion that "incorporation" is synonymous with copyright infringement. (*Contra* Post-Trial Order at 14.) Although "incorporating" and "copying" might be synonyms in common parlance in some contexts, they are not synonymous with infringement for purposes of copyright law, and certainly not in the context of this case. Copyright law protects only certain types of expression; it does not protect, for example, the copying of functionality or behavior. Real Intent's misuse of Design Vision to "incorporat[e]" the behavior of Design Vision's commands, and not only the names and syntax of those commands, thus falls outside the scope of the Copyright Act and provides the "extra element" necessary to avoid preemption. Put differently, while incorporating the names

and syntax of Synopsys' commands into Real Intent's products would be copyright infringement, incorporating the commands' behavior is not.

### 1.    The Copyright Act Does Not Preempt All Copying

The Court and the parties agree on the standard for copyright preemption.  (*See* Post-Trial Order at 8–9.)  The Copyright Act preempts the assertion of rights that are "*equivalent* to any of the exclusive rights within the general scope of copyright."  17 U.S.C. § 301(a) (emphasis added).  It therefore does not preempt claims involving an "'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act."  *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1080 (9th Cir. 2005); *see also MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 940 (9th Cir. 2010), *as amended* (Feb. 17, 2011).  Even where that extra element is intertwined with the rights protected by copyright, the claim is not "equivalent" to exclusive rights under the Copyright Act.  In *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.*, for instance, the defendant copied a certificate and portions of a manual supplement that the plaintiff created (a copyrightable interest) and used those materials to obtain expedited approval from the FAA (a *non-copyrightable interest*).  958 F.2d 896, 899-900 (9th Cir. 1992).  The Ninth Circuit held that the claims were not preempted, because the defendant's misuse of the materials to expedite FAA approval "d[id] not interfere in any way with the operation of the copyright laws."  *Id.* at 904.

The relevant question, as this Court recognized, is therefore whether Synopsys "sought to enforce contractual rights that are—or are not—equivalent to any of its exclusive rights of copyright."  (Post-Trial Order at 11.)  The Post-Trial Order reasons that, because Synopsys' Incorporation-Breach claim urged "that Real Intent copied Synopsys' commands," this claim is "equivalent" to the reproduction right covered by 17 U.S.C. § 106.  (Post-Trial Order at 11.)  That cannot be reconciled with the law on "copying."

It is bedrock copyright law that "[n]ot all copying ... is copyright infringement."  *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1034–35 (N.D. Cal. 2018) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  Copyright law protects only copyrightable material; it gives the holder a right to a specific creative expression.  *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 17–18 (2021).  Critically, copyright law does not "extend to any idea," behavior,

or functionality. *See* 17 U.S.C. § 102(b). "[I]deas and functions" in software are unprotected. *Sony Comput. Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 602 (9th Cir. 2000); *see Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 775 F. Supp. 544, 560 (E.D.N.Y. 1991), *aff'd in relevant part*, 982 F.2d 693 (2d Cir. 1992) ("the behavior aspect of a computer program … may be excluded by statute from copyright protection"). Copying behaviors of software—by, for example, incorporating them into a different software product—is not copyright infringement.

Real Intent's insistence that "the Incorporation Breach is preempted by copyright because the sole legal basis for that breach was the 'copying' of Design Vision" (Post-Trial Order at 8), therefore misses the mark. "Copying" is not synonymous with infringement in copyright law. Nor are the terms always synonymous even in common speech. *See Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 989 (N.D. Cal. 2015) (declining to apply preemption because parties' use of the copying terms "misuse" and "misappropriate" "convey[ed] meanings beyond mere 'reproduction.'"). That broader, common meaning is what the parties and the Court gave to "copying" here, where no copyright claims remained in the case after summary judgment and there was no reason to treat "copying" as a term of art. So when the Court ordered that Synopsys needed to prove that certain "disputed commands were copied" in order for those commands to be included in a damages award, Synopsys demonstrated that Real Intent improperly incorporated the functionality underlying its commands (as discussed below). (*See*, *e.g.*, ECF No. 707 at 4.) Indeed, Synopsys consistently used "copying" as shorthand for *all* of Real Intent's illicit conduct. (ECF No. 963 at 69:11–14, 77:16–18, 78:20–23; *see also* 10/9 Hrg. Tr. at 27:17–20 ("they are continuing to incorporate Design Vision material for commands that maybe they first copied prior to 2013"); *id.* at 28:11–14 ("the issue here is what was incorporated into the post-2013 versions" of Real Intent's products).)

