UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SYNOPSYS, INC.,

          Plaintiff,

    v.

REAL INTENT, INC.,

          Defendant.

Case No.  5:20-cv-02819-EJD

**ORDER DENYING MOTION TO ALTER OR AMEND THE JUDGMENT**

Re: ECF No. 981

Earlier in this case, the Court granted judgment as a matter of law (JMOL) against Plaintiff Synopsys, Inc. on one of its breach of contract claims.  Synopsys now seeks to alter or amend that judgment under Federal Rule of Civil Procedure 59(e).  For the reasons that follow, the Court DENIES the motion to alter or amend.

## I.    BACKGROUND

Both Synopsys and Defendant Real Intent, Inc. develop software for electronic design automation, a process that assists in the development of complex integrated circuits.  Second Am. Compl. ¶ 1, ECF No. 145; Answer ¶ 7, ECF No. 151.  From 2013 through 2017, the two entered into a series of agreements that allowed Real Intent to access certain Synopsys tools for limited uses.  But in 2020, their relationship broke down, and Synopsys sued Real Intent for breach of contract and related claims.  Compl., ECF No. 1.

At summary judgment, Synopsys articulated three theories of breach based on the various agreements it had with Real Intent.  Specifically, Synopsys claimed that Real Intent committed breach by (1) incorporating commands and attributes, with syntax (commands for short), from a Synopsys product called Design Vision into Real Intent's own products (the Incorporation Breach); (2) using certain Synopsys products for competitive purposes (the Competitive Purposes

United States District Court
Northern District of California

1    Breach); and (3) accessing and using Synopsys' DesignWare Library (the DesignWare Breach).

2    JMOL Order at 2, ECF No. 970; Synopsys MSJ at 9–13, ECF No. 272-4.  The Court granted

3    summary judgment of liability in favor of Synopsys on the Incorporation and DesignWare

4    Breaches, but it concluded that there were material disputes of fact related to the Competitive

5    Purposes Breach.  MSJ Order at 27–31, ECF No. 513.  The Court also found that the Copyright

6    Act did not preempt Synopsys' contract claims.  *Id.* at 24–26.

7         After the Court issued its summary judgment order, Synopsys elected to proceed to trial

8    solely on the Incorporation and DesignWare Breaches.  Pretrial Stmt. at 3, ECF No. 627-2.

9    Because the Court had already found liability for those breaches, the Court and the parties initially

10   understood that this meant the trial would address only damages for those breaches, not liability.

11   However, at the pretrial conference, it became clear that the parties fundamentally disagreed about

12   which Synopsys commands fell within the scope of the Incorporation Breach.  Pretrial Conf. Tr. at

13   204:24–210:20, ECF No. 651.  After working with the parties over several days in attempt to

14   resolve the issue, the Court ultimately concluded that "a damages-only trial [was] no longer

15   tenable" for the Incorporation Breach.  Command Dispute Order at 3, ECF No. 707.  The Court

16   therefore determined that the trial would encompass limited liability issues with respect to the

17   Incorporation Breach; namely, the Court asked jurors to determine whether Real Intent had

18   incorporated certain disputed commands into its products in violation of the agreements it had

19   with Synopsys.  *Id.* at 3–4; Final Jury Instructions, Nos. 11, 14, ECF No. 797.

20        With that, Synopsys proceeded to trial, where a jury awarded it $248,776 on the

21   Incorporation Breach, and $297,500 on the DesignWare Breach.  Jury Verdict, ECF No. 800.

22   Real Intent subsequently moved for JMOL.  As relevant, Real Intent argued that the Copyright Act

23   preempted the Incorporation Breach.  JMOL Mot. at 3–13, ECF No. 859.  The Court agreed and

24   granted JMOL as to the Incorporation Breach.  *See* JMOL Order.  Now Synopsys asks the Court to

25   reconsider its JMOL Order.  59(e) Mot., ECF No. 981.