The names and syntax of Synopsys' commands are protected by copyright, but the behavior or functionality of the commands is not. Real Intent copied the functionality too. So its copying of

that behavior provides the "extra element" that takes Synopsys' claim outside the scope of copyright and squarely into the territory of actionable breach.[2]

### 2.    Synopsys Consistently Showed at Trial that Real Intent's "Copying" Encompassed Behavior Not Protected by Copyright

As the Court's order recognizes, Real Intent not only incorporated the names and syntax of various Synopsys commands, but also used Synopsys' Design Vision product to figure out how those commands *behaved*. (*See* Post-Trial Order at 13.) Simply copying the names and syntax of commands does not automatically copy associated behaviors; a given name or syntax can perform any behavior that a programmer assigns it. But as the Court has noted, Real Intent's employees specifically sought to make sure that its tools yielded the same behaviors for commands as do Synopsys' tools. (*E.g.*, MSJ Order at 35.) Real Intent deliberately mimicked the behavior—*i.e.*, it took, **copied and incorporated that behavior**—in its own products. This incorporation of the commands' behavior was part of Real Intent's breach of the parties' contracts, which prohibited Real Intent from "incorporat[ing] … **any part** of the Synopsys Licensed Product," *i.e.*, Design Vision. (*See*, *e.g.*, TX-083-5 § 3.2(iii) (emphasis added).) The incorporation breach, in other words, turns in significant part on incorporating non-copyrightable behavior—a contractual prohibition squarely "outside the scope of the Copyright Act." (Post-Trial Order at 11.)

The record leaves no doubt that Real Intent incorporated the functional behavior of Synopsys' commands. For example, the evidence showed that Real Intent used Design Vision as the "gold standard" for how the copied commands should behave and "mimic[ked]" that behavior in its own tools. (ECF No. 734-4, "Kowalski Depo Tr.," at 120:12–15, 120:18–19; ECF Nos. 811–21, "Trial Tr.," at 793:12–15 (Edwards).) But the evidence did not end there.

---

[2] Addressing preemption "provision-by-provision" rather than wholesale (Post-Trial Order at 10), therefore, does not change the analysis because the incorporation breach itself turns on copying of non-copyrightable behavior.

The jury also heard testimony from various witnesses explaining that one aspect of a command is its behavior. For example, Sandra Ma, a Synopsys engineer, explained that commands not only have syntax, but also behavior:

> "Okay. So I have three commands here that I've shown. And first off, you can see that they're all very similar, where there is a command followed by an option, and each of those options have a dash in the front, and then there's sort of descriptions.… So this is, you know, sort of an example of … first off, what are the examples of commands, one of our examples of options, and how does the syntax work. And you can see that **each of** [these] **three commands have very similar behavior**."

(Trial Tr. at 672:18–673:3 (Ma) (emphasis added).) Synopsys' expert, Dr. Stephen Edwards, emphasized that "the whole point" of using an option with a command is to "change the behavior of the command." (*Id.* at 893:11–12 (Edwards).) Real Intent's CEO, Dr. Prakash Narain, confirmed that commands "are used to control the behavior of the tool to get the verification job done." (*Id.* at 1263:9–12 (Narain).) And Vikas Sachdeva, a Real Intent engineer, testified that Real Intent would "modify the behavior" of certain commands even after they were first added into Real Intent's products. (*Id.* at 1362:16–1363:1, 1368:14–15, 1390:11–18 (Sachdeva).) Put another way, the reason that Real Intent copied Synopsys' proprietary command/option pairs was to be able to "change the behavior of the command" in order to mimic Design Vision for its customers' benefit. (*See id.* at 892:19–893:18 (Edwards).) In fact, Real Intent often modified the behavior of commands after they were initially added to its tools—and copied the Design Vision behavior to do so. (*See, e.g., id.* at 1362:16–1363:1, 1368:14–15, 1390:11–18 (Sachdeva); TX-419 at 2–3; TX-483-2.)