26   **II.    LEGAL STANDARD**

27        Under Rule 59(e), a party may seek amendment of a judgment within twenty-eight days of

28   that judgment's entry.  Fed. R. Civ. P. 59(e).  Amending the judgment is an "extraordinary

1   remedy," though, so courts should grant Rule 59(e) motions "sparingly." *Allstate Ins. Co. v.*

2   *Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citation omitted).  Generally speaking, a court

3   should only grant such motions in four situations: "(1) if such motion is necessary to correct

4   manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to

5   present newly discovered or previously unavailable evidence; (3) if such motion is necessary to

6   prevent manifest injustice; or (4) if the amendment is justified by an intervening change in

7   controlling law." *Id.*

8   **III.    DISCUSSION**

9       **A.    Forfeiture**

10      The Court begins with Synopsys' argument that Real Intent forfeited its copyright

11  preemption defense.  59(e) Mot. at 13–18.  For this, Synopsys relies on precedent holding that,

12  under Rule 16, parties may not "offer evidence or advance theories at the trial which are not

13  included in the [pretrial] order."  *United States v. First Nat'l Bank of Circle*, 652 F.2d 882, 886

14  (9th Cir. 1981); *see also El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005) (same).

15  Because Real Intent did not express any intent to pursue its preemption defense in the parties'

16  joint pretrial conference statement,[1] *see* Pretrial Stmt., Synopsys claims that Real Intent could no

17  longer advance any preemption arguments once trial began, so it was a manifest injustice for the

18  Court to consider preemption at the JMOL stage.

19      The problem with this forfeiture argument is that Synopsys raised it for the first time at the

20  hearing on Real Intent's JMOL motion.  JMOL Order at 8 n.3.  That was too late for the Court to

21  consider the argument when deciding the JMOL motion.  *Perez-Guzman v. Lynch,* 835 F.3d 1066,

22  1075 n.4 (9th Cir. 2016) (arguments raised for the first time on oral argument are waived); *Lopez*

23  *v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 973 n.2 (N.D. Cal. 2020) (same for arguments raised

24

---

25  [1] It is not clear whether a joint pretrial conference *statement* qualifies as a pretrial *order* under
    Rule 16 absent express agreement by the parties.  *See Apple, Inc. v. Samsung Elecs. Co.*, 67 F.

26  Supp. 3d 1100, 1116 n.3 (N.D. Cal. 2014) (treating a pretrial conference statement as a Rule 16
    order only due to a party's concession); *but see Contreras v. City of L.A.*, 603 F. App'x 530, 532

27  (9th Cir. 2015) (seemingly treating a "pretrial conference memorandum" as a pretrial order).
    Neither party has addressed this issue, though, so the Court assumes for the sake of argument that

28  the joint pretrial conference statement in this case has the effect of a Rule 16 pretrial order.

United States District Court
Northern District of California

1    for the first time at hearing in district court)  And when a court declines to consider an argument

2    earlier in the litigation because it was raised too late, that late argument is not grounds for relief

3    under Rule 59(e). *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (affirming denial of

4    Rule 59(e) motion when the district court disregarded an argument raised for the first time on

5    reply).  This is because an argument raised for the first time at hearing is not properly before the

6    court.  If a party later tries to raise that argument again on a Rule 59(e) motion, then it is properly

7    raising that argument for the first time.  Rule 59(e) "may *not* be used to raise arguments . . . for the

8    first time when they could reasonably have been raised earlier in the litigation." *Kona Enters.,*

9    *Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).  Since Synopsys did not properly raise its

10   Rule 16 forfeiture argument in opposition to JMOL, it has "forfeited its forfeiture argument."

11   *Tibble v. Edison Int'l*, 843 F.3d 1187, 1196 (9th Cir. 2016) (en banc).