Moreover, Real Intent's own documents confirmed that it used Design Vision for precisely this purpose: copying its behavior so that Real Intent's tools would behave "consistent with [Design Vision]." (TX-419-3.) For example, one Real Intent document shows that it viewed Design Vision as the "golden standard" for implementing commands. (TX-483 at 2–3 ("Design Vision was going to be our golden standard going forward.").) And testimony from multiple witnesses, including Real Intent's employees, similarly illustrated that Real Intent used Design Vision to be able to "mimic" the behavior of Synopsys' commands. (*See, e.g.*, Trial Tr. at 793:12–15 (Edwards) ("If you want to mimic the behavior of something, a program that embodies that behavior is a much

more useful thing to gather information from than a printed document….”); ECF No. 734-1, “Boucher Depo Tr.,” at 189:19–189:24, 190:1, 226:16–226:25, 227:2–227:3 (explaining how Real Intent used Design Vision to incorporate commands); Kowalski Depo Tr. at 120:12–15, 120:18–19 (discussing what it meant for Design Vision to be the “gold standard”).)  Dr. Edwards summarized this conduct succinctly:  Real Intent used Design Vision as the “gold standard,” meaning Real Intent used it as “a reference” and “everything ha[d] to match up with what Design Vision is doing.”  (Trial Tr. at 809:15–18 (Edwards); *see also id.* at 793:12–15 (Edwards).)

The Post-Trial Order emphasized a comment Synopsys’ counsel made during trial that Real Intent’s breach “covered ‘all the same conduct’ as was ‘alleged for copyright.’”  (Post-Trial Order at 11 (quoting Trial Tr. at 1627:11–15).)  This stray statement during a side-bar did not concede that Synopsys’ contract claim is preempted or discard the ample evidence demonstrating Real Intent’s illicit use of Design Vision.  Synopsys’ counsel merely indicated that the copyright and contract claims overlapped to some extent, in order to explain why it was relevant to ask Real Intent’s expert a question about the copyright section of her report.  (Trial Tr. at 1626:9–1627:21.)

In short, while the parties and the Court repeatedly used the term “copying” to refer to Real Intent’s misconduct, that “copying” included the incorporation of more than just copyright-protectible material from Design Vision.  Real Intent also ***used*** Design Vision to copy the non-protectible functionality or behavior of Synopsys’ commands.  Copyright preemption does not extend to that breach.

### 3.    No Jury Instruction Carved Out Incorporating Command Behavior

The only other basis for the preemption holding largely depends on a misinterpretation of Jury Instruction No. 15, which states:

> Real Intent’s use of Design Vision for purposes other than copying commands/options and attributes, with syntax, is not prohibited by the provisions of the [in-Sync Agreements and the Synopsys Loan] Agreements at issue and is not a basis, standing alone, to find harm.

(*See* Post-Trial Order at 13 (discussing Jury Instruction No. 15).)

The Post-Trial Order misreads this language to mean that “[t]he jury was specifically instructed that testing and modeling behavior was *not* a basis for awarding damages.”  (Post-Trial

Order at 13 (emphasis in original)). Synopsys respectfully submits that this interpretation is plainly incorrect. As a preliminary matter, the instruction's language nowhere mentions "testing and modeling behavior." Perhaps the Post-Trial Order reads "testing and modeling behavior" as one of many different possible "use[s] of Design Vision." But the instruction clearly contemplates that not all "use[s] of Design Vision" are "for purposes other than copying commands/options and attributes, with syntax." As explained above, Real Intent used Design Vision precisely in order to copy its commands, including their behavior: Design Vision provided the "golden standard" for how Real Intent's tools should behave, and Real Intent studied Design Vision to make sure that the copied commands behaved in the same way in its own tools.

As a matter of grammar and logic, Jury Instruction No. 15 literally and explicitly informed the jury that "Real Intent's use of Design Vision for purposes [of] … copying commands/options and attributes, with syntax" is "prohibited by the provisions of the in-Sync Agreements and the Synopsys Loan Agreement at issue" and provides a "basis … to find harm." So, the jury was instructed that if it were to find and credit evidence that Real Intent engaged in a "use of Design Vision" for the purpose of copying Synopsys' proprietary commands/options and attributes, with syntax—***including the commands' behavior***—then the jury would be free to consider that particular "use" as a "basis … to find harm." And there is nothing in Jury Instruction No. 15, or any other instruction, to suggest that "use" of this type could not comprise "testing and modeling behavior" of Design Vision.