12           Even if Synopsys' Rule 16 argument were not forfeited, Synopsys has not shown that

13   manifest injustice results from the Court's consideration of preemption.  As courts within this

14   circuit have interpreted it in the Rule 59(e) context, manifest injustice is "very nearly synonymous

15   with clear error." *De Silva v. Pima Cnty. Gov't*, No. 24-cv-00200, 2025 WL 48457, at *2 (D.

16   Ariz. Jan. 8, 2025); *see also Littlefield v. Wash. Dep't of Corr.*, No. 3:23-cv-05711, 2024 WL

17   492382, at *1 (W.D. Wash. Feb. 7, 2024); *King v. Villegas*, No. 1:17-cv-00676, 2023 WL

18   4627687, at *1 (E.D. Cal. July 19, 2023); *All. for Wild Rockies v. U.S. Forest Serv.*, No. 1:19-cv-

19   00445, 2020 WL 7082687, at *2 (D. Idaho Dec. 3, 2020); *Greenspan v. Fieldstone Fin. Mgmt.*

20   *Grp., LLC,* No. 3:17-cv-233, 2018 WL 4945214, at *6 (D. Or. Aug. 22, 2018), *report and*

21   *recommendation adopted*, 2018 WL 6682995 (D. Or. Dec. 18, 2018); *Pet Food Exp. Ltd. v. Royal*

22   *Canin USA, Inc.*, No. 09-cv-1483, 2011 WL 6140874, at *4 (N.D. Cal. Dec. 8, 2011) (citing

23   *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001)).  Synopsys can succeed only if

24   it can show it is clear and obvious that Rule 16 bars Real Intent from raising copyright

25   preemption.  It cannot do so because Real Intent has reasonable arguments to the contrary.

26           Rule 16 allows the Court to amend the pretrial order even after trial. *Mechmetals Corp. v.*

27   *Telex Computer Prods., Inc.*, 709 F.2d 1287, 1294 (9th Cir. 1983).  The Court may do so

28   implicitly, "simply by entering findings." *Id.*  Here, by entering its JMOL Order, the Court

1    implicitly amended the pretrial statement to allow Real Intent's preemption defense.  The

2    question, then, is whether it was clear error to make such an amendment.  To answer that question,

3    the Court must look to four factors: (a) prejudice to Real Intent; (b) prejudice to Synopsys; (c)

4    effect of amendment on the case; and (d) whether Real Intent's failure to include the preemption

5    defense in the pretrial statement was its fault.[2]  *First Nat'l Bank*, 652 F.2d at 887.

6        As the Court explained when granting JMOL, Real Intent's preemption defense relied

7    heavily on what occurred at trial.  JMOL Order at 8 n.3.  Synopsys' Incorporation Breach theory

8    also "took shape at trial," where it was "fully developed" in a way that it had not been earlier in

9    this litigation.  *Id.* at 8.  Thus, it would be prejudicial to Real Intent to preclude a defense that

10   became apparent only through the course of trial.  This also illustrates that it was not Real Intent's

11   fault for failing to raise the defense in the pretrial conference statement.

12       The "prejudice to Synopsys" and "effect on the case" factors do weigh against amendment,

13   but not so strongly that it was clearly wrong for the Court to amend the pretrial statement.  Starting

14   with the latter, the Court acknowledges that granting JMOL on preemption erased much of the

15   time and effort that the parties and the Court put towards the trial.  Still, trial was not a pointless

16   exercise.  Synopsys still won damages on its DesignWare Breach.  And the trial was a key step

17   forward in crystallizing Synopsys' Incorporation Breach theory and thus uncovering a preemption

18   issue that had not previously been apparent.