And if the language of Jury Instruction No. 15 meant that no form of "testing and modeling behavior" could provide a "basis … to find harm," it would be erroneous because there is no evidentiary record to support such an instruction. *See Yan Fang Du v. Allstate Ins. Co.*, 697 F.3d 753, 757 (9th Cir. 2012) ("there must be a sufficient evidentiary foundation to support giving the instruction"); *U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1136 (9th Cir. 2023) (it is "settled law" that it is erroneous "to give an instruction when there is no evidence in the case to support the theory of fact which it assumes") (citation omitted). Real Intent offered no argument—let alone evidence—that its use of Design Vision for "testing and modeling behavior" could not provide a basis to find harm.

As explained above, Synopsys presented substantial evidence at trial that Real Intent indeed used Design Vision by testing and modeling the behavior of the commands/options and attributes, with syntax, that it copied from Design Vision after April 2013.  And in reaching a verdict in Synopsys' favor, the jury fairly credited this evidence of use in order to determine the harm that Synopsys suffered.

**B.      This Court Should Amend the Judgment and Reinstate the Jury's Verdict to Prevent Manifest Injustice**

Even if this Court could not resolve the preemption argument on the current record, it should reinstate the jury's verdict and address the merits of the mooted motions to prevent manifest injustice.  To start, Real Intent forfeited a preemption defense to Synopsys' incorporation-based claim by failing to raise that defense in the pretrial statement, which defines the scope of the issues in the case and provides critical notice to Synopsys, and by failing to raise preemption at any number of other pretrial opportunities.  That forfeiture deprived Synopsys of the chance to adjust its trial presentation with evidence aimed at overcoming the preemption defense.  (*Infra* § B.1.)  The Court cannot now retroactively fix Real Intent's oversight.  (*Infra* § B.2.)  And even if this Court could excuse Real Intent's forfeiture, it would be manifestly unjust for the Court to do so here, where Real Intent's preemption defense conflicts with the summary-judgment decision and the law of the case. (*Infra* § B.3.)

**1.      Synopsys Will Suffer Significant Prejudice from the Judgment Because Real Intent Forfeited its Preemption Defense**

Synopsys will suffer significant prejudice if the judgment remains unaltered because Real Intent did not include that defense in the pretrial statement—a conclusion reinforced by Real Intent's consistent silence on this issue throughout its pretrial briefing.  Instead, Real Intent waited until after Synopsys' case-in-chief to try and resurrect preemption.  That ambush denied Synopsys notice that preemption was still at issue and the opportunity to develop significant responsive evidence.

By the time of trial, the issues remaining in this case were narrow—namely, damages— because liability had been resolved at summary judgment.  Synopsys and Real Intent both moved for summary judgment on Synopsys' breach-of-contract claim:  Synopsys argued that, as a matter

of law, it was entitled to judgment on each of its three breach theories (incorporation, competitive purposes, and use of an unlicensed product); Real Intent asserted that preemption entitled it to judgment as a matter of law on Synopsys' breach-of-contract claim, on all three underlying breach theories. (MSJ Order at 24–32.)

The Court began by rejecting Real Intent's preemption defense. (MSJ Order at 24–26.) The Court summarized the "three ways" that Synopsys alleged Real Intent breached and "decline[d] to find that Synopsys' breach of contract claim" was preempted. (MSJ Order at 24–25.) Synopsys reasonably understood the Court's rejection of the preemption defense to be a rejection as to each breach. Not only did the Court and the parties address each breach individually in their breach of contract analyses, but Real Intent also clearly distinguished between each breach in its preemption analysis (ECF No. 270-2 at 28–30), and Synopsys opposed preemption in a similarly tailored fashion (ECF No. 325-4 at 27–30).

The Court then addressed Synopsys' breach-of-contract arguments. The Court held that Synopsys was entitled to summary judgment that Real Intent breached its agreements based on by "incorporating" Synopsys' "commands into its products." (MSJ Order at 27.) By "us[ing] the disputed command sets to replicate the same function from Synopsys' product in Real Intent's product" (*id.* at 34–35), Real Intent breached various agreements. The Court also held that Synopsys was entitled to summary judgment on another breach theory, that Real Intent breached its agreements by "accessing and using the DesignWare Library," which was not a licensed product. (MSJ Order at 30.) The Court did not grant summary judgment, however, on Synopsys' breach theory based on competitive purposes because it found a material dispute of fact. (*Id.*)

After the summary judgment decision, Synopsys indicated that it would no longer pursue its competitive purposes breach theory. Thus, liability was a settled issue for trial, and the only open question was damages.