19       With regards to prejudice against Synopsys, there is of course some.  Had Synopsys been

20   on notice that preemption was a live issue, it could have changed its framing of the evidence or

21   even presented different evidence.  59(e) Mot. at 17–18.  However, copyright preemption turns on

22   whether a state law claim includes an "extra element" that takes it beyond a federal copyright

23   claim.  *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1019 (9th Cir. 2017).  The existence of that

24   element is a legal question turning on Synopsys' theory of liability, not the evidence that it

25   presents.  No matter how much evidence Synopsys presented or could have presented about

26

27   [2] Real Intent's authority suggests an abbreviated framework for amendment that considers only
     prejudice to the aggrieved party, Synopsys.  *Mechmetals*, 709 F.2d at 1294.  The Court applies

28   Synopsys' preferred four-part test for the sake of argument.

     Case No.: 5:20-cv-02819-EJD
     ORDER DEN. MOT. TO ALTER/AMEND    5

United States District Court
Northern District of California

actions that Real Intent took beyond the copying of Synopsys' commands, that evidence would not defeat copyright preemption unless those actions were a necessary element of Synopsys' theory of breach. The mere fact that Synopsys presented evidence does not create an element of a claim— parties frequently present evidence at trial for purposes of background or laying foundation that does not directly pertain to an element of their claims.

Of course, had Synopsys been on notice that preemption was a live issue ahead of trial, it might have changed its theory for the Incorporation Breach. But it is far from clear that the inability to change gears on a theory of breach before trial is the type of prejudice precluding amendment under Rule 16.

At bottom, it is not obvious that amendment was inappropriate under Rule 16 because there are factors that cut in both directions. That being so, it was not manifestly unjust for the Court to implicitly amend the pretrial conference statement to permit Real Intent to raise preemption. Whether such amendment would have been justified on a clean slate, unencumbered by Rule 59(e)'s difficult standards, is besides the point. Synopsys' Rule 16 argument is not grounds for altering or amending the judgment.

### B.    Copyright Preemption

Next, the Court turns to Synopsys' main focus: the merits of the preemption defense. The Ninth Circuit applies a two-prong test for copyright preemption: (1) "the subject matter of the state law claim falls within the subject matter of copyright"; and (2) "the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 971 (9th Cir. 2024) (citation omitted). A state law claim is not preempted unless both prongs are satisfied. Here, Synopsys "chose to address only the second prong of the test." 59(e) Reply at 9, ECF No. 984. It argued that its Incorporation Breach contained an "extra element" that took it out of the ambit of the exclusive rights of copyright in § 106. *Maloney*, 853 F.3d at 1019.

In granting JMOL to Real Intent, the Court found that the Incorporation Breach did not require an extra element. Now, Synopsys returns with three points in an effort to rebut the Court's conclusion. None convince the Court to alter or amend the judgment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.    Command Behavior

First, Synopsys contends that its Incorporation Breach required an extra element because breach required Real Intent to model the behavior associated with the commands at issue. The problem is that this supposed element did not make its appearance until Real Intent filed its JMOL motion.[3]

Start with the source of Synopsys's breach of contract claim, the in-Sync Agreement, specifically § 3.2 of the Agreement. That section provides that Real Intent shall not "modify, incorporate into or with other software, or create a derivative work of any part of [Design Vision]," including commands within Design Vision. TX079 § 3.2, ECF No. 872-1.[4] Nowhere does this provision mention behavior. Granted, "part of [Design Vision]" could be broadly construed as encompassing behavior. But that construction of the in-Sync Agreement runs headlong into Synopsys' summary judgment arguments.

Synopsys filed three separate briefs at the summary judgment stage. In its summary judgment motion, Synopsys asserted Real Intent was liable for the Incorporation Breach because it had incorporated commands into its own products. Synopsys MSJ at 9–10, ECF No. 272-4. Synopsys did not mention the modeling of behavior. Then, in its opposition to Real Intent's cross-motion for summary judgment, Synopsys resisted preemption but did not mention the modeling of behavior as a reason for finding non-preemption. Instead, Synopsys appeared to concede that incorporation of commands was the same as copying but argued that the Incorporation Breach was not preempted because the in-Sync Agreement was "significantly more restrictive" than the Copyright Act. Synopsys MSJ Opp. at 29, ECF No. 325-4. Most fatally, in its reply in support of its own summary judgment motion, Synopsys argued that the incorporation of six commands "alone [was] enough to establish the [Incorporation Breach]." Synopsys MSJ Reply at 2, ECF No. 360-4. Put differently, Synopsys itself conceded that nothing beyond incorporation (copying)— not the modeling of behavior or anything else—was necessary for the Incorporation Breach.