The parties and the Court all seemed to agree on this conclusion. For example, in the pretrial statement, Synopsys indicated that it was proceeding to trial seeking damages for the Incorporation Breach and the DesignWare breach for which the Court had already found Real Intent liable. (Jt. Pretrial Stmt. at 4.) And in hearings just days before trial, the Court similarly described this trial as

- 14 -

a "damages only trial," to which no party objected.  (*See*, *e.g.*, ECF No. 718 ("10/11 Hrg. Tr.") at 4:8–9; *id.* at 4:9–10 ("anything about breach of contract … has been resolved").)

Although Real Intent was fully aware that Synopsys' claim was based on Real Intent's breach of the incorporation clause, Real Intent did not include its preemption defense in the joint pretrial statement.  (ECF No. 628.)  That forfeiture meant that Real Intent gave up preemption as a defense for trial.

The Ninth Circuit has consistently held that a party may not "offer evidence or advance theories at the trial which are not included in the [pretrial] order or which contradict its terms." *First Nat'l Bank*, 652 F.2d at 886; *see also El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005). For example, in *Ivie v. AstraZeneca Pharms. LP*, the defendant raised a specific defense to the plaintiff's claims for the first time in "its initial JMOL motion brought at the close of [the plaintiff's] case."  No. 21-35978, 2023 WL 3563007, at *1 (9th Cir. May 19, 2023), *cert. denied*, 144 S. Ct. 495 (2023).  Because "[a] defendant must enumerate its defenses in a pretrial order even if the plaintiff has the burden of proof" and the defendant there had "failed to include the [relevant] defense in the pretrial order," the Ninth Circuit reversed the district court's grant of JMOL.  *Id.* at *1–2 (quoting *El-Hakem*, 415 F.3d at 1077).  Similarly, in *Contreras v. City of Los Angeles*, the defendants "argued for the first time … in a post-liability-verdict motion" that the plaintiff's claim was barred by the statute of limitations.  603 F. App'x 530, 532 (9th Cir. 2015).  By "not includ[ing] the statute of limitations as a defense that they would pursue in the pretrial order," the defendants "waived this defense."  *Id.* (citing *First Nat'l Bank*, 652 F.2d at 886); *see also Byrd v. Guess*, 137 F.3d 1126, 1133 (9th Cir. 1998) (finding that the defendants would face a "manifest injustice" if the plaintiff could amend the pretrial order "to add … claims that were not specifically mentioned in the pretrial order and were not addressed in any way during the trial").  The requirement that parties disclose the theories they intend to pursue in the pretrial statement is important:  such disclosure is necessary to avoid "trial by ambush" and to encourage "timely preparation by the parties for trial." *First Nat'l Bank*, 652 F.2d at 886.

Not only did Real Intent omit its preemption defense from the pretrial statement, but it also repeatedly failed to mention that defense at numerous pretrial opportunities.  That consistent failure

- 15 -

to raise preemption further reinforces Real Intent's forfeiture. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("forfeiture is the failure to make the timely assertion of a right"). In particular, Real Intent never raised preemption: (1) in any of its supplemental pretrial submissions (ECF Nos. 669, 701, 716); (2) in any of the *three* pretrial hearings (ECF Nos. 651, 686, 718), including the October 9, 2024 hearing that specifically addressed the scope of Real Intent's breach of the "incorporation" clause (ECF No. 686); or (3) in any response to the four pretrial orders that the Court issued before trial (ECF Nos. 696, 687, 707, 725). And when the Court's pretrial order did not include preemption as a live defense (ECF No. 687), Real Intent never moved the Court to modify the pretrial order to include it. Real Intent's silence on preemption is laid bare most obviously in its opposition to Synopsys' supplemental motion *in limine* to exclude evidence of "fair use" and other "defenses to breach of contract that the Court already resolved in its summary judgment order." (ECF No. 711 at 1.) In response, Real Intent represented that it would not argue fair use, but it remained silent on the subject of preemption. (*See generally* ECF No. 716.) The Court, understanding that the issue was resolved by Real Intent's representation, denied the motion as moot. (ECF No. 725 at 3.) The first time Real Intent raised preemption was in its Rule 50(a) motion, *i.e.*, **after** Synopsys' case-in-chief. (ECF No. 793-1 at 11.) Of course, Synopsys, believing that preemption had been resolved on summary judgment given Real Intent's consistent silence, had not developed responsive evidence at trial and had lost the opportunity to do so.