---

[3] Synopsys was less than precise with its preemption arguments at JMOL, so it is not even clear that Synopsys was making its behavior-based argument when opposing JMOL.

[4] Although there were multiple in-Sync Agreements, the Court cites just one because there are no material differences between the separate Agreements.

1    What is more, Synopsys situated the modeling of behavior under a different theory of

2  breach, the Competitive Purposes Breach.  That theory of breach stemmed from a separate

3  provision of § 3.2 of the in-Sync Agreement that prohibited Real Intent from "us[ing] the

4  Synopsys Licensed Products for competitive purposes."  TX079 § 3.2.  Synopsys claimed that

5  summary judgment was warranted on this provision because Real Intent "matched" the behavior

6  of Synopsys' commands to make Real Intent's products more attractive to customers.  Synopsys

7  MSJ at 10–12.  Synopsys likewise made the same argument in its summary judgment reply.

8  Synopsys MSJ Reply at 3 ("[Real Intent] matched the syntax and behavior of Design Vision so its

9  products produced 'the same results.'").  While Synopsys did argue in opposition to Real Intent's

10  cross-motion that "[t]he use of [Synopsys products] for purposes of modeling the behavior in Real

11  Intent's tools is an 'extra element'" defeating copyright preemption, Synopsys made that argument

12  with regard to the Competitive Purposes Breach only.  Synopsys MSJ Opp. at 2 (citing Synopsys'

13  discussion of the Competitive Purposes Breach at page 11 of Synopsys' motion for summary

14  judgment).

15    In short, Synopsys made clear that any prohibition of the modeling of behavior fell under

16  the Competitive Purposes Breach and not the Incorporation Breach.  Thus, as a matter of

17  Synopsys' own contract interpretation, the provision underlying the Incorporation Breach did not

18  prohibit the modeling of behavior.  Rather, the modeling of behavior was encompassed in the

19  "competitive purposes" language of the in-Sync Agreement.  This is especially important because

20  Synopsys chose not to bring its Competitive Purposes Breach to trial, meaning that it chose not to

21  bring its modeling-of-behavior theory to trial.

22    The trial record bears this out.  The jury instructions, as the definitive statement of the law

23  given to jurors, are the strongest evidence that the modeling of behavior was not a required

24  element of the Incorporation Breach.  Recall that shortly before trial, the Court held that liability

25  questions on the Incorporation Breach would need to be presented to the jury.  *See* Command

26  Dispute Order.  Thus, the Court needed to instruct the jury on Synopsys's theory of liability for the

27  Incorporation Breach, and Synopsys was on notice that it would need to correct any

28  misapprehensions about its theory.

1   Yet, the word "behavior" never appeared in any jury instruction. *See* Final Jury

2   Instructions. More to the point, the instructions repeatedly informed the jury that only *copying*

3   was at issue and nothing more. For example, Instruction No. 11, which summarized the issues for

4   the jury, focused on copying[5]:

> Synopsys asserts that it has been harmed by Real Intent's **copying** of
> certain computer commands/options and attributes, with syntax.
> There is no dispute that after the first contract was signed in April
> 2013, Real Intent **copied** six commands and associated options with
> syntax from a Synopsys product called "Design Vision" that was
> provided under the contracts.
>
> The parties dispute, however, whether any other commands/options
> and attributes, with syntax, were **copied** from Design Vision after
> April 2013. Synopsys has the burden of proving by a preponderance
> of the evidence that Real Intent **copied** these other
> commands/options, or attributes, with syntax, from Design Vision
> after April 2013.
>
> Any **copying** prior to April 2013 (regardless of the source), and any
> **copying** from any source other than Design Vision, including from
> other Synopsys products (regardless of the time), does not breach the
> parties' contracts and cannot be considered as a basis for Synopsys'
> alleged harm. Synopsys also has the burden of proving by a
> preponderance of the evidence that it has been harmed by any breach
> of contract. Real Intent denies that it **copied** any additional
> commands/options and attributes, with syntax, from Design Vision
> after April 2013, and denies that Synopsys has been harmed by any
> breach of contract.