In short, Real Intent forfeited its preemption defense. Ninth Circuit precedent makes plain that any issue not preserved in the pretrial statement—like preemption here—is forfeited. On top of that, Real Intent repeatedly failed to "timely assert[]" its preemption defense. The preemption defense is thus unavailable as a basis for resolving the parties' claims after trial, and the Court's judgment, which rests on that defense, cannot stand without manifest injustice to Synopsys.

### 2.    The Court Cannot Retroactively Modify the Pretrial Order

Even if the Court were inclined to overlook Real Intent's forfeiture, the Court may not retroactively modify the pretrial order to include Real Intent's preemption defense. In fact, *Ivie* involved that precise situation. There, the Ninth Circuit rejected the proposition that the pretrial order can be modified at the time of JMOL, because the law requires that "a district court must

'first' modify a pretrial order *before* entertaining the presentation of theories outside the scope of that order." *Ivie*, 2023 WL 3563007, at *2 (quoting *First Nat'l Bank*, 652 F.2d at 886–87 (emphasis added)).  Modifying the pretrial order "*after* trial" would "deny[] [plaintiff] any opportunity to alter her trial presentation based on that retroactive modification."  *Id.* (emphasis in original).  So too here.[3]

Although the Post-Trial Order says that "Synopsys has not stated if or how it would have changed course had Real Intent raised its preemption arguments in pre-trial proceedings" (Post-Trial Order at 8 n.3), the suggestion that Synopsys should have made such a showing was raised for the first time in that order.  It was not raised, for example, in Real Intent's briefing on its JMOL motion. (*See generally* ECF Nos. 858-1, 948-2.)  However, Synopsys certainly would have altered its trial presentation had it been on notice that Real Intent would raise a preemption defense following trial.  For example, as shown in Synopsys' Proffer, submitted herewith, Synopsys would have presented evidence detailing and explaining how:  (1) Real Intent used Design Vision to figure out—and copy—the behavior of the Design Vision commands; (2) commands include not only names and syntax, but also behavior; and (3) copying the behavior of a software application differs from simply copying the name of a command from a document.  Among other things, Synopsys would have had Dr. Edwards testify (consistent with his reports) that Real Intent "used Design Vision to ensure that Real Intent's tool would not only accept the same command and syntax as Synopsys' tools but also return the output and exhibit the same behavior as Synopsys' tools." (Ex. A, "Proffer," at 2.)  Likewise, Dr. Edwards would have told the jury that there is a difference

---

[3] In addition, modifying the pretrial order requires considering four factors: (1) the degree of prejudice to the defendant resulting from a failure to modify; (2) the degree of prejudice to plaintiff from a modification; (3) the impact of a modification at that stage of the litigation on the orderly and efficient conduct of the case; and (4) the degree of willfulness, bad faith or inexcusable neglect on the part of the defendant.  *First Nat'l Bank*, 652 F.2d at 887.  Those factors have not been addressed in this case, and the Rule 16 factors do not weigh in favor of amendment, particularly given "the degree of prejudice" to Synopsys.  *See id.*

"between a command's name/syntax and its functionality." (Proffer at 1.) Synopsys also would have approached jury instructions differently had notice been given and would have requested a special verdict on the subsidiary factual issues undergirding preemption. Ultimately, Synopsys' trial presentation would have addressed more deliberately the difference between "incorporation" and copyright infringement had the necessary notice been given. But the Post-Trial Order unjustly denied Synopsys the opportunity to make these decisions.

To be sure, "there is no rule preventing a trial judge from reconsidering her views on a case's merits," as the Court points out. (Post-Trial Order at 7 (quoting *Gray v. Hudson*, 28 F.4th 87, 102–03 (9th Cir. 2022).) However, that proposition rests on an assumption that the matters being reconsidered have been properly preserved—which is not the case here. Indeed, in *Gray*, the defendant disclosed its "extrinsic similarity" defense, on which JMOL was granted, in the pretrial order. *Gray v. Perry*, No. 15-cv-5642-CAS, ECF No. 398 (Pretrial Order) at 6 (C.D. Cal. Jul. 1, 2019). Unlike here, the plaintiff in *Gray* had notice of the relevant defense, and the district court's grant of JMOL conformed with the pretrial order. Thus, the Post-Trial Order wrongly concludes the Court was free to "reevaluate [the preemption] arguments raised on summary judgment after trial." (Post-Trial Order at 7 (citing *Gray*, 28 F.4th at 102–03 and *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014)). In *Gray* and *Peralta*, unlike here, the issues reconsidered in post-trial motions were issues litigated at trial.