Final Jury Instruction No. 11.

The next instruction on damages again zeroed in on copying. For one, it was titled,

"Breach of Contract—Damages for **Copying** Command/Options, and Attributes, with Syntax

from Design Vision." Final Jury Instruction No. 12. It also explained that "Synopsys claims that

it was harmed because Real Intent breached Section 3.2 . . . by **copying** commands/options, and

attributes, with syntax, from Design Vision." *Id.* So too did the instruction following that one,

titled "Breach of Contract—**Copying**," which explained that jurors' "determination of the harm

resulting from Real Intent's breach should be limited to commands/options, and attributes, with

syntax, **copied** from Design Vision." Final Jury Instruction No. 13. The trend continued in a

---

[5] All bolding in quotations from the final jury instructions in this and the following paragraph is
added emphasis.

United States District Court
Northern District of California

1    fourth instruction, which directed jurors to "only consider commands/options and attributes, with

2    syntax that were **copied** from Design Vision" and continued to liberally use the word "copied."

3    Final Jury Instruction No. 14.

4        Synopsys' only argument that the jury instructions pointed to something beyond copying

5    comes from a creative parsing of Instruction No. 15.  That instruction states:

6            Real Intent's use of Design Vision for purposes other than copying
         commands/options and attributes, with syntax, is not prohibited by
7            the provisions of the in-Sync Agreements and the Synopsys Loan
         Agreement at issue and is not a basis, standing alone, to find harm.

8

9    Final Jury Instruction No. 15.  On its face, this instruction comports with the others in its focus on

10   copying and copying alone.  But Synopsys homes in the phrase, "use of Design Vision for

11   purposes."  Synopsys takes this to mean that anything that facilitates copying and is done with the

12   express purpose of copying must therefore be a basis for harm.  59(e) Mot. at 12.  But jury

13   instructions are not read in isolation.  *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.

14   2001) ("[T]he instructions are to be considered as a whole . . . .").  As a whole, the instructions

15   inform the jury that it is copying, and nothing else, that is at issue.

16       Changing approaches, Synopsys argues that even if the jury instructions discussed

17   copying, it was well-understood by both parties and the Court that "copying" was code for

18   anything and everything that Real Intent did wrong, including the modeling of behavior.  59(e)

19   Mot. at 8, 11.  That is news to the Court.  As detailed above, the modeling of behavior fell under

20   the Competitive Purposes Breach.  And Synopsys elected to abandon its Competitive Purposes

21   Breach before trial.  If anything, this meant that "copying" did *not* refer to the modeling of

22   behavior.

23       That said, whether the Court was in on this secret is largely beside the point.  What really

24   matters is the theory of liability that was presented to the jury.  On that issue, the jury instructions

25   tell most of the story.  Synopsys' arguments to the jury tell the rest.  Opening and closing

26   statements were Synopsys' opportunity to frame its theory of liability for the jury and to clarify

27   any potential misunderstandings.  Although Synopsys constantly used variations of the word

28   "copying," it never told the jury that when it said "copying," it also meant "modeling behavior."

United States District Court
Northern District of California

1    Trial Tr. 316–42 (Synopsys opening), 1695–724 (Synopsys closing), 1762–73 (Synopsys rebuttal),

2    ECF Nos. 811–13, 815–21, 942.  In fact, Synopsys never used the word "behavior" in its

3    arguments.