**3.    The Prior Preemption Ruling Is "Law Of The Case" Even Absent Real Intent's Forfeiture of its Preemption Defense**

Even if Real Intent had not forfeited preemption, the Court's summary-judgment ruling, which found breach on the incorporation theory and rejected Real Intent's preemption defense, is the "law of the case" and cannot be reconsidered absent very limited circumstances. The Post-Trial Order is simply incorrect in suggesting "the parties never placed before the Court at summary judgment the specific preemption issue that Real Intent now raises post-trial—whether the Copyright Act preempts the Incorporation Breach—and the Court did not resolve that issue at summary judgment." (Post-Trial Order at 7.) Even if **Real Intent's motion** for summary judgment "provided no occasion for the Court to parse preemption on a breach-by-breach basis" (Post-Trial

Order at 6), **Synopsys' motion** did provide such occasion as Synopsys argued for liability on a breach-by-breach basis (ECF No. 272-4 at 9–10) and Real Intent opposed by arguing preemption on a breach-by-breach basis (ECF No. 321-2 at 11–13). In its opposition, Real Intent only offered one argument for why it should not be found liable for the incorporation breach: that the claim is preempted by the copyright act. (ECF No. 321-2 at 11–12.) To grant summary judgment of liability on the "incorporation" breach, as the Court did, it necessarily had to consider and reject Real Intent's preemption defense. (MSJ Order at 27–28 ("Synopsys has met its burden to show Real Intent breached" the incorporation clause).)

Only three exceptions merit revisiting a prior determination: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (citation omitted). The Ninth Circuit's decision in *United States v. Gartenlaub* confirmed that "the law of the case doctrine has only three exceptions," full stop. No. 22-55799, 2024 WL 4987258, at *1, n.2 (9th Cir. Dec. 5, 2024).[4] Outside of those three limited circumstances, "[t]he law of the case bars reconsideration." *Kipling v. Flex Ltd.*, No. 18-cv-2706-LHK, 2020 WL 7261314, at *9 (N.D. Cal. Dec. 10, 2020). None of the three exceptions apply here.

First, the Court's summary judgment order was not erroneous, and even if it were, in light of the jury's verdict, no manifest injustice would result from its enforcement. Indeed, the opposite is true. At summary judgment, the Court dismissed Synopsys' copyright claims based on Real Intent's fair-use defense. (MSJ Order at 33.) A significant portion of the Court's fair-use analysis turned on the Court's determination that much of what Real Intent copied was functional. For

---

[4] Although Real Intent argued in the Rule 50(b) briefing that *Gonzalez* does not control, Real Intent is mistaken. (ECF No. 948-2 at 5.) In *Gartenlaub*, when "the district court and government relied on a five-exception test," the Ninth Circuit reiterated that the "en banc court ... has consistently identified only three exceptions, and has treated the 'manifest injustice' and 'clearly erroneous' inquiries as two parts of the same exception." 2024 WL 4987258, at *1, n.2.

example, when considering Factor 2 (the nature of the copyrighted work), the Court held that "the command sets themselves are … further from the core of copyright" because the command sets at issue are too functional.  (*Id.* at 41.)  The Court found that the command sets do not embody the "creative expression" at the heart of copyright, but rather, are more function, defining how "a user can control the tool's behavior and describe to the tool certain properties of the user's circuit design."  (*Id.*)  If the judgment stands, the Court has effectively held that Synopsys' command sets are too functional to receive copyright protection and yet also unable to be protected by contract because of copyright preemption.  The injustice there could not be clearer.

Second, no intervening controlling authority justifies reconsidering the preemption ruling from summary judgment.