4         Synopsys did, however, emphasize that the Incorporation Breach was all about copying.

5    For example, on opening, Synopsys introduced its theory of breach by telling the jury, "Real

6    Intent breached the contracts by copying what you hear the Judge refer to as commands, options,

7    and attributes and it copied them from one of Synopsys's products, Design Vision."  *Id.* at 317:20–

8    23.  On closing, Synopsys said the same thing: "Real Intent copied commands, options, and

9    attributes, and that breached the contract.")  *Id.* at 1695:15–16.  Synopsys then argued to jurors

10   that "five points alone are going to be enough for you to find for your verdict in this case."  *Id.* at

11   1698:12–13.  Two of them were that Synopsys had copied commands.  *Id.* at 1697:1–2 ("Real

12   Intent copied the most important commands . . . ."); *id.* at 1697:7–8 ("Real Intent copied the

13   Design Vision commands and options into their products before VC SpyGlass [a competing

14   Synopsys product] launched.").  The other three had nothing to do with modeling behavior.  *Id.* at

15   1695:23–1697:16, 1697:19–1698:11.  All this demonstrates that, as presented at trial, Synopsys's

16   theory of the Incorporation Breach was premised on copying, not modeling behavior.

17        The only time that Synopsys alluded to the modeling of behavior at all was during its

18   opening statement, when it stated that "Real Intent came to Synopsys to get access to Design

19   Vision because it needed a working product.  It wanted to test the commands.  It wanted to play

20   with them and see what information they returned, how the options worked with the commands."

21   *Id.* at 340:6–9.  But Synopsys made that statement to rebut Real Intent's defense that "they copied

22   from other sources, [they] didn't just copy from Design Vision."  *Id.* at 340:4–5.  That is,

23   Synopsys argued that, because Real Intent wanted to model Design Vision's behavior, the copying

24   likely came from Design Vision.  This argument did not mean that the modeling of behavior was a

25   required element of the Incorporation Breach.

26        To conclude, the theory of the Incorporation Breach that Synopsys presented at trial did

27   not require the modeling of behavior as an element of the claim.  As such, the modeling of

28   behavior is not an extra element that defeats copyright preemption.

United States District Court
Northern District of California

### 2.    Evidence Regarding the Modeling of Behavior

In a variation on its first point, Synopsys contends that the fact that it presented evidence at trial showing how Real Intent modeled Design Vision's behavior is proof that modeling behavior was an element of the Incorporation Breach.  59(e) Mot. at 9–11.  Two of the Court's own points, made earlier in this Order, quickly dispose of this argument: (1) not all relevant evidence presented at trial directly pertains to a necessary element of a claim, *supra* Section III.A; and (2) as Synopsys explained in its own opening statements, its arguments about the modeling of behavior were meant to rebut the defense that Real Intent had copied commands from somewhere other than Design Vision.  Trial Tr. at 340:4–9.  Such arguments did not establish an element of the claim.  The evidence that Synopsys did present (or could have presented) on the modeling of behavior does not warrant alteration of the judgment.

### 3.    Uncopyrightability of Behavior

The final point that Synopsys makes is that the Incorporation Breach required Real Intent to copy the behavior of Synopsys' tools, and behavior is not copyrightable.  59(e) Mot. at 7–9. Since the Court found that the Incorporation Breach does not require the copying of behavior at all, this point necessarily fails.  Nonetheless, the Court briefly addresses this point for the sake of completeness.

At the outset, the Court observes that this is a new argument raised for the first time and cannot be grounds for Rule 59(e) relief.  *Kona*, 229 F.3d at 890.  While Synopsys previously argued that the modeling of behavior served as an extra element to defeat copyright preemption, it never asserted that the uncopyrightability of behavior was germane to the preemption analysis. *See* JMOL Opp'n at 7–9.