Third, no substantially different evidence was adduced at trial to warrant a do-over on preemption.  Again, everyone agreed that this was a damages-only trial.  So the trial evidence focused on harm and damages, not breach.  Jurors were instructed only to find the "harm" caused by Real Intent's breaches.[5]

In the Post-Trial Order, the Court suggests that it is appropriate to revisit the Court's determination on summary judgment because "Synopsys' breach of contract theory took shape at trial," and "the evidence and testimony at trial presents a different record than the one at summary judgment."  (Post-Trial Order at 8.)  Not so.  Before, during, and after trial, Synopsys consistently alleged that Real Intent's breach of the "incorporation" provision included its use of Design Vision

---

[5] Jurors were asked only to find the "harm" caused by Real Intent's breaches, not whether a breach occurred.  (Final Jury Instruction No. 11 ("Synopsys … has been harmed by any breach of contract"); Final Instruction No. 12 ("… how much money will reasonably compensate Synopsys for the harm"); Final Instruction No. 13 ("Your determination of the harm"); Final Jury Instruction No. 14 ("In determining whether Synopsys was harmed"); Final Jury Instruction No. 15 ("to find harm").)  Likewise, the sole defense jurors were instructed on concerned "mitigation of damages." (Final Instruction No. 18.)  Accordingly, the verdict form asked jurors only to assign a dollar value to the harm that Real Intent caused.  (ECF No. 800.)

in order to uncover and copy the behavior of the Design Vision commands.  And the Court specifically echoed this conduct in its reasoning for denying Real Intent's motion for summary judgment of preemption, finding an "extra element" in the allegation that "Real Intent used Design Vision to understand and model the behavior in Real Intent's tools."  (MSJ Order at 25.)

Finally, Synopsys' choice to proceed on only two of the three available theories of breach did not lead to the development of "substantially different evidence."  On this point, *SAS v. Sawabeh Info. Servs. Co.* is instructive.  No. 11-cv-4147-MMM, 2015 WL 12763541 (C.D. Cal. June 22, 2015).  In *SAS*, the defendant urged the court to revisit its prior ruling when the plaintiff elected to pursue fewer than all of its theories at trial.  *Id*. at *11.  In particular, after the plaintiff chose to try only statutory damages even though it had other viable damages theories, the defendant urged the court to reconsider its prior decision that the case was 'exceptional,' entitling the plaintiff to attorney's fees if damages were proven.  *Id.*  The court declined to do so.  Applying the law-of-the-case doctrine, the court held that the plaintiff's election to pursue one damages theory over the other did not justify departing from its prior decision.  *Id.*  Similarly, Synopsys' decision not to pursue one of the three breach theories at trial—simplifying the issues to measuring the harm that Real Intent caused—did not warrant revisiting preemption.  Moreover, Synopsys elected to proceed on only two of the three theories of breach more than a month before trial.  (*Compare* ECF No. 628, *with* ECF No. 721.)  The parties jointly submitted and signed the pretrial statement on September 13, 2024, which established the theories to be pursued at the trial that started on October 15, 2024.  Simplifying the set of breach theories at issue a month before trial cannot serve as the post-trial revelation needed to revisit and reverse course on preemption.  Real Intent could have re-raised preemption before trial during the weeks that followed its stipulation to the narrowed case, but it did not.  (Post-Trial Order at 6.)  After Synopsys presented its case-in-chief was too late.

* * *

In sum, Real Intent forfeited its preemption defense by failing to raise that defense at any point between the Court's summary judgment order and its initial JMOL motion, depriving Synopsys of proper notice that preemption was a live issue for trial.  That defense is therefore unavailable as a basis to resolve the parties' post-trial motions.  And even if Real Intent had timely

- 21 -

raised preemption at some point before trial, the law-of-the-case doctrine would still bar revisiting the Court's preemption ruling after the jury's finding of harm.  For those reasons, upholding the judgment would result in manifest injustice to Synopsys.

## V.    CONCLUSION

For the reasons set forth above, the judgment should be amended to reinstate the jury's verdict, and the Court should resolve the parties' post-trial motions that it previously denied as moot.

Dated:  April 23, 2025                         Respectfully Submitted,

                                                            WILLKIE FARR & GALLAGHER LLP

                                                            By: /s/ Krista S. Schwartz

                                                            Krista S. Schwartz
                                                            Barrington Dyer
                                                            Joshua D. Anderson
                                                            Stephen Henrick
                                                            Jacob Karim
                                                            Christopher J. Lee
                                                            Shaimaa M. Hussein *(Pro Hac Vice)*
                                                            Devon W. Edwards *(Pro Hac Vice)*
                                                            Dane Sowers *(Pro Hac Vice)*

                                                            Attorneys for Plaintiff
                                                            SYNOPSYS, INC.

- 22 -