This uncopyrightability argument also fails on the merits.  Whether a state law claim contains an extra element at the second prong of the copyright preemption test depends on whether that claim forbids an *action* that goes beyond the exclusive rights of copyright.  *See Maloney*, 853 F.3d at 1019 (finding the second prong to be satisfied when a claim does not seek to hold a defendant liable for "any use . . . independent of the display, reproduction, and distribution of the copyrighted material").  The copyrightability of behavior and functionality are unrelated to the

1    actions which the in-Sync Agreement prohibits, so copyrightability has no bearing on prong two.

2        Instead, copyrightability is considered at prong one.  As the Ninth Circuit explained,

3    certain types of uncopyrightability take matters outside the scope of copyright subject matter, such

4    as the failure to fix in a tangible medium.  *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d

5    975, 979 (9th Cir. 2011) (en banc).  Others, like the principle that ideas and concepts do not

6    receive copyright protection, do not.  *Id.* at 979–80.  Fixed ideas and concepts can fall within the

7    scope of copyright subject matter, so if prong two is satisfied, state law claims involving ideas and

8    concepts can be preempted.  *Id.*  Synopsys has disclaimed any prong-one arguments, so the Court

9    has no occasion to consider whether the uncopyrightability of behavior and functionality is of the

10    kind that takes the Incorporation Breach out of the scope of copyright.  *See* 59(e) Reply at 9.

11    Accordingly, this final point does not justify amending the judgment.

12        **C.    Law of the Case**

13        Finally, the Court addresses Synopsys' law-of-the-case argument, in which Synopsys

14    reiterates the position that the Court could not revisit preemption because it granted summary

15    judgment of non-preemption.  Synopsys previously made this argument in opposition to JMOL,

16    and the Court rejected it because "there is no rule preventing a trial judge from reconsidering her

17    views on a case's merits" after trial.  JMOL Order at 7 (quoting *Gray v. Hudson*, 28 F.4th 87, 103

18    (9th Cir. 2022)).  Since Rule 59(e) is not a vehicle for relitigating arguments that the Court

19    expressly considered and rejected, that is grounds alone to again reject Synopsys' argument.  *See*

20    *Garcia v. City of Napa*, No. 13-cv-03886, 2014 WL 342085, at *1 (N.D. Cal. Jan. 28, 2014).

21        In any case, the argument is incorrect.  Law of the case merely reflects a general court

22    practice, "not a limit to [courts'] power."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S.

23    800, 817 (1988) (citation omitted).  Accordingly, law of the case "does not impinge upon a district

24    court's power to reconsider its own interlocutory order provided that the district court has not been

25    divested of jurisdiction over the order."  *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254

26    F.3d 882, 888 (9th Cir. 2001); *see also EEOC v. Serrano's Mexican Restaurants, LLC*, 306 F.

27    App'x 406, 407 (9th Cir. 2009) (similar).  District courts may reconsider their interlocutory orders

28    at any time before the entry of final judgment.  *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir.

United States District Court
Northern District of California

1    1996); Fed. R. Civ. P. 54(b).

2         What Synopsys may be arguing is not that the Court *cannot* change its mind but rather that

3    the Court *should not* have done so in these circumstances.  That argument largely turns on the

4    merits of Real Intent's preemption defense, which the Court has thoroughly addressed in this

5    Order and its JMOL Order.  To the extent that Synopsys argues the Court should hold firm on its

6    summary judgment finding of non-preemption despite the merits of Real Intent's post-trial

7    preemption defense, the Court disagrees.  Synopsys has provided no good reason for why the

8    Court should stand by a decision that is rendered inaccurate at trial just because that decision came

9    earlier.  Law of the case does not justify Rule 59(e) relief.

10   **IV.    CONCLUSION**

11        For the foregoing reasons, the Court DENIES Synopsys' Rule 59(e) motion to alter or

12   amend the judgment.

13        **IT IS SO ORDERED.**

14   Dated:  August 18, 2025

15

16   _____

17   EDWARD J. DAVILA
     United States District Judge

18

19

20

21

22

23

24

25

26

27

